| | | |
|---|---|---|
| VERONICA POLLARD, et al | * | IN THE |
| Plaintiffs | * | UNITED STATES |
| v. | * | DISTRICT COURT |
| RAJ R. GUPTA, M.D., et al | * | FOR THE |
| Defendants | * | DISTRICT OF MARYLAND |
| | * | CASE NO.: WDQ-02-764 |

\* \* \* \* \*

## MOTION FOR SUMMARY JUDGMENT

The Defendant, Raj R. Gupta, M.D., by and through his attorneys, Joan Cerniglia-Lowensen and Morgan Shelsby Carlo Downs & Everton, respectfully files the following Motion for Summary Judgment and for grounds state:

1. This Defendant adopts and incorporated its attached Memorandum of Law in favor of summary judgment.

2. There is no material dispute of fact that, to a reasonable degree of medical probability, the administration of chemotherapy would not have prevented Veronica Pollard's recurrence.

3. There is no material dispute of fact that the doctor/patient relationship between Veronica Pollard and Raj R. Gupta, M.D. ended upon her move from the United States to the United Kingdom.

WHEREFORE, this Defendant respectfully requests that Summary Judgment be Granted.

Respectfully submitted,

*/s/ Joan Cerniglia-Lowensen*
Joan Cerniglia-Lowensen, #10747
Morgan Shelsby Carlo Downs & Everton
4 North Park Drive
Suite 404
Hunt Valley, Maryland 21030
410-584-2800

| | | |
|---|---|---|
| VERONICA POLLARD, et al | * | IN THE |
| Plaintiffs | * | UNITED STATES |
| v. | * | DISTRICT COURT |
| RAJ R. GUPTA, M.D., et al | * | FOR THE |
| Defendants | * | DISTRICT OF MARYLAND |
| | * | CASE NO.: WDQ-02-764 |

\* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO RAJ R. GUPTA, M.D.

The Defendant, Raj R. Gupta, M.D., by and through his attorneys, Joan Cerniglia-Lowensen and Morgan Shelsby Carlo Downs & Everton, respectfully files the following Memorandum of Law in Support of this Defendant's Motion for Summary Judgment.

### STATEMENT OF THE CASE

On December 1, 1998, Veronica Pollard presented to this Defendant, Raj R. Gupta, M.D., for consultation regarding her diagnosis of breast cancer. When Ms. Pollard presented to Dr. Gupta she was recovering from her breast lumpectomy which had been done at the Dwight D. Eisenhower Medical Center on November 12, 1998. Ms. Pollard presented to Dr. Gupta at the request of her surgeon, Dr. Sees.

Upon presentation, Ms. Pollard informed Dr. Gupta that her husband was transferring to England, since he was on active duty in the United States Army. She further informed Dr. Gupta that it was her intent to move to England with her husband. After reviewing the records, Dr. Gupta requested certain other testing be done on the tissue removed from Ms. Pollard's breast. He further scheduled a repeat visit with Ms. Pollard for December 15, 1998.

On December 15, 1998, Ms. Pollard returned to see Dr. Gupta. At that point, Dr. Gupta made certain recommendations regarding adjuvant therapy that he would recommend once she arrived in England. Dr. Gupta drafted correspondence to be taken to England suggesting this adjuvant therapy. Additionally, Sergeant Roosevelt Pollard, Veronica Pollard's husband, testified that Dr. Gupta had contact with a liaison provided by the United States Army to assure Ms. Pollard's care once she arrived in England.

On February 3, 1999, Veronica Pollard presented to Dr. Corrin, a primary care doctor in England for follow-up care. Dr. Corrin provided a referral to see an oncologist located in England, D. J. Dodwell, M.D. Dr. Dodwell reviewed all of the material available regarding Ms. Pollard's condition. Dr. Dodwell, in consultation with Veronica Pollard, decided that chemotherapy was not indicated for Veronica Pollard. Instead, it was determined that Ms. Pollard would undergo radiation therapy. This recommendation was contrary to the correspondence and recommendations provided by Raj Gupta, M.D.

One year later, in March of 2000, Veronica Pollard was diagnosed with a recurrence of her breast cancer. In June of 2000, it was determined that Ms. Pollard's breast cancer had metastasized requiring a total mastectomy, removal of a portion of her lung, chemotherapy, radiation therapy, bone marrow transplants and other treatment.

In March of 2002, the Plaintiffs in this matter filed a Complaint alleging medical negligence against Raj Gupta, M.D., the United States of America, Sterling Medical Corporation and Humana Military Healthcare. The allegations against this Defendant include permitting Veronica Pollard to move to England further alleging that Dr. Gupta knew or should have known that the healthcare providers in England would not follow appropriate standards of care.

2

ARGUMENT

## I. THERE IS NO MATERIAL DISPUTE OF FACT THAT, TO A REASONABLE DEGREE OF MEDICAL PROBABILITY, THE ADMINISTRATION OF CHEMOTHERAPY WOULD NOT HAVE PREVENTED VERONICA POLLARD'S RECURRENCE.

The pathology report provided to Dr. Gupta after Ms. Pollard's cancer diagnosis indicated that the lump was .5 centimeter in size. Each of Plaintiffs' experts were questioned regarding any change in five year survival rate with the use of chemotherapy for a patient with a tumor the size of Veronica Pollard's. Plaintiffs named causation experts include Gerald H. Sokol, M.D. During the deposition of Dr. Sokol, he testified that patients with tumors similar to Veronica Pollard's enjoy a five year survival rate of 90 percent when the tumor is removed and the area radiated to control local spread. (See the deposition transcript of Gerald H. Sokol, page 48, adopted and incorporated as Exhibit 1). When chemotherapy is added to the radiation regime, local control, pursuant to the testimony of Dr. Sokol, is improved from two to five percent. (See the deposition transcript of Dr. Sokol, page 62, adopted and incorporated as Exhibit 2). This takes the five year cure rate from 90 percent to 92 to 95 percent.

Additionally, Plaintiffs have identified Leroy Fleming Smith, Jr., M.D., as a causation expert in this case. During the deposition of Dr. Smith, he provided certain ten year survival statistics in support of the fact that standards of care required Ms. Pollard to undergo the chemotherapy. Specifically, Dr. Smith stated that a breast cancer patient with tumors of varying sizes, that undergo radiation therapy, alone, enjoy a 58 percent survival rate at ten years. The addition of chemotherapy takes the ten year survival rate to 68.3 percent. (See the deposition transcript of L. F. Smith, M.D., pages 44-46, adopted and incorporated as Exhibit 3).

3

Plaintiffs' causation expert, G. Peter Pushkas, M.D. espoused slightly different numbers. During his deposition, Dr. Pushkas stated that all patients with a Stage 1 breast tumor, without metastasis, who were treated with radiation alone enjoy an 80 percent survival rate at five years. Dr. Pushkas testified that this number changed to 87 percent with the addition of chemotherapy. When asked specifically about tumors the size of Ms. Pollard's, Dr. Pushkas admitted that a patient with a tumor size similar to Ms. Pollard, would enjoy a 90 percent survival rate at five years with radiation only. This amount would increase to 93 percent with the addition of chemotherapy. (See the deposition transcript of Dr. Pushkas, pages 31-32, adopted and incorporated as Exhibit 4).

On August 27, 2003, the deposition of Plaintiff's last expert, James Vincent Fiorica, M.D. was taken. During that deposition, Dr. Fiorica was asked the incidence of recurrence in patients with tumors the size of Veronica Pollard's during a five year period of time without chemotherapy. Dr. Fiorica answered that the rate of recurrence would be eight to ten percent. This would leave the disease free rate as being 90 to 92 percent. When chemotherapy is added to the regime, the recurrence rate would be five to six percent. This would leave a disease free survival percentage as 94 to 95 percent. (See the deposition transcript of James Vincent Fiorica, M.D., pages 40-41, adopted and incorporated as Exhibit 5).

Pursuant to Georgia law, the mere fact that a physician may be negligent is not sufficient to hold that physician liable unless the complaining patient can prove that the injury complained of proximately resulted from the negligence. Patterson v. Fulton-Dekalb Hospital Authority, 233 Ga. App. 706, 505 S.E.2d 232 (1988). When a physician describes a decedent's prospect of survival with appropriate treatment, such prospect

4

must be more then a mere chance or speculation. The prospect must be "a realistic assessment of the likelihood that the alleged negligence caused the injury or death." Cannon v. Jeffries, 250 Ga. App. 371, 551 S.E.2d 777 (2001); Berrell v. Hamilton, 260 Ga. App. 892, 581 S.E.2d 398 (2003). The proximate cause has been said to be both a mixed question of fact and law except in specific situations. A trial judge may decide that insufficient evidence of proximate cause exists "if reasonable persons could not differ as to the relevant facts and the evaluative application of legal standard." Atlanta Obstetrics and Gynecology Group, P.A. v. Coleman, et al, 260 Ga. 569, 398 S.E.2d 16 (1990). Georgia law defines proximate cause as "the natural and continuous sequence, unbroken by other causes, produces an event, without which the event would not have occurred." Zwiren v. Thompson, 276 Ga. 498, 578 S.E.2d 862 (2003); T. J. Morris & Co v. Dykes, 197 Ga. App. 392, 398 S.E.2d 403 (1990); Locke v. Vonalt, 189 Ga. App. 783, 377 S.E.2d 696 (1989).

In the present instance, the testimony provided by Plaintiffs' experts indicate that the addition of chemotherapy to the treatment regime as required by standard of care would have improved Plaintiffs chances of survival approximately three to ten percent depending upon studies cited by the experts. In any event, all of the experts agree that even without the addition of chemotherapy, Plaintiffs chances of a five year survival were in excess of 90 percent and her chance of ten year survival was well in the excess of 50 percent. Viewing the testimony in the light most favorable to the Plaintiff, none of Plaintiffs' experts testified that failure to utilize chemotherapy in any way decreased Ms. Pollard's chances of survival below the necessary 50 percent range.

In light of Plaintiffs' expert testimony, it appears that their claim is in reality a loss of chance argument. In Dowling v. Lopez, 211 Ga. App. 578, 440 S.E.2d 205 (1993), the Georgia court considered a similar issue. In that action, the court held that Georgia law did not permit recovery for loss of chance in situations like the one currently before this Honorable Court.

In light of the fact that Veronica Pollard's chances of survival without the addition of chemotherapy were not, according to Plaintiffs' experts, below the 50 percent benchmark, there is no material dispute of fact concerning causation in this case. This Defendant is, therefore, entitled to judgment as a matter of law.

## II. THERE IS ABOLUTELY NO MATERIAL DISPUTE OF FACT REGARDING THE ISSUE THAT THE DOCTOR/PATIENT RELATIONSHIP BETWEEN VERONICA POLLARD AND RAJ R. GUPTA, M.D. TERMINATED UPON HER MOVE FROM GEORGIA.

The facts in this case are undisputed that Veronica Pollard presented to Raj Gupta, M.D. on only two occasions. The first office visit was on December 1, 1998. At that point in time, Raj Gupta, M.D., was awaiting certain laboratory studies to make recommendations regarding adjuvant therapy to Veronica Pollard. (See the deposition transcript of Raj Gupta, M.D., p. 46, adopted and incorporated as Exhibit 6). Once the receptor study results had returned, Veronica Pollard returned to Raj Gupta, M.D. on December 15, 1998. At that point in time, Dr. Gupta was informed by Ms. Pollard that she would be relocating to England within one week. (See the deposition transcript of Raj Gupta, M.D., pages 25-26, adopted and incorporated as Exhibit 7). Though Ms. Pollard contends that she did not relocate to England until January of 1999, she admits that immediately after Christmas, her family left the state of Georgia, took a two week leave in New York, then moved to England in January of 1999. (See the deposition

6

transcript of Veronica Pollard, pages 43-46, adopted and incorporated as Exhibit 8). In fact, Veronica Pollard admits that her visits to Raj Gupta, M.D. terminated in mid-December of 1998. (See the deposition transcript of Veronica Pollard, page 46, lines 9-11, adopted and incorporated as Exhibit 8).

Pursuant to Georgia law, a patient/physician relationship can terminate in a number of ways. Those ways include: a patient withdrawing from treatment; mutual consent; the patient's dismissal of the physician; or the cessation of the need for the relationship. See Grant v. Douglas Women's Clinic, P.C., 260 Ga. App. 676, 580 S.E.2d 532 (2003). In Matthews v. Dekalb County Hospital Authority, 211 Ga. App. 858, 440 S.E.2d 743 (1994), the Georgia court addressed the issue of voluntary termination of the doctor/patient relationship when the Defendant's conduct, withdrawing from the doctor's care, acted as an intervening act to disrupt any causation alleged in the malpractice case.

In the case before this Honorable Court, the facts are uncontradicted that Veronica Pollard had decided to relocate to England in January of 1999. In fact, Ms. Pollard admits that she had already made the decision to move to England and had sold her home, shipped her vehicles and shipped all of her household goods. (See the deposition transcript of Veronica Pollard, page 62, adopted and incorporated as Exhibit 9). Despite this fact, Plaintiff seeks to hold Raj Gupta, M.D., negligent for the care provided once Veronica Pollard left both the state of Georgia and the United States. (See the Complaint filed in this matter, adopted and incorporated as Exhibit 10).

Clearly, pursuant to Georgia law and the facts of this case, there was a termination of the doctor/patient relationship by mutual consent when Veronica Pollard chose to

relocate in England. Any suggestion that the duty owed to Veronica Pollard could somehow exceed both state and international boundaries is without merit.

WHEREFORE, the Defendant respectfully requests that summary judgment be entered in his favor.

Respectfully submitted,

*[signature]*

Joan Cerniglia-Lowensen, #10747
Morgan Shelsby Carlo Downs & Everton
4 North Park Drive
Suite 404
Hunt Valley, Maryland  21030
410-584-2800

8

| | | |
|---|---|---|
| VERONICA POLLARD, et al | * | IN THE |
| Plaintiffs | * | UNITED STATES |
| v. | * | DISTRICT COURT |
| RAJ R. GUPTA, M.D., et al | * | FOR THE |
| Defendants | * | DISTRICT OF MARYLAND |
| | * | CASE NO.: WDQ-02-764 |

\* \* \* \* \*

## ORDER

Having considered the Defendant's Motion for Summary Judgment and finding just cause therein, it is this _____ day of _____, 2003 hereby Ordered that Judgment be entered on behalf of Raj R. Gupta, M.D.

_____
William D. Quarles, Judge
United States District Court
for the District of Maryland

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of Sept, 2003, a copy of the foregoing Motion for Summary Judgment, Memorandum of Law in Support of Motion for Summary Judgment and proposed Order on behalf of Raj R. Gupta, M.D. was mailed postage prepaid to:

Lesley S. Zork, Esquire
Bruce J. Klores & Associates
915 Fifteenth Street, N.W.
Third Floor
Washington, D.C. 20005

Peter R. Masciola, Esquire
Law Offices of Peter Masciola
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004

Larry Adams, Esquire
Assistant United States Attorney
United State Attorney's Office
6625 U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

Catherine A. Hanrahan, Esquire
Wilson, Elser, Moskowitz, Edelman
& Dicker LLP
1341 G Street, NW, 5th Floor
Washington, D.C. 20005

Joan Cerniglia-Lowensen, #10747
Morgan Shelsby Carlo Downs & Everton
4 North Park Drive
Suite 404
Hunt Valley, Maryland 21030
410-584-2800