| | | |
|---|---|---|
| VERONICA POLLARD, et al | * | IN THE |
| Plaintiffs | * | UNITED STATES |
| v. | * | DISTRICT COURT |
| RAJ R. GUPTA, M.D., et al | * | FOR THE |
| Defendants | * | DISTRICT OF MARYLAND |
| | * | CASE NO.: WDQ-02-764 |

\* \* \* \* \*

### DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT, RAJ GUPTA, M.D.'S, MOTION FOR SUMMARY JUDGMENT

The Defendants, Raj Gupta, M.D. and Sterling Medical Corporation, by and through their attorneys, Joan Cerniglia-Lowensen and Morgan Shelsby Carlo Downs & Everton, respectfully submit the following reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

In the Plaintiffs' Opposition to this Defendant's Motion for Summary Judgment, it is articulated that the basis of their medical malpractice claim is that Raj Gupta, M.D. failed to advise Veronica Pollard to not move to England because Dr. Gupta knew or should have known that adjuvant chemotherapy would not be provided and radiation therapy would be "delayed for five-six months." Plaintiffs contend that the fact that it has presented several "qualified" expert witnesses who have testified to this alleged breach is sufficient to defeat summary judgment. This Defendant respectfully disagrees with that statement.

In Beatty v. Trailmaster Products, Inc., 330 Md. 726, 625 A.2d 1005 (1993), the Maryland Court of Appeals addressed a similar issue. In Beatty, the trial court granted a motion for summary judgment in favor of a defendant corporation who had designed,

manufactured and/or sold an automobile device that was attached to a vehicle that hit the deceased's car. The issue raised on appeal was whether the evidence was sufficient as presented by the plaintiff to overcome a motion for summary judgment. The Maryland Court of Appeals affirmed the summary judgment finding that the mere existence of some alleged factual dispute among the parties would not defeat an otherwise properly supported motion for summary judgment. The court went on to hold that "an expert's opinion is of no greater probative value then the soundness of the reasons given therefore will warrant. An expert's judgment has no probative force unless there is a sufficient basis upon which to support his conclusions." Id. Moreover, the court held that the expert must be sufficiently familiar with the subject matter to "elevate his opinion above the realm of conjecture and speculation." Id.

In the above-captioned matter, Plaintiffs' experts have indeed testified that it was a deviation in accepted standards of care for Raj Gupta, M.D. to not insist that Veronica Pollard remain in the United States for medical treatment. They make this contention even though each of Plaintiffs' experts admit to having no expertise regarding the standard of medical care available in England. During the deposition of Plaintiffs' expert, Leroy Fleming Smith, Jr., M.D., he was questioned regarding his expertise to testify on issues of standard of care in the United Kingdom. (See the deposition transcript of Leroy Fleming Smith, Jr., M.D., pages 14-18, adopted and incorporated as Exhibit 1). During the questioning, Dr. Smith admitted that he did not consider himself an expert on the standard of care for breast cancer in England. Likewise, Rebecca A. Zuurbier, M.D., has been identified and deposed as an expert witness against Raj Gupta, M.D. Dr. Zuurbier was asked about her familiarity with the English health system. She

responded that she had none. (See the deposition transcript of Rebecca A. Zuurbier, M.D., page 35, adopted and incorporated as Exhibit 2). Moreover, G. Peter Pushkas, M.D., another physician identified to testify against Raj Gupta, M.D., stated that he had no familiarity with the standard of care in England during the time period around 1998. (See the deposition transcript of Dr. Pushkas, page 15, adopted and incorporated as Exhibit 3). Finally, James Vincent Fiorica, M.D., the final expert identified to testify regarding standards of care with Dr. Gupta stated during his deposition that he agreed with the recommendations made in Dr. Gupta's consultative report to be transmitted to England. In fact, Dr. Fiorica believes that those recommendations adhere to accepted standards of care. He goes on to opine that he also knew nothing about the healthcare system in England but knows that those medications recommended by Dr. Gupta would have been available there. (See the deposition transcript of Dr. Fiorica, pages 25-27, adopted and incorporated as Exhibit 4).

     An expert's opinion is only as valuable as the basis upon which it is made. In Beatty, the court held that if the expert's basis for his opinion is weak, summary judgment is appropriate. In the present action, this is the case. Specifically, Plaintiffs' experts all agree that chemotherapy, as outlined and recommended by Raj Gupta, M.D. would have adhered to accepted standards of care. Their experts go on to opine that it was a deviation in accepted standards of care for Dr. Gupta to "permit" Veronica Pollard to relocate to the United Kingdom where an English physician made different recommendations. Despite this fact, all of Plaintiffs' experts admit to having no knowledge of English standard of care and the English healthcare system. This results in a missing link in Plaintiffs' standard of care argument. In reality, all of Plaintiffs' experts

are attempting to hold Dr. Gupta responsible for the decisions made by a doctor located 3,500 miles away.

At the deposition of the English doctor, David Dodwell, M.D., Dr. Dodwell indicated that he was well aware of the recommendations of Raj Gupta, M.D. when he made his decisions regarding treatment for Veronica Pollard. (See pages 7 to 9 of the de bene esse deposition of Dr. Dodwell, adopted and incorporated as Exhibit 5). He further indicated that during the time from February of 1999 until she left the United Kingdom, he was Veronica Pollard's treating oncologist. (See page 11 of the de bene esse deposition of Dr. Dodwell, adopted and incorporated as Exhibit 6). There is no material dispute of fact that all of Plaintiffs' experts agree with the recommendations articulated in Raj Gupta, M.D.'s medical reports. There is also no dispute that these physicians are not qualified to testify as to standards of care in the United Kingdom. Despite this fact, the Plaintiffs attempt to hold Raj Gupta, M.D. to a higher standard then their experts have met. Namely, to be an authority on English standard of care and to direct the actions and decision-making process of an English physician.

Plaintiffs further assert that Georgia law permits a loss of chance of survival based upon Richmond County Hospital Authority v. Dickerson, 182 Ga. App. 601, 356 S.E.2d 548 (1987). In Richmond, plaintiff decedent was treated at the defendant hospital for an aneurysm. The defendant hospital contended that even had the surgery been conducted, as plaintiff's standard of care experts claim, the decedent's chances of survival would still have been less then 50 percent. Though the Richmond court indeed states that proximate cause is not eliminated by merely establishing by expert opinion

that the patient had less then 50 percent chance of survival had the negligence not occurred, the court says this in pure dicta. It is clear from the <u>Richmond</u>, holding that the denial of the motion for summary judgment is based purely on standard of care issues and not the issues of causation. Moreover, the case before this Honorable Court differs greatly from that of <u>Richmond</u>.

In <u>Dowling v. Lopez</u>, 211 Ga. App. 578, 440 S.E.2d 205 (1994), decided after <u>Richmond</u>, the court clearly states that loss of chance is not compensable under Georgia law. Clearly, in the present instance, all of Plaintiffs' expert witnesses (as fully set out in this Defendant's Motion for Summary Judgment) believe that the Plaintiff had a well over 50 percent chance of survival with or without the administration of chemotherapeutic drugs. As such, the Plaintiff cannot prove that, to a reasonable degree of medical probability, failure of the administration of chemotherapeutic medication in any way contributed to Veronica Pollard's reoccurrence. As Plaintiff points out in its Opposition, of those patients who do have a reoccurrence of breast cancer, approximately six to eight percent of patients with Ms. Pollard's type of tumor, only one in three benefits from chemotherapy. (See the deposition transcript of James Stark, M.D., pages 82-83, adopted and incorporated as Exhibit 7). Therefore, even looking at the subset of patients who will reoccur but have chemotherapy, it cannot be said, to a reasonable degree of medical probability, that Veronica Pollard would have fallen into the subset to benefit from chemotherapeutic agents. This fact is not disputed by expert testimony.

## CONCLUSION

For the reasons set forth above, there is no material dispute of fact as to both standard of care and causation.

Respectfully submitted,

_____
Joan Cerniglia-Lowensen, #10747
Morgan Shelsby Carlo Downs & Everton
4 North Park Drive, Suite 404
Hunt Valley, Maryland 21030
410-584-2800

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of October, 2003, a copy of the foregoing Defendants' Reply to Plaintiffs' Opposition to Defendant, Raj Gupta, M.D.'s, Motion for Summary Judgment was mailed postage prepaid to:

Lesley S. Zork, Esquire
Bruce J. Klores & Associates
915 Fifteenth Street, N.W.
Third Floor
Washington, D.C. 20005

Peter R. Masciola, Esquire
Law Offices of Peter Masciola
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004

Larry Adams, Esquire
Assistant United States Attorney
United State Attorney's Office
6625 U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

Catherine A. Hanrahan, Esquire
Wilson, Elser, Moskowitz, Edelman
& Dicker LLP
1341 G Street, NW, 5th Floor
Washington, D.C. 20005

Joan Cerniglia-Lowensen, #10747
Morgan Shelsby Carlo Downs & Everton
4 North Park Drive
Suite 404
Hunt Valley, Maryland 21030
410-584-2800