**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| VERONICA POLLARD, *et al.*, | : |
| | : |
| Plaintiffs | : |
| | : |
| v. | :    C.A. No.:  S-02-764 WDQ |
| | : |
| UNITED STATES OF AMERICA, *et al.,* | : |
| | : |
| Defendants | : |

### DEFENDANT HUMANA MILITARY HEALTHCARE SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT

The defendant, Humana Military Healthcare Services, Inc., ("Humana") by counsel WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, respectfully moves this Court, pursuant to F.R.C.P. 56, for entry of summary judgment in its favor and as reasons therefor states as follows:

1.    Under the *lex loci delicti* choice of law analysis, this Court should apply the substantive law of Georgia to this case.

2.    Defendant Humana is a party to this case by virtue of plaintiffs' allegations that defendant Raj Gupta, M.D. was acting as its agent, employee, representative and/or servant when he provided medical care to plaintiff Veronica Pollard.[1]

3.    Dr. Gupta is not and was not an agent, employee, representative, and/or servant of Humana, nor do the facts in this case support a finding that Dr. Gupta was an apparent or ostensible agent of Humana.

---

[1] It is also alleged Dr. Gupta was acting as an agent, employee, representative and/or servant of co-defendants United States of America and Sterling Medical Corporation.

166719.1

4.     Plaintiffs fail to identify facts to support their allegation that Dr. Gupta failed to conform to the standard of care.

5.     Plaintiffs fail to demonstrate that the alleged negligence of Dr. Gupta is a proximate cause of their alleged damages.

6.     Plaintiffs fail to establish sufficient facts to support a finding that a physician/patient relationship continued to exist after plaintiffs left the United States and plaintiff Veronica Pollard obtained treatment in England.

7.     Plaintiff Roosevelt Pollard fails to set forth a claim upon which relief may be granted.

For these reasons, and those more fully set forth in the accompanying Memorandum of Points and Authorities, defendant Humana Military Healthcare Services, Inc. is entitled to summary judgment, dismissal with prejudice as to plaintiffs' claims and such further and just relief the Court deems appropriate.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP

By:     *Catherine A. Hanrahan*
         Catherine A. Hanrahan, #06711
         The Colorado Building
         1341 G Street, NW
         Suite 500
         Washington, DC  20005
         (202) 626-7668
         fax (202) 628-3606

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Defendant Humana Military Healthcare Services, Inc.'s Motion for Summary Judgment, Memorandum of Points and Authorities, Exhibits and Proposed Order were mailed, postage pre-paid, this 24th day of December, 2003 to:

Bruce J. Klores, Esquire
Lesley S. Zork, Esquire
Bruce J. Klores & Associates, PC.
915 15th Street, NW
Washington, DC  20005

Peter R. Masciola, Esquire
601 Indiana Avenue, NW
Suite 603
Washington, DC  20004
*Counsel for Plaintiffs*

Larry Adams, Esquire
Assistant United States Attorney
United States Attorney's Office
6625 U.S. Court House
101 W. Lombard Street
Baltimore, MD  21201
*Attorney for United States of America*

Joan Cerniglia-Lowensen, Esquire
Morgan, Shelsby, Carlo, Downs & Everton
4 North Oak Drive
Suite 404
Hunt Valley, MD  21030
*Attorneys for Dr. Gupta and Sterling Medical Corporation*

_Catherine A. Hanrahan_
Catherine A. Hanrahan

166719.1

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| VERONICA POLLARD, *et al.*, | : |
| | : |
| Plaintiffs | : |
| | : |
| v. | :          C.A. No.:  S-02-764 WDQ |
| | : |
| UNITED STATES OF AMERICA, *et al.,* | : |
| | : |
| Defendants | : |

**DEFENDANT HUMANA MILITARY HEALTHCARE SERVICES, INC.'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF IT'S**
**MOTION FOR SUMMARY JUDGMENT**

The defendant, Humana Military Healthcare Services, Inc., ("Humana") by counsel

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, hereby files the following

Memorandum of Points and Authorities in support of its Motion for Summary Judgment.

This case arises from treatment plaintiff Veronica Pollard received at the Dwight D.

Eisenhower Army Medical Center at Fort Gordon, Georgia ("Treatment Center").   Plaintiffs

Roosevelt and Veronica Pollard seek damages for the alleged negligence of health care providers

Veronica Pollard consulted in the fall of 1998 at the Treatment Center.   Their complaint seeks

compensatory damages against the United States of America ("USA"),    Sterling Medical

Corporation ("Sterling"), Raj Gupta, M.D. and Humana.   Count I (negligence) seeks damages on

behalf of Veronica Pollard for alleged failures to conform with the standard of care in the diagnosis

and treatment of her breast cancer.   Count II (loss of consortium) seeks damages on behalf of

Veronica and Roosevelt Pollard for harm to their marital relationship.   Count III, although untitled,

is in essence a claim on behalf of Roosevelt Pollard for negligent infliction of emotional distress experienced by him in witnessing his wife Veronica's illness.

## I.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Plaintiff Veronica Pollard is married to plaintiff Roosevelt Pollard, Jr., who is a Sergeant in the U.S. Army. *See* Deposition of Sgt. Roosevelt Pollard, attached hereto as Exhibit 1, at 5, 7. Plaintiff Veronica Pollard found a lump in her breast in the fall of 1998. *See* Deposition of Veronica Pollard, attached hereto as Exhibit 2, at 37. She had a biopsy performed by Dr. Sees, a surgeon in the Army, on October 14, 1998, which a pathologist in the Army identified as cancer. A subsequent lumpectomy and lymph node dissection were performed by Dr. Sees on November 12, 1998. *See* Ex. 2 at 38; Deposition of David Sees, M.D., attached hereto as Exhibit 3, at 45. At the subsequent post surgical visit on November 17, 1998, Dr. Sees referred Mrs. Pollard to the Treatment Center's oncology department. *See* Ex. 3 at 39, 47. Mrs. Pollard was appointed to consult with defendant Dr. Gupta on December 1, 1998. *See* Ex. 2 at 41-43.

Mrs. Pollard saw Dr. Gupta on December 1, 1998, but at that appointment she was advised that all studies were not available and therefore she was re-appointed for a consult with Dr. Gupta on December 15, 1998. *See* Deposition of Raj Gupta, M.D., attached hereto as Exhibit 4, at 29-30. The Pollards were at the time preparing to relocate to England, and advised Dr. Gupta of that fact. At the consultation with Dr. Gupta on December 15, 1998, Dr. Gupta had a conversation with someone in England who advised therapy for breast cancer was available upon the Pollards arrival in England. *See* Ex. 1 at 19-23.

The relocation of the Pollard family was due to their decision to accompany Sergeant Pollard to his next assignment at Menwith Hill, England for which he had received orders many

months prior to Mrs. Pollard's diagnosis of breast cancer. *See* Ex. 1 at 15-16, 27. The Pollards had sold their home in Georgia in the fall of 1998 and had moved to an apartment pending their relocation to England. The plaintiffs left Georgia in December, 1998, visited family in New York, and arrived in England in the middle of January 1999. See Ex. 1 at 15-16, 27; Ex. 2 at 43-44, 61-62.

Mrs. Pollard consulted Dr. Corrin at the treatment facility at Menwith Hill Station in England in January 1999, and was referred to Dr. Dodwell, an oncologist. She saw Dr. Dodwell on February 16, 1999, and thereafter began a treatment regimen of radiation therapy under Dr. Dodwell's supervision that concluded in late spring 1999. *See* Ex. 2 at 43, 63-66. In the spring of 2000, Veronica Pollard had a local recurrence and metastasis of her breast cancer and returned to the United States for further treatment at Walter Reed Medical Center.

Dr. Gupta, a civilian who is a board-certified oncologist, first began seeing patients at the Treatment Center in 1990. *See curriculum vitae* of Raj Gupta, M.D., attached hereto as Exhibit 5. He was the only civilian oncology medical provider at the Treatment Center. Dr. Gupta's presence at the Treatment Center in December 1998 was pursuant to a series of contracts between Humana and the United States, between Humana and Sterling, and between Sterling and Dr. Gupta. *See* Ex. 8, Ex. 9, Ex. 10 and Ex. 11. Prior to 1996, Dr. Gupta's presence at the Treatment Center was the result of a relationship between Dr. Gupta and those responsible for running the Treatment Center. *See* Ex. 5.

Dr. Fink is a colonel in the Army and Chief of the Department of Oncology at Fort Gordon presently and at the time at issue in 1998. According to Dr. Fink, no one from Sterling or Humana supervised the quality of Dr. Gupta's care. *See* Deposition of Colonel Kenneth Fink, M.D., attached hereto as Exhibit 6, at 19. In addition, Dr. Fink, on a periodic basis, reviews the credentialing

166719.1

3

packet by checking privileges and ascertaining that Dr. Gupta is performing the duties that he sees

fit for an oncologist. *See* Ex. 6 at 17-18. Further, Dr. Fink notes that Dr. Gupta is a salaried

physician paid by Sterling, which is the contracting company that hired Dr. Gupta. *See* Ex. 6 at 58.

In 1996, Humana contracted with the U.S. Department of Defense to manage delivery of

health care services in the Southeast region of the United States to beneficiaries of the Civilian

Health and Medical Program of the Uniformed Services (CHAMPUS) pursuant to the TRICARE

program. *See* Affidavit of Paul Esselman, attached hereto as Exhibit 7. The TRICARE program is

the managed health care program established and underwritten by the Department of Defense, and

authorizes the selection of contractors in the private sector to perform certain administrative and

financial services for the TRICARE program. *See* 10 U.S.C. § 1072(7) (1998).

Humana submitted a successful bid to win a TRICARE contract for the region that

encompasses the Treatment Center at Fort Gordon, Georgia. One aspect of the TRICARE contract

is what is referred to as the "Resource Sharing Program." *See* Resource Sharing Program

Amendments, attached hereto as Exhibit 8. The Resource Sharing Program requires a contractor at

the direction of the Government to take steps to supply civilian medical personnel to facilities such

as Fort Gordon, which for a myriad reasons (for example, the current deployment of military

personnel to Afghanistan and Iraq) need to supplement existing active military health care

personnel. *See* Ex. 8.

In 1996, when Humana was awarded the TRICARE contract, Dr. Gupta remained in his role

as a civilian oncologist providing oncology services at Fort Gordon pursuant to a contract between

defendants Sterling and Dr. Gupta. *See* Ex. 5; Tricare Resource Sharing Services, Dwight D.

Eisenhower Army Medical Center, Ft. Gordon, Georgia Oncology Agreement – Fee for Service,

attached hereto as Exhibit 9.  Humana, in order to meet its contractual obligation under the resource sharing provision, entered into contracts with Sterling and the Treatment Center.  *See* Agreement Between Humana Military Healthcare Services and Sterling Medical (Oncology), attached hereto as Exhibit 10; HMHS / Military Treatment Facility Resource Sharing Agreement, attached hereto as Exhibit 11.  Dr. Gupta signed a "TRICARE Resource Sharing Services" contract with Sterling.  *See* Ex. 9.  Humana is not a party to that contract.  *See id.*  Under the terms of the contract, Sterling agrees to pay Dr. Gupta's salary and to the amount of his salary.  *See* Exhibit 9 ¶¶ 1, 4.  The hours and the oversight as to the work performed are not the responsibility of Sterling or Humana.  *See* Ex. 6 at 19-20, 53-54, 60-62.  Dr. Gupta and Sterling also expressly agreed that Dr. Gupta is an independent contractor:

> 5)    Independent Contractor.  Physician and Sterling Medical agreed that Physician is an independent contractor, and not an employee of Sterling Medical.  Physician shall be responsible for his/her own acts and conduct in performance of services hereunder…

*See* Ex. 9, ¶ 5.

Defendant Humana contends that as a matter of law, there are no facts to support any liability which Humana allegedly has to the plaintiffs for any alleged negligent act of Dr. Gupta, a health care provider with whom it has no contract and no control over his exercise of medical judgment.

## II.    STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c), summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986)(emphasis in original). The burden of proof rests initially with the moving party, and the non-moving party is entitled to have all inferences drawn in his favor. *Ross v. Communication Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). The burden, however, is on the non-moving party to produce specific facts to show there is a genuine issue for trial. *Id.* In the case at bar, summary judgment is appropriate for there is no genuine issue as to any material fact as to defendant Humana and as a matter of law, Humana is entitled to summary judgment.

## III.  ARGUMENT

### A.    GEORGIA LAW APPLIES TO THIS ACTION

This Court should apply a *lex loci delicti* analysis to the choice of law issue. Regardless of whether the Court exercises jurisdiction based upon the Federal Tort Claims Act ("FTCA") or diversity jurisdiction, the Court must determine the place of the wrong and the injury in order to determine whose law to apply. Defendant submits that the both the wrong and the injury occurred in Georgia, and therefore the substantive law of Georgia applies to this action.

Plaintiffs allege jurisdiction over the United States pursuant to the Federal Tort Claims Act ("FTCA"), and allege jurisdiction over the remaining defendants based upon diversity jurisdiction, federal question (arising under and incident to the claims under the FTCA), and supplemental jurisdiction. *See* First Amended Compl. ¶ 4.

The basis of the exercise of jurisdiction is relevant to which state's choice of law rules this Court will apply. In a claim brought under the FTCA, Courts must apply the whole law, including the choice of law rules, of the state where the negligent or wrongful acts occurred. *See* 28 U.S.C. § 1346(b) (1998); *Gupton v. U.S.*, 799 F.2d 941, 942 (4th Cir. 1986) (observing "[t]he Federal Tort

166719.1

6

Claims Act follows the rule of *lex loci delicti"*); *Richards v. United States*, 269 U.S. 1, 10-11, 82 S.Ct. 585, 591-92 (1962); *Spring v. United States*, 833 F.Supp. 575, 576 (E.D. Va. 1993). Here, the alleged acts or omissions by Dr. Gupta occurred in Georgia. Therefore, under the FTCA, the Court would apply Georgia's choice of law rules to determine what substantive law would apply to this action. Under diversity jurisdiction, this Court would apply Maryland's choice of law rules. *See Leonard v. Wharton*, 268 F. Supp. 715 (D. Md. 1967) (a federal Court sitting in diversity will apply the choice of law rules of the state in which it sits).

Whether the Court exercises jurisdiction based upon the FTCA or diversity jurisdiction, both Georgia and Maryland follow the doctrine of *lex loci delicti* in tort actions: the law of place of the wrong governs the claim. *See Ferguson v. Trans World Airlines, Inc.*, 135 F.Supp.2d 1304 (N.D.Ga. 2000); *In re: Sabin Oral Polio Vaccine Products Liability Litigation*, 774 F.Supp. 952 (D.Md. 1992).

Maryland and Georgia apply similar definitions of the "place of wrong." Under Georgia law, "the place of the wrong is the place where the injury was sustained rather than where the acts were committed, and is the place where there takes place the last event necessary to make an actor liable for an alleged tort." *Brooks v. Eastern Air Lines, Inc.*, 253 F.Supp. 119, 121 (N.D.Ga. 1966) (quoting *Orr v. Sasseman,* 239 F.2d 182, 184 (5th Cir. 1957). *See also Wardell v. Richmond Screw Anchor Co.*, 210 S.E.2d 854 (Ga. Ct. App. 1974); *Ohio Southern Express Co. v. Beeler*, 140 S.E.2d 235 (Ga. Ct. App. 1965).

Under Maryland law, "a tort action [is] governed by the substantive law of the state where the wrong occurred." *Hauch v. Connor*, 295 Md. 120, 123, 453 A.2d 1207, 1209 (1983). The wrong occurs where the last act required to complete the tort occurs, or where the injury was

suffered, not where the wrongful act took place.  *See Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999); *In re: Sabin,* 775 F.Supp. at 954 (quoting *Johnson v. Oroweat Foords, Inc.*, 785 F.2d 503, 511 (4th Cir. 1986)); *See Phillip Morris, Inc. v. Angeletti*, 358 Md. 689, 746, 752 A.2d 200 (2000) (Maryland Courts apply the law of the state where the injury occurred).

Here, plaintiffs allege that Dr. Gupta had a responsibility to provide the proper care to plaintiff Veronica Pollard in Georgia, as well as to ensure that she obtained the proper care in England.  Although there is an argument that the injury is the recurrence and metastasis of breast cancer which occurred in England, and therefore would suggest that this Court look to England, under *Farwell v. Un*, 902 F.2d 282 (4th Cir. 1990), the common sense exception to *lex loci delicti* rule dictates that Georgia law is the applicable law.  *See Farwell,* 902 F.2d at 286-87 (citing the *Restatement of Conflict of Laws* § 380(2) (1934)).  In addition, it may be argued that the alleged injury to Veronica Pollard occurred in Georgia when microscopic disease was present in the breast after surgery and not treated before the Pollards departed to England.[2]

**B.    PLAINTIFFS CANNOT ESTABLISH AS A MATTER OF LAW THAT HUMANA IS DR. GUPTA'S EMPLOYER OR PRINCIPAL**

**1.    Humana's contracts did not impose any non-delegable duty on Humana**

The obligations Humana contracted to Sterling were clearly delegable duties under Humana's contract with the U.S.  The TRICARE contract specifically authorizes Humana to enter contracts to fulfill its obligations, thereby supporting the fact that it is a delegable duty.  "Resource sharing shall be based upon written agreement . . . between contractor [Humana] and the resourse sharing providers . . ."  *See* Ex. 8 at ¶ 4(b)(1).

---

[2] Defendant Dr. Gupta and plaintiffs concur that Georgia law applies to this case:  Dr. Gupta's motion for summary judgment cites Georgia law, and plaintiffs' opposition cites Georgia law as well.  Neither, however,  provide a choice of law analysis in their pleadings.

166719.1

Under Georgia law, a principal or general contractor may be held liable for the acts of independent contractors, if the contractor is a) performing a duty imposed by statute, or b) engaged in a hazardous activity. *See, e.g., Dept. of Veterans Services v. Robinson,* 536 S.E.2d 617 (Ga. Ct. App. 2000) (observing while employer may be liable for the negligence of a contractor if wrongful act is in violation of statute, statute at issue did not prohibit delegation of management of veterans' nursing homes); *Griffin v. AAA Auto Club South, Inc.*, 470 S.E.2d 474 (Ga. Ct. App. 1996) (observing duty to keep premises safe is statutory and therefore non-delegable even though owner has contract for another party to provide security); *St. Paul Companies v. Capitol Office Supply Co., Inc.*, 282 S.E.2d 205 (Ga. Ct. App. 1981) (observing employer may be liable for actions of independent contractor if work involves non-delegable duty ensuing from inherently dangerous work).[3]

In this matter, there is no statute that prohibits the delegation of the resource sharing requirements or a statute which imposes a duty upon Humana to be the entity to provide civilian health care providers to military treatment centers. Further, there can be no dispute that contracting with a resource sharing provider such as Sterling is not delegating a hazardous activity. Accordingly, there is no basis in law or fact to support that Humana's contractual delegation to Sterling to provide personnel to the Treatment Center was non-delegable duty for which it could be liable.

---

[3] *See also* O.C.G.A. § 51-2-5 (2002), which sets forth the six circumstances in which an employer may be held liable for the negligence of a contractor. In the case at bar, Humana's contractor is Sterling. In this context, none of the six elements is applicable, as the alleged liability of Humana is premised on the alleged failure by Dr. Gupta to comply with the standard of care.

166719.1

2.    **Plaintiff cannot establish as a matter of law that Humana is Dr. Gupta's employer**

In Georgia, a master is liable for the acts of his servant in the course of his employment. *See* Ga. Code Ann. § 51-2-2 (2002); *Farmer v. Ryder Truck Lines, Inc.*, 266 S.E.2d 922, 924 n.2 (Ga. 1980. "A master is one who employs another to perform services and who controls or has the right to control the physical conduct of the person employed in the performance of those services." *Id.* (citations omitted). "The true test of whether the relationship is one of employer-employee or employer-independent contractor is whether the employer, under the contract, assumes the right to control the time, manner, and method of executing work, as distinguished from the right merely to require certain definite results in conformity to the contract." *Charter Peachford Behavioral Health System, Inc. v. Vargas*, 504 S.E.2d 514, 525 (Ga. Ct. App. 1998). "The right to control the manner and method means the right to tell the employee how he shall go about doing the job in every detail, including what tools he shall use and what procedures he shall follow. The right to control the time of doing the job means the right to control the hours of work." *Bell South Telecomm., Inc. v. Widner*, 495 S.E.2d 52, 55 (Ga. Ct. App. 1997).

Here, plaintiffs cannot establish that Humana has an employer-employee relationship with Dr. Gupta. There is no contract of employment between Humana and Dr. Gupta. Humana has no right to tell Dr. Gupta what tools or procedures to follow in his day to day activities. There is no evidence in the record that Humana had the authority to control, direct, or in any way dictate Dr. Gupta's diagnosis, clinical decisions or other aspects of the medical treatment of patients of the military treatment facility. In fact, the uncontroverted testimony of Dr. Fink, the medical director of

the oncology clinic, *see* Exhibit 6, clearly dictates that there is no employer-employee relationship between Humana and Dr. Gupta.[4]

**3.     Plaintiff cannot as a matter of law establish that Dr. Gupta was Humana's agent**

An agency relationship arises under Georgia law "wherever one person expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf."  Ga. Code Ann. § 10-6-1 (2002).  The test applied by Georgia courts is "whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract." *Greenbaum v. Brooks,* 139 S.E.2d 432, 434 (Ga. Ct. App. 1964)  (emphasis deleted).

For the reasons set as forth above, Dr. Gupta was not Humana's agent. Dr. Gupta entered into a contract with Sterling.  Humana is not a party to that contract and has no contractual relationship with Dr. Gupta.

There are no facts in the record that show Humana ever authorized Dr. Gupta to act as Humana's agent or that Humana ever held Dr. Gupta out as its agent.  Accordingly, the plaintiffs' bald allegation of agency fails as a matter of law.

**4.     Dr. Gupta was not an apparent or ostensible agent of Humana**

A plaintiff may subject an alleged principal to liability if the plaintiff can prove 1) the alleged principal represented that another is his servant or other agent; 2) that the plaintiff justifiably relied upon the care or skill of the alleged agent; and 3) the justifiable reliance led to

---

[4]     Dr. Gupta testified at his deposition that his employers are "Sterling Medical Corporation, Humana Corporation and government [sic] of USA."  *See* Ex. 4 at 133-34.  Notwithstanding Dr. Gupta's testimony, the contractual arrangements demonstrate that he entered into a contract with Sterling only, that he is paid by Sterling, and the terms of the contract state he is an independent contractor.  Dr. Fink's testimony further supports that as a matter of law Humana is not the employer or Dr. Gupta.

the injury.  *See Richmond County Hosp. Auth. v. Brown*, 361 S.E.2d 164, 166 (Ga. 1987) (citations omitted).  It is insufficient, as a matter of law, to find that an agency relationship exists when the evidence shows either that an agency was assumed, or that an inference was drawn based on a purported agent's actions.  *See Hinely v. Barrow*, 313 S.E.2d 739, 741 (Ga. Ct. App.1984) (citations omitted).  The Court must apply an objective standard:  it is not enough that a plaintiff believes an agency relationship existed; rather, the principal must represent or hold out the apparent agent.  *See Brown*, 361 S.E.2d at 166.

Here, there is no evidence or testimony of *any* representation by Humana to plaintiffs that Dr. Gupta was authorized to act as its agent.  Neither Veronica Pollard nor Sgt. Pollard testified that Humana represented or held out Dr. Gupta as its agent.  Moreover, the record is devoid of any testimony from either plaintiff that they justifiably relied upon an association between Dr. Gupta and Humana:  there is no testimony that plaintiffs relied upon Humana or its reputation in their decision to see Dr. Gupta.  To the contrary, the testimony establishes that plaintiffs were sent to see Dr. Gupta because of the referral by their treating surgeon, Dr. Sees, a military physician.  Any claim Dr. Gupta was Humana's apparent agent fails as a matter of law because plaintiffs cannot establish they relied upon any alleged association with Humana in their decision to seek treatment from Dr. Gupta.  Sergeant Pollard testified as to his knowledge of Humana's relationship with Dr. Gupta or the Medical Center:

> Q.    …Do you know I represent an entity called Humana Military Health Care Services Inc.?  Do you know what that is?
> A.    It's like TriCare [sic], Champus [sic].
> Q.    What do you mean it's like TriCare, Champus?
> A.    TriCare or Champus is the insurance system that the military uses.
> Q.    For what?
> A.    To take care of us.

Q.    Us being?

A.    Soldiers, service members.  And dependents.

Q.    What do you understand it does?

A.    Provide care.

Q.    When, if at all, did you have any knowledge of the name Humana Military Health Care Services?

A.    I've been in the military for 19 years.  We went from going to the TMC to make appointments with TriCare and Sierra dot.com and Champus.  All it means to us is insurance that the military uses.

Q.    So, you don't know when Humana may have been in that. When you say Champus or TriCare or Sierra, at some point Humana would have popped up on the screen or something?

A.    Yes.

Q.    But you don't know when?

A.    No.

Q.    And if I understand you correctly, it's the organization that somehow pays for the ability to receive health care?  Is that what you understand it to be?

A.    For specialty care and our drugs that we get at the pharmacy. I guess that's where it comes from.

Q.    So, it's something that pays for care as you understand it?

A.    Yes.

Ex. 1 at 87-88.  Plaintiff Veronica Pollard's deposition testimony and trial testimony is absent of any mention of defendant Humana.

The record clearly establishes that plaintiffs had no knowledge of Dr. Gupta's status in the oncology department.   Plaintiff Veronica Pollard received treatment from military physicians exclusively until she encountered Dr. Gupta.  Plaintiff did not and could not know until she arrived for her initial visit with Dr. Gupta that he was not in the military.

Sgt. Pollard's testimony reveals he did not even know when Humana was involved in the TRICARE or CHAMPUS programs.  Plaintiffs cannot credibly argue that Humana represented Dr. Gupta as its agent and they justifiably relied upon the representation in light of this admission by Sgt. Pollard that he did not know when Humana was involved in the TRICARE program.

166719.1                                13

Clearly, the record is void of any evidence to support any claim that Dr. Gupta was Humana's apparent or ostensible agent. Plaintiffs cannot cure the total absence of evidence of any representation by Humana about Dr. Gupta for there never was one, or that they relied upon an alleged association between Dr. Gupta and Humana in their decision to see Dr. Gupta.[5]

For these reasons, the material facts not in dispute, and the applicable controlling case law, the plaintiffs fail to identify a basis of liability (respondeat superior or agency) as to defendant Humana. Humana is not an employer, a principal or an ostensible principal of Dr. Gupta. Accordingly, summary judgment should be entered in favor of defendant Humana on all claims.

## C.     PLAINTIFFS FAIL AS A MATTER OF LAW TO PROVE THE ELEMENTS OF THEIR NEGLIGENCE CLAIM AGAINST DR. GUPTA

For purposes of argument, should the Court determine there is some basis to find potential liability of Humana because of Dr. Gupta's actions, Humana asserts that the plaintiffs fail as a matter of law to support a claim of negligence on the part of Dr. Gupta in his consultations with Veronica Pollard.

Plaintiffs claim Dr. Gupta breached the standard of care when he failed to advise Veronica Pollard of the need for chemotherapy, when the chemotherapy should start, and failed to keep her in the U.S. for treatment. Plaintiffs also claim that Dr. Gupta failed to take steps to determine who would take over Ms. Pollard's care in England, what the standards were in England, and what the availability was for adjuvant chemotherapy and radiation treatment.

---

[5] It is important to note that plaintiffs' participation as members of the TRICARE program which provides benefits for consultations with civilian providers is not what is at issue here. Mrs. Pollard's care was provided at the Military Treatment Facility, versus the option available to her to go "off base" and see health care providers at private clinics at which would trigger her benefits as a participant in the standard TRICARE program.

Humana submits that even if plaintiffs prove these alleged breaches, plaintiffs cannot establish that any breach is a proximate cause of plaintiffs' damages.  Under Georgia law, a patient must prove that a) a duty existed pursuant to the physician / patient relationship, b) the physician breached that duty by failing to exercise the requisite degree of skill and care, and c) that the failure was the proximate cause of the injury sustained.  *See Zwiren v. Thompson*, 578 S.E.2d 862, 864 (Ga. 2003); *Patterson v. Fulton-Dekalb Hospital Authority*, 505 S.E.2d 232 (Ga. Ct. App. 1988). Proximate cause exists when "the natural and continuous sequence, unbroken by other causes, produces an event, without which the event would not have occurred."  *Zwiren v. Thompson*, 578 S.E.2d 862, 865 (Ga. 2003); *T.J. Morris & Co. v. Dykes*, 398 S.E.2d 403 (Ga. Ct. App. 1990); *Locke v. Vonalt*, 377 S.E.2d 696 (Ga. Ct. App. 1989).

None of plaintiffs' experts testified that the failure to utilize chemotherapy decreased Ms. Pollard's chances of "cure" below the necessary 50 percent range.[6]  At best, plaintiffs' experts argue a loss which is not compensible, i.e. a decrease in likelihood of recurrence and/or metastasis from as high as 95% to, because of the alleged failures, as low of 58%.  Georgia does not permit recovery based upon what is in essence a loss of chance argument.  For example, in *Dowling v. Lopez*, 440 S.E.2d 205 (Ga. Ct. App. 1993), the Court held that Georgia law did not permit recovery under Georgia's wrongful death statute for loss of chance in situations.  While *Dowling* was an

---

[6] Plaintiffs identified four expert witnesses to testify as to causation. Dr. Gerald Sokol testified that patients with tumors similar to Veronica Pollard's have a five year survival rate of 90 % when the tumor is removed and radiation is administered; the addition of chemotherapy changes the survival rate to 92 to 95%. *See* Deposition of Gerald Sokol, M.D., attached hereto as Exhibit 12, at 48, 62.  Dr. Leroy Smith testified that the ten-year survival rate is 58% for breast cancer patients with tumors of various sizes that receive radiation therapy; the addition of chemotherapy changes the ten-year survival rate to 68.3%.  *See* Deposition of Leroy Smith, M.D., attached hereto as Exhibit 13, at 44-46.  Dr. G. Peter Pushkas testified that a patient with a tumor similar to Mrs. Pollard's has a 90% survival rate with radiation only; the addition of chemotehrapy changes the survival rate to 93%.  *See* Deposition of G. Peter Pushkas, M.D., attached hereto as Exhibit 14, at 31-32.  Finally, Dr. James Fiorica testified that a patient with a tumor similar to Mrs. Pollard's have a recurrence rate of 8 to 10%, with a recurrence rate of 5 to 6 % if chemotherapy with the addition of chemotherapy.  *See* Deposition of James Fiorica, M.D., attached hereto as Exhibit 15, at 40-41.

15

interpretation of the remedies under Georgia's wrongful death statute, its principles certainly apply herein.

Moreover, plaintiffs must prove by a preponderance of the evidence that Dr. Gupta's negligence proximately caused their damages. Georgia defines a preponderance of the evidence as "that superior weight of evidence upon the issues involved, which, while not enough to free the mind wholly from a reasonably doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other." Ga. Code Ann. § 42-1-1(5) (2002). Proximate cause is defined as "that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." *Zwiren v. Thompson*, 578 S.E.2d 862, 865 (Ga. 2003). Plaintiffs must establish proximate cause by a preponderance of the evidence through the testimony of their expert witnesses. *See id.* "An expert's opinion on the issue of whether the defendant's alleged negligence caused the plaintiff's injury . . . must be based on reasonable medical probability or reasonable medical certainty." *Id.* at 867. The opinion cannot be based upon speculation or possibility. *See id.*

Plaintiffs' experts' testimony as to causation is nothing more than loss of chance, for they cannot and do not render opinions that the failure to implement chemotherapy caused Mrs. Pollard's subsequent recurrence and metastasis based upon the scientific data they identify, all of which dictates that given her tumor, regardless of the treatment regimen instituted she had a more likely than not a chance of cure based upon the studies known by the experts as of this date and time. *See* Footnote 6.

Further, plaintiffs' experts have failed to identify scientific data to support their position that Dr. Gupta's alleged failure to ensure that Mrs. Pollard received chemotherapy proximately caused

her current damages, or recurrence / metastasis of her cancer.  Plaintiffs' expert Dr. Leroy Smith admitted that medical studies show that a patient with breast cancer who receives no chemotherapy after a surgical removal of the tumor has a 58% chance of remaining cancer free for the next ten years.  The addition of chemotherapy increases this chance of remaining free of recurrence or metastasis to 68%.  *See* Ex. 13 at 108.  Dr. Smith cannot opine, therefore, that but for the administration of chemotherapy Mrs. Pollard would not have recurred or metastasized.

Additionally, plaintiff's expert Dr. Gerald Sokol testified that medical studies showed breast cancer patients who receive no therapy (no chemotherapy or radiation) following surgical removal of a tumor have a recurrence rate of 40%, or a likelihood of remaining cancer free of 60%.  *See Ex. 12* at 65.  Dr. Sokol was asked:

> Q.    So in the context that you are familiar with in legal/medical expert standards, when asked whether Mrs. Pollard would have reoccurred had she chosen no further therapy, isn't it correct that within a reasonable degree of medical probability the answer would have been she most likely would not have . . . given those studies?
> …
> A.    It depends.  If you are saying are these or are these patients more likely than not on a statistical basis, no, you can't argue with the statistics.
> B.

Ex. 12 at 65-66 (objections of counsel omitted).

Under Georgia law, the plaintiffs' experts' bald conclusions that the failure to administer chemotherapy or timely radiation caused her recurrence and/or metastasis, which are not supported by the scientific studies, are insufficient as a matter of law to establish that the failure to administer chemotherapy, or radiation treatment earlier than occurred in this case, proximately caused Mrs. Pollard's damages.  "Expert testimony that it was more likely that there was a possibility that the

injury could have been avoided does not provide the necessary basis for the expert's opinion on proximate cause." *Zwiren*, 578 S.E.2d at 865.

Therefore, Plaintiff cannot establish that the alleged failure to timely administer therapy was a proximate cause of plaintiff Veronica Pollard's recurrence and metastasis of cancer. Because there can be no liability found then against Dr. Gupta, summary judgment in favor of defendant Humana must be entered on all counts.

**D. HUMANA AND DR. GUPTA SHOULD NOT BE HELD LIABLE AS THE PATIENT/ PHYSICIAN RELATIONSHIP ENDED WHEN PLAINTIFF LEFT THE COUNTRY**

Humana submits that plaintiffs cannot establish that Dr. Gupta continued to owe Veronica Pollard any duty as her physician once she left Georgia.

"[B]efore a plaintiff may recover on the theory that he received negligent treatment from a defendant physician, the plaintiff must show that a doctor-patient relationship existed between them." *Minster v. Pohl*, 426 S.E.2d 204, 205 (Ga. Ct. App. 1992). "No professional skill or specialized medical knowledge is necessarily required to resolve the issue whether a doctor-patient relationship existed." *Id.* at 206.

Clearly, a physician/patient relationship was created between Ms. Pollard and Dr. Gupta between December 1, 1998 to December 16, 1998, when Dr. Gupta saw her on two occasions. The issue here is whether that relationship ended when Ms. Pollard left Georgia and went to England in January 1999.

Under Georgia law, a patient/physician relationship terminates if the patient withdraws from treatment by mutual consent if the patient dismisses the physician, or the need for the relationship ceases. *See Grant v. Douglas Women's Clinic, P.C.*, 580 S.E.2d 532 (Ga. Ct. App. 2003); *Matthews*

*v. Dekalb County Hosp. Auth.*, 440 S.E.2d 743 (Ga. Ct. App. 1994) (finding physician/patient relationship terminated when defendant voluntarily withdrew from physician's care).

Plaintiff Veronica Pollard left Georgia in December 1998 to relocate to England. At that time, the physician/patient relationship was terminated. Dr. Gupta was under no obligation to continue to treat or consult as to Veronica Pollard. Accordingly, pursuant to the applicable law, without a patient /physician relationship, there is no basis to find liability as to any alleged failures after Mrs. Pollard's departure.

Regardless of whether the court agrees that the physician/patient relationship terminated, plaintiffs' claims nonetheless fail because plaintiffs' experts cannot support their claims of negligence with respect to Dr. Gupta and Mrs. Pollard's care in England.

Georgia law requires expert testimony to support the elements of negligence – duty, breach of duty, causation and damage. *See Turner v. Malone*, 335 S.E.2d 404, 406 (Ga. Ct. App. 1985) (holding physician entitled to summary judgment where patient failed to demonstrate causal connection between injuries and damages sought through expert testimony); *Parker v. Knight*, 267 S.E.2d 222, 224 (Ga. 1980) (stating "in medical malpractice cases, the plaintiff must produce expert testimony in order to prevail at trial" unless negligence clearly appears from the evidence); *Shea v. Phillips*, 98 S.E.2d 552, 555 (Ga. 1957) (standard of care ordinarily established through the testimony of expert witnesses).

In this case, the plaintiffs' experts fail to have the prerequisite base of knowledge upon which to opine with respect to any of Dr. Gupta's interactions with the English health care system.

Dr. Smith admitted that he did not consider himself an expert on the standard of care for breast cancer in England. *See* Ex. 13 at 14-18. Dr. Rebecca Zuurbier and Dr. G. Peter Pushkas both

166719.1

19

testified that they had no familiarity with the English healthcare system.  *See* Deposition of Rebecca Zuurbier, M.D., attached hereto as Exhibit 16, at 35; Ex. 14 at 15.  Dr. James Fiorica also testified that he knows nothing about the English healthcare system. *See* Ex. 15 at 25-27.

The experts acknowledged that they have no knowledge of the English healthcare system. Given this lack of knowledge, it is obvious that these experts fail to have the requisite qualifications to render opinions that would complete the cause of action with respect to Dr. Gupta's interactions with England:  they have no basis at all to testify as to what could or should have happened had Dr. Gupta contacted the English healthcare providers as they allege he should have done.  The experts acknowledge they have no training or familiarity with the standards of care in England; therefore, they cannot testify as to the impact on the practice in England on a call from a physician in the U.S.

Accordingly, Humana submits that summary judgment is appropriate to those portions of plaintiffs' claims that are based upon the alleged negligence that occurred after plaintiff's last visit with Dr. Gupta on December 15, 1998.

## E.    COUNT III FAILS TO STATE A CLAIM UNDER GEORGIA LAW

Roosevelt Pollard seeks damages in Count III.  Count III alleges that as a result of the alleged negligence, Roosevelt Pollard witnesses his wife undergo treatment for her condition, causing him mental anguish, loss of income, pain and suffering, loss of income and services, and loss of familial consortium.  *See* Amended Compl. ¶ 28.  Although not captioned as such, Sergeant Pollard's claim is one for negligent infliction of emotional distress.

Georgia does not recognize the tort of negligent infliction of emotional distress.  *See Lee v. State Farm Mut. Ins. Co.*, 533 S.E.2d 82, 87 (Ga. 2000) (declining to adopt a rule that might create a separate tort allowing recovery of damages for the negligent infliction of emotional distress).

Rather, "Georgia applies the impact rule to cases in which a party seeks to recover for emotional distress in a claim involving negligent conduct." *Hang v. Wages & Sons Funeral Home, Inc.*, 585 S.E.2d 118, 120 (Ga. Ct. App. 2003). The impact rule has three elements: 1) a physical impact to plaintiff; 2) the physical impact causes physical injury to the plaintiff; and 3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress. *See id.* Thus, "[f]or a claim of emotional distress or mental pain and suffering to succeed, a plaintiff must have sustained actual bodily contact with the defendant or an instrumentality of the defendant." *Nationwide Mut. Fire Ins. Co. v. Lam*, 546 S.E.2d 283, 284 (Ga. Ct. App. 2001).

Plaintiff Roosevelt Pollard fails to satisfy the requirements of the impact rule: there is no evidence in the record, nor can there be, that the alleged failure to conform with the standards of care in the treatment of his wife resulted in any physical impact on him. *See, e.g., Shores v. Modern Transp. Services, Inc.*, 585 S.E.2d 664 (Ga. Ct. App. 2003) (holding plaintiff not entitled to damages for emotional distress where no direct impact caused physical injury to plaintiff); *Hang v. Wages & Sons Funeral Home, Inc.*, 585 S.E.2d 118 (Ga. Ct. App. 2003) (finding plaintiffs could not pursue claim for emotional distress where plaintiffs were not physically injured by funeral home's erroneous cremation of plaintiffs' decedent). Entry of summary judgment in favor of defendants as to Count III is therefore appropriate as a matter of law.

## IV. <u>CONCLUSION</u>

The substantive law of the State of Georgia applies to plaintiffs' actions. The law supports the conclusion that the plaintiffs have failed to identify any facts to support liability under the theories of r*espondeat superior* or agency as to Humana because of Dr. Gupta's treatment of Veronica Pollard. Further, there is insufficient expert testimony to support causation and therefore

no legally sufficient evidence to submit to a jury the question of whether Dr. Gupta was negligent during his consultations with Mrs. Pollard.  Finally, there is no cause of action for an independent claim brought by Roosevelt Pollard in Count III of the Complaint.  Accordingly, defendant Humana respectively requests that its Motion for Summary Judgment be granted and that all claims against it be dismissed with prejudice.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP


By:    *Catherine A. Hanrahan*
       Catherine A. Hanrahan, #06711
       The Colorado Building
       1341 G Street, NW, Suite 500
       Washington, DC  20005
       (202) 626-7668
       (202) 628-3606

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| VERONICA POLLARD, *et al.*, : | |
| : | |
|     Plaintiffs         : | |
| : | |
|         v.         : | C.A. No.:  S-02-764 WDQ |
| : | |
| UNITED STATES OF AMERICA, *et al.,* : | |
| : | |
|     Defendants     : | |

**ORDER**

Upon consideration of defendant Humana Military Healthcare Services, Inc.'s Motion for

Summary Judgment, any Opposition thereto, and Reply,  and the record herein, it is this _____ day

of _____, 2004, hereby

ORDERED that the Motion is GRANTED, and it is further

ORDERED that judgment be entered in favor of defendant Humana Military Healthcare

Services, Inc. as to all counts.

_____
William D. Quarles, Jr., Judge

166719.1

cc:    Bruce J. Klores, Esquire
Lesley S. Zork, Esquire
Bruce J. Klores & Associates, PC.
915 15th Street, NW
Washington, DC  20005

Peter R. Masciola, Esquire
601 Indiana Avenue, NW
Suite 603
Washington, DC  20004
*Counsel for Plaintiffs*

Larry Adams, Esquire
Assistant United States Attorney
United States Attorney's Office
6625 U.S. Court House
101 W. Lombard Street
Baltimore, MD  21201
*Attorney for United States of America*

Joan Cerniglia-Lowensen, Esquire
Morgan, Shelsby, Carlo, Downs & Everton
4 North Oak Drive
Suite 404
Hunt Valley, MD  21030
*Attorneys for Dr. Gupta and Sterling Medical Corporation*

Catherine A. Hanrahan, Esquire
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
1341 G Street, N.W., Suite 500
Washington, DC  20005
*Attorneys for Humana Military Healthcare Services, Inc.*

166719.1

2