IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VERONICA POLLARD, et al., | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL NO. WDQ 02-CV-764 |
| United States of America, et al. | : | |
| Defendants. | : | |

...oOo...

**DEFENDANT UNITED STATES' MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendant, United States of America, by Thomas M. DiBiagio, United States Attorney for the District of Maryland, and Larry D. Adams, Assistant United States Attorney for said District, submits the following Memorandum of Law in Support of Defendant United States' Motion for Summary Judgment.

**I. INTRODUCTION**

This case involves allegations of medical malpractice brought by plaintiffs, Army Staff Sergeant ("SSG.") Roosevelt Pollard and his wife, Veronica Pollard, in connection with the treatment of Mrs. Pollard's breast cancer beginning in October 1998.

In July 2002, the United States initially sought to dismiss plaintiff's allegations against the United States for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) on two grounds. Those grounds still remain. First is the issue of the Government's sovereign immunity as articulated in the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 1346(b), 2871 et seq. which does not extend jurisdiction to negligence claims regarding the actions of an independent contractor. Specifically, Dr. Raj Gupta, provided oncology services to Veronica Pollard at the Dwight David Eisenhower Army Medical Center ("Eisenhower" or "DDEAMC"), at Ft. Gordon, Georgia. These

services were provided pursuant to a services contract that plainly provides he is an independent contractor. Moreover discovery testimony supports he acted independently.

Second, Mrs. Pollard last saw Dr. Gupta in Georgia on December 15, 1998. The Pollards traveled to the United Kingdom in late January 1999 after taking leave in the six-week interim period. Subsequent care was rendered to Mrs. Pollard in the United Kingdom ("UK") during the period February 1999 to June 2000. After the cancer metastasized in 2000, Mrs. Pollard was transferred to Walter Reed Army Medical Center ("WRAMC") where she continued to receive treatment through November 2003. Since 28 U.S.C. Section 2680(k) provides that the FTCA does not apply to "any claim arising in a foreign country," allegations of medical malpractice against the United States stemming from the treatment in the UK must also be dismissed.

After the United States filed its motion to dismiss (Paper No. 8)[1], the Plaintiffs amended their complaint to include Dr. Raj Gupta and Humana Military Healthcare Inc. as defendants. Judge Smalkin, therefore, denied the motion to dismiss without prejudice and set in a scheduling order in October 2002. (Paper No. 18.) In the past year, the parties have conducted exhaustive discovery, even to the extent of deposing two of the treating physicians in the United Kingdom and Ireland.

Plaintiffs allege that Veronica Pollard will likely die within the next five years as a result of the following aspects of negligence in her care: (1) delayed diagnosis and treatment; (2) failure to consider family medical history in determining a course of treatment; (3) failure to administer chemotherapy following surgery; and, (4) authorization to transfer care to non-US providers in England.

---

[1] Hereinafter Defendant United States' Motion to Dismiss will be referred to as "Def.'s Mot. Dismiss." Reference will be made to the exhibits previously filed with that motion.

Currently, Dr. Gupta has filed a motion for summary judgment which Plaintiffs have opposed. Dr. Gupta' motion advanced two arguments: 1) that to a reasonable degree of medical probability, the administration of chemotherapy would not have prevented Veronica Pollard's recurrence of cancer; 2) the doctor-patient relation between Mrs. Pollard and Dr. Gupta terminated when she moved from Georgia to the UK. Plaintiffs opposed the motion on the grounds that Mrs. Pollard would have delayed her move to UK if Dr. Gupta had advised her of the need for adjuvant chemotherapy and radiation treatment.

The United States hereby renews its motion for summary judgment on the basis that the evidence amply demonstrates that Dr. Gupta functioned as an independent contractor with respect to care of Mrs. Pollard. Moreover, the surgery and pathology services provided by DDEAMC in support of Dr. Gupta did not violate the standard of care or cause her cancer. Finally, regardless of how she arrived at the decision to continue her treatment overseas, any care rendered in a foreign country to Mrs. Pollard is not covered by the FTCA.

## II. STATEMENT OF FACTS

Veronica Pollard is a civilian dependent wife of an active duty serviceman. She also served 20 years as an active duty soldier before retiring as Staff Sergeant herself  Pls.' Opp. Gupta Mot. Summ. J. At 1. She met her present husband while both were serving as instructors in the Communications School at Ft. Gordon, Georgia.

Mrs. Pollard's family history is significant for cancer, her mother, her sister at age 29, and an aunt all died from cancer. Def.'s Mot Dismiss, Ex. 1 at 20. In late September 1998, Mrs. Pollard noted the appearance of a lump in the lower outer quadrant of her right breast of two days duration. Id. at 12. On October 2,1998, she presented to DDEAMC where a mammogram was ordered which

was reported as normal.  Nevertheless a fine-needle aspiration was then done.  Pathology of this biopsy revealed, "Atypical cells are present.  Cannot rule out malignancy." Id. at 14.

Mrs.  Pollard then had a breast biopsy on October 14, 1998, which revealed "infiltrating carcinoma with medullary features."  Mrs.  Pollard was preliminarily staged (AJCC) T1bNMNX. Id.  On November 10, 1998, Mrs.  Pollard underwent a bone scan, which was reported as negative. Id. at 17.

On November 12, 1998, DDEAMC general surgeons performed a lumpectomy and an axillary node dissection.  The results showed no residual tumor and all 17 nodes were negative. Id. at 18.

Following these results, Dr. Gupta was again consulted, and he changed her stage to T1NOMO. Id. at 17. Dr. Gupta's plan was to see the results of the estrogen and progesterone receptors.  If they were positive, then he would treat her with tamoxifen.  If they were negative, he recommended chemotherapy using Adriamycin and Cytoxan for four cycles.  He then would plan on giving radiation to the right breast for local control and would do this after chemotherapy if she consented to the chemotherapy.  Dr. Gupta also recommended, because of the family history, that he would consider using tamoxifen even if the receptors were negative. Id. at 20-21.  Most revealingly, Dr. Gupta wrote a note dated Dec 14, 1998, that reveals he "leans toward offering adj[uvant]. chemo[therapy]  (some oncologists may feel that adj. chemo is not indicated for this patient). Def.'s Mot Dismiss, Ex. 8.  He would also recommend  XRT to breast and tamoxifen ...for 5 years for prevention of new breast cancer. Id.  He also noted that "she plans to move to England and he will give her pertinent records." Id.

At the beginning of Mrs.  Pollard's ordeal, her husband, Roosevelt, was stationed in Kuwait.

Sometime In the summer of 1998, he had orders to transfer to Menwith Hill Station in the United Kingdom, reporting for duty in late January 1999.  A letter written by Dr. Gupta notes that the estrogen and progesterone receptors were negative and states that the tumor was very small, 0.5-cm, and "medullary features, which are of favorable prognosis." Def.'s Mot Dismiss, Ex. 3 at 11.[2]  The health care providers at this foreign duty station referred Mrs. Pollard to Dr. S.E. Corrin at Harrogate, UK, who referred her to Dr. David Dodwell, clinical oncologist at Cookridge Hospital, Leeds, United Kingdom, on February 3, 1999.

Dr. Dodwell saw Mrs. Pollard on February 19, 1999, and after examining her, sent a letter to Dr. Corrin.  Id. at 9. First, he notes that because of the negative estrogen receptors, Mrs. Pollard would  not gain anything by the use of tamoxifen.  He further notes that, "The prognosis should really be good and the only thing that might make one consider the use of chemotherapy is her young age.  However, despite this, I have not recommended that she have adjuvant chemotherapy and, on discussion, she is very content with this." Id.

Mrs.  Pollard underwent radiation therapy, which concluded on May 21, 1999.  The treatment record shows the right breast received 40.05 Gy, 15 fractions, 22 days, and the right breast boost 10.00 By, five fractions, five days.  Def.'s Mot Dismiss,  Ex. 2 at 13.

On February 16, 2000, Mrs. Pollard noted pain in her right upper breast region.  Chest wall examination revealed that the fourth, fifth, and sixth ribs were very tender.  There was nodularity, and she was again referred to Dr. Dodwell.

---

[2] This letter dated December 16, 1998 is addressed to "Whom It May Concern."  The natural inference is that this letter was written by Gupta in anticipation of Mrs. Pollard voluntarily accompanying her husband to his next duty assignment. We know that SSG Pollard had orders for the UK at this time.  Ex 1. Dep. SSG Pollard. To what extent this information was relayed to Dr. Gupta remains unclear.

A chest x-ray was negative, as was a mammogram. Dr. Dodwell noted palpable thickening in the inner, lower quadrant and referred Mrs. Pollard to Dr. Knox, surgeon. Dr. Knox saw Mrs. Pollard on April 7, 2000 and diagnosed costochondritis. Def.'s Mot Dismiss, Ex. 4 at 24-29.

Mrs. Pollard was seen at the 48th Medical Group, USAF Hospital, Lakenheath, UK by Dr. William Ruffle. She again had an x-ray of the chest and ribs, and there were no bone lesions identified. A mammogram and an ultrasound were normal. Id. at 1.

Mrs. Pollard was seen again on May 16, 2000, and an excisional biopsy was performed on May 22, 2000. Id. at 11. This revealed that the right breast had a focal atypical ductal hyperplasia consistent with carcinoma *in situ*. Id. at 13. Biopsy of the chest wall revealed infiltrating, poorly differentiated adenocarcinoma. Id.

Follow-up with Dr. Donovan Tapper noted recurrent carcinoma and a CT scan of her abdomen/chest showed no lymph node enlargement, but there was an 8-mm nodule of the posterior segment of her right upper lobe. Id. at 18-19. Mrs. Pollard was transferred to Walter Reed Army Medical Center (WRAMC).[3] Def.'s Mot Dismiss, Ex. 5. At WRAMC, Dr. Peoples reviewed the slides, came to similar conclusions, and ordered a biopsy of the left breast mass. On June 12, 2000, WRAMC physicians performed a fine needle aspiration of her right supraclavicular note. Id. at 3-5 This showed metastatic disease and the lesion of the left breast showed poorly differentiated carcinoma with angiolymphatic invasion. Mrs. Pollard was started on chemotherapy at that time.

---

[3] It is important to note that Plaintiffs are not making any allegations of negligence concerning the care received at WRAMC. Furthermore, the move back to the United States was made under the auspices of the Exceptional Family Member Program. Army Reg. 608-75. Although Mrs. Pollard's cancer would have qualified her for this program in October 1998, there is no record that SSG. Pollard took action to register her. In fact, the testimony is that he called the nurse-liaison in the UK to make sure appropriate treatment facilities for his wife were available at his new duty station. Infra at 11. Ex. 3, Dep. Helen Hodgkins.

The record indicates that four cycles of Adriamycin and Cytoxin were ordered. Id. at 12. On September 11, 2000, a CT of the chest and abdomen and pelvis was performed in preparation for a bone marrow transplant.

Mrs. Pollard has continued to receive treatment at WRAMC through November 2003. Id. at 16. At that time she was discharged with a poor prognosis.

### III. LEGAL STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

Where the moving party will not have the burden of proof on an issue at trial, it merely has the burden of pointing out the parts of the record indicating that the non-moving party will not be able to carry its burden of proof at trial. It need not affirmatively negate the non-moving party's case. Celotex, supra, 477 U.S. at 324-325. The plaintiff's burden in opposing a motion for summary judgment is the evidentiary standard which they must satisfy at trial. Anderson, 477 U.S. at 255. He must show more than that there is a scintilla of evidence to support his case; he must show that a reasonable finder of fact could reach a verdict in his favor based on that evidence. Anderson, 477 U.S. at 252.

In the present case, discovery is complete, and the evidence proffered by the Plaintiffs on the issue of causation – an issue on which the plaintiff has the burden of proof at trial - is insufficient as outlined in Dr. Gupta's motion for summary judgment. In the absence of admissible evidence

on the issue of causation sufficient to carry the plaintiff's burden of proof at trial, the United States is also entitled to summary judgment because nothing done by government employees constituted a breach of the standard of care or implicated in the causation of Mrs. Pollards' breast cancer.

A court should also dismiss a complaint if, as in this case, it appears beyond doubt that, in support of their claims, plaintiffs can prove no set of facts that would entitle them to relief. Herlihy v. Ply-Gem Indus., Inc., 752 F. Supp. 1282, 1285 (D. Md. 1990); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Boyce v. Alizaduh, 595 F.2d 948, 951 (4th Cir. 1979).

In sum, Plaintiffs' amended complaint should be dismissed as to the United States because Plaintiffs cannot assert a cognizable legal theory under which they can proceed since sovereign immunity has not been waived and this Court lacks subject matter jurisdiction. Accordingly, judgment should be entered in favor of the United States.

## IV.  LEGAL ARGUMENT

### A.  Summary of Relevant Facts with Respect to Involvement of United States Healthcare Providers

There is no question that the DDEAMC healthcare providers performed the necessary surgery and obtained appropriate and adequate pathologic and laboratory information regarding the characteristics of Mrs. Pollard's cancer within a reasonable period of time (e.g, from October through December 1998).

Specifically, when Mrs. Pollard made the initial complaint of soreness of her right breast, DDEAMC physicians took rapid action. First, a mammogram was taken which was negative. Second, a fine needle aspiration was done which showed some atypical cells. Third, an excisional biopsy was immediately ordered. Pathology did a complete work-up of the tissue, and it was determined that Mrs. Pollard had an "infiltrating carcinoma with medullary features." Fourth, a

bone scan was done which was negative.  Fifth, a lumpectomy and axillary node dissection was performed.  Again, pathology was consulted, and it was shown that there was no residual tumor and that all 17 nodes were negative.  Finally, tests were done to check for estrogen and progesterone receptors, both of which were negative.[4]  The entire process lasted from October to mid- December 1998, from the time of her initial complaint through her surgery until the her departure from Georgia.     Once the lump had been excised and the pathology reports forwarded to Dr. Gupta, the direct involvement of government healthcare providers in the United States with Mrs. Pollard's subsequent management ended.  The remaining  healthcare decisions in the United States were between her and Dr. Gupta.  Overseas, if there was breach in duty owed her by her British physicians that duty is not actionable under the FTCA.

      **B.   Because the Court Does not Have Subject Matter Jurisdiction Under the Independent Contractor and Foreign Country Exceptions, The United States Must be Dismissed As a Defendant in This Case**

In order for the Court to have subject matter jurisdiction over plaintiffs' claims against the United States, the claims must fit within the applicable waiver of sovereign immunity found in the Federal Tort Claims Act.  28 U.S.C. § 2671 et seq.; United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Sherwood, 312 U.S. 584, 586 (1941).

One of the exceptions to the United States' waiver of sovereign immunity under the Federal Tort Claims Act is the independent contractor exception.  See 28 U.S.C. § 2671.  Under this exception, the United States retains its sovereign immunity when the acts or omissions that serve as the basis of a claim for damages which are committed by contractors hired by the Federal

---

[4] Plaintiffs indicate that these studies should have been done more quickly.  However, they were available for Dr. Gupta in mid-December 1998, well within the time that plaintiffs allege adjuvant chemotherapy should have begun.

Government.  See United States v. Orleans, 425 U.S. 807, 815 (1976).  The test for determining whether the United States is liable for an independent contractor turns on "whether [the contractor's] day-to-day operations are supervised by the Federal Government.  Orleans, 425 U.S. at 815.  The principal focus is the level of control contractually reserved for the government.  Logue v. United States, 412 U.S. 521, 527-28 (1973).

In this case, plaintiffs' claim of medical malpractice relates to oncology care provided by Dr. Gupta while in the United States and her subsequent treatment by British doctors while she was stationed overseas.  See Amended Complaint.  However, as set forth in the declaration of Sue Krell, Chief of Contracts and Agreements at Eisenhower, Dr. Gupta was an independent contractor. Def.'s Mot. Dismiss, Ex. 6.  Pursuant to the contract, Dr. Gupta, as a professional oncologist, was paid to examine patients, prescribe treatment, provide consultation, make reports of clinical findings, and perform related services. Id.  Dr. Gupta was also required to maintain his own medical liability insurance, including a certificate of insurance evidencing an acceptable amount of coverage.  Id. See Vargas v. Santiago Cummings, 149 F.3d 29, 34 (1st Cir. 1998) (The requirement that contractors maintain liability insurance suggests a level of autonomy indicative of independent contractor status).  The medical care provided by Dr. Gupta was neither directly supervised or controlled by government employees, in the sense that the ultimate decisions in the United States were made between Dr. Gupta and Mrs. Pollard.   Ex. 2, Dep. Dr. Kenneth Fink.

Specifically, Dr. Gupta recommended that chemotherapy be administered.  The care provided at DDEAMC included but was not limited to, the fine needle aspiration, the lumpectomy and the immediate post-operative care.  Def.'s Mot Dismiss,  Ex. 7.  Neither the  involvement of surgery or pathology services in supporting roles, nor the fact that DDEAMC required Dr. Gupta to comply

with its procedures is sufficient to cause the United States to be liable.  See Logue v. United States, 412 U.S. 521, 530 (1973)(The fact that an agency retains a right to inspect or demand compliance with various regulations is irrelevant with respect to the independent character of a contractor). Moreover, we have the testimony of head of the oncology section at DDEAMC, Dr. Fink, that Dr. Gupta functioned without direct supervision.  Ex. 2,  Dep. Dr. Kenneth Fink

Furthermore, Plaintiffs cannot invoke respondeat superior or vicarious liability theories against the United States on the grounds that Dr. Gupta was improperly supervised by DDEAMC. Simply put, Dr. Gupta was not a government employee – he was a contractor.  For the same reasons that the independent contractor exception applies, this argument also fails as well.  See Baltimore Harbor Charters, LTD v. Frank Joseph Ayd, III, 365 Md. 366 (2001).

Dr. Gupta retained the independent professional role for which the independent contractor exception is meant to apply.   In short, because Dr. Gupta functioned as an independent contractor, Plaintiffs' claims against the United States, lack subject matter jurisdiction and must be dismissed.

Plaintiffs also allege that Mrs. Pollard should have been compelled to stay in the United States to receive treatment. They reason, without supporting evidence, that the care in the UK was necessarily inferior to that in the United States and that she would have started such treatment earlier.  Through some murky logic Plaintiffs lay this at the feet of the defendants.

However, it is clear from the testimony that SSG. Pollard received his orders for UK while he was in Kuwait in June 1998 and, at that time, he would have filed out Army forms about his family's special needs, if any, at that time. Ex. 1, Dep. SSG. Pollard.   The cancer in this case was not diagnosed until October 1998.  In other words, SSG Pollard, as the sponsor for his family, had the duty to report his wife's medical condition to the appropriate authorities at that time.  We know

from his testimony that arrangements had already been made to leave Georgia. Id. From the testimony of Helen Hodgins, RN, the nurse-liaison we know that SSG. Pollard contacted her in the UK in order to ascertain if medical treatment was available for his wife in that locality. When he was assured that appropriate care was available, he made no effort to get his orders changed to either be stationed in the States, have his family stay in the United States, or otherwise stop his wife from receiving medical care in the UK.[5] Ex. 3, Dep. Helen Hodgkins. Plaintiffs are absolutely barred from suit by the foreign claims exception for injury that occurred overseas. 28 U.S.C. § 2680(k) provides that the FTCA does not apply to "any claim arising in a foreign country." See Burna v. United States, 240 F.2d 720 (4th Cir. 1957); Meredith v. United States, 330 F.2d 9 (9th Cir. 1964). This exemption has been applied to tortious conduct of foreign based military personnel acting within the scope of their employment. See Pelphrey v. United States 674 F. 2d 243 (4th Cir. 1982). Accordingly, the "foreign country" exception applies here.

In conclusion, Veronica Pollard chose to move to the United Kingdom with her husband, and consented to the course of treatment by British physicians. Whether or not the British physicians were within the standard of care for Veronica Pollard's treatment is irrelevant to the issue of the United States' liability. Moreover, she could very easily have chosen to stay in the United States and continued to receive care through the dependent health care programs provided by the military. At the time of the move it was reasonable for her to conclude that the timely excision of the lump from her breast, followed by radiation treatment in the UK would lead to a full recovery. It is unfortunate that this course of action did not prevent the cancer from spreading, but to hold the

---

[5] It addition, it was not negligent to transfer care to physicians in the United Kingdom. This military transfer falls within the discretionary function exception of the FTCA. 28 U.S.C. § 2680(a).

United States liable for this tragic outcome would be in contravention of the law and the facts

## V.  CONCLUSION

For the foregoing reasons, Defendant, United States of America, respectfully requests that the Court enter summary judgment on its behalf and dismiss the United States from this action.


        Respectfully submitted,

        Thomas M. DiBiagio
        United States Attorney


By:_____
        Larry D. Adams
        Assistant United States Attorney
        6625 United States Courthouse
        101 West Lombard Street
        Baltimore, Maryland 21201-2692
        410-209-4800

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| VERONICA POLLARD, et al., | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL NO. WDQ-02-CV-764 |
| United States of America, et al., | : | |
| Defendants. | : | |

...oOo...

**DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

Defendant, United States of America, respectfully moves, pursuant to Fed. R. Civ. P. 56 to file a motion for summary judgment. The grounds for this motion are set forth more fully in the accompanying memorandum of law, which is incorporated herein.

1. The treating oncologist in the United States, Dr. Raj Gupta is an independent contractor for whom the United States is not liable;

2. Any treatment rendered oversees is not covered by the Federal Tort Claims Act inasmuch as there is no waiver of sovereign immunity for torts committed in a foreign country.

WHEREFORE, Defendant United States of America requests that this summary judgment motion be granted and the United States be dismissed from this action.

    Respectfully submitted,

    Thomas M. DiBiagio
    United States Attorney

By:_____/s/_____
    Larry D. Adams
    Assistant United States Attorney
    6625 United States Courthouse
    101 West Lombard Street
    Baltimore, Maryland 21201-2692
    (410) 209-4801

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically filed this 29th day of December, 2003 and sent to:

>Lesley Zork, Esquire
>Bruce J. Klores, and Associates, P.C.
>915 15th Street, N.W.
>Washington, D.C. 20005
>
>Joan Cerniglia-Lowensen, Esq.
>Morgan, Shelsby, Carlo, Downs & Everton
>4 North Park Drive, #404
>Hunt Valley, Md.  21030
>Attorney for Dr. Raj Gupta
>
>Catherine A. Harahan, Esq.
>Wilson, Elser, Moskowitz, Edelman and Dicker
>1341 G Street, N.W.   5th Floor
>Washington, D.C. 20005-3105
>Attorney for Humana Military Healthcare, Inc.

>_____/s/_____
>Larry D. Adams
>Assistant United States Attorney