**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

VERONICA POLLARD, et al.,  :

        Plaintiffs,  :

        v.  :     CIVIL NO. WDQ 02-CV-764

UNITED STATES OF AMERICA, et al.,  :

        Defendants.  :

...oOo...

**DEFENDANT UNITED STATES' REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendant, United States of America, by Thomas M. DiBiagio, United States Attorney for

the District of Maryland, and Larry D. Adams, Assistant United States Attorney for said District,

submits the following Reply to Plaintiffs' Opposition to the United States' Motion for Summary

Judgment.

## INTRODUCTION

The United States filed a motion for summary judgment on the basis that the evidence

showed that Dr. Gupta functioned as an independent contractor with respect to care given plaintiff

Veronica Pollard.  Therefore, any cognizable actions on his part are not attributable to the United

States  The United States also asserted that the surgery and pathology services provided by

Eisenhower Army Medical Center ("Eisenhower")  personnel to Veronica Pollard did not violate

any standard of care or cause her cancer.[1]

---

[1]  As previously cited, Dr. Gupta filed a motion for summary judgment which Plaintiffs
opposed and is pending.  Dr. Gupta argued that to a reasonable degree of medical probability the
administration of chemotherapy would not have prevented Veronica Pollards recurrence of
cancer; and the doctor-patient relation terminated when she moved overseas.   Plaintiffs'

Plaintiffs' opposition asserts that the Army medical personnel at Eisenhower exercised sufficient supervision and control over Dr. Gupta in the day-to-day performance of his duties to establish that Dr. Gupta was an employee of the United States. Pls' Mem. in Opp. at 6-7 In addition, the Plaintiffs allege that liability is shared by Dr. Stephen Adams, the pathologist at Eisenhower, who "under-reported" and "misread the pathology specimen" and "delayed" obtaining important studies. Pls'. Mem. in Opp 8-9. However, Plaintiffs do concede that there is no claim under the Federal Tort Claims Act. ("FTCA") against the United States for any treatment of Mrs. Pollard received overseas Pls.' Opp. at 2.

Plaintiffs' opposition fails on the issue of the contractual relationship between the Army and Dr. Gupta and on the issue of causation. Plaintiffs have not met their burden to advance cognizable legal theories under which they can proceed since sovereign immunity has not been waived under the FTCA. Try as they might, Plaintiffs cannot show that anything done by government employees constituted a breach of the standard of care or was implicated in the causation of Mrs. Pollard's breast cancer. Therefore, this Court lacks subject matter jurisdiction with respect to the United States. Accordingly, judgment should be entered dismissing the United States from this action.

## **DISCUSSION**

At the outset, it cannot be overemphasized that Veronica Pollard was at patient at Eisenhower for only ten weeks, from October through mid-December 1998. During that time Army healthcare providers performed the necessary procedures and surgeries. They also obtained appropriate and adequate pathologic and laboratory information regarding the characteristics of her

---

opposition countered that Mrs. Pollard would have delayed her move if Dr. Gupta had advised her of the need for adjuvant chemotherapy and radiation treatment.

breast cancer.   Clearly all this happened within a reasonable period of time.   Dr. Gupta, the

oncologist who is an independent contractor,  had the information he needed to advise Mrs. Pollard

on the subsequent course of treatment. [2]

The FTCA is a limited waiver of sovereign immunity that permits recovery against the

Government for certain torts of government agents or employees.  United States v. Orleans, 425 U.S.

807, 813 (1976); Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996); Becker v. Department of

the Army, 981 F. Supp. 905, 907 (D. Md. 1997).  The FTCA  grants the district courts:

> "[e]xclusive jurisdiction of civil actions on claims against the United States, for
> money damages, . . . for injury or loss of property, or personal injury or death caused
> by the negligent or wrongful act or omission of any employee of the Government
> while acting within the scope of his office or employment, under circumstances
> where the United States, if a private person, would be liable to the claimant in
> accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 1346(b)(1).  The FTCA defines employee to include "officers or employees of any

*federal agency*", including "corporations primarily acting as instrumentalities or agencies of the

Untied States."  28 U.S.C. §2671.  However, the definition of "federal agency" explicitly excludes

"any ***contractor*** with the United States."  Id. (emphasis added).  This contractor exception is strictly

enforced.  "Since the United States can be sued only to the extent that it has waived its immunity,

due regard must be given to the exceptions, including the independent contractor exception, to such

---

[2] To summarize the treatment, after feeling a lump in her right breast, a mammogram
was taken which was negative.  Then a fine needle aspiration was done which showed some
atypical cells.  An excisional biopsy was immediately ordered.  Pathology did a complete work-
up of the tissue, and it was determined that Ms. Pollard had an "infiltrating carcinoma with
medullary features."  A bone scan was done but was negative.  Then on November 12, 1998, a
lumpectomy and axillary node dissection was performed.  Pathologic studies showed that there
was no residual tumor and that all 17 nodes were negative.  Finally, tests were done to check for
estrogen and progesterone receptors, both of which were negative.  The direct involvement of
government employees ended once the lump had been removed.

waiver." Orleans, 425 U.S. at 814.  Accordingly, the United States cannot be sued for injuries allegedly resulting from the actions of independent contractors performing work for the government. See Robb, 80 F.3d at 887 (Physician employed by radiologist who had contracted to provide healthcare services at Air Force base was acting as "independent contractor" and not as employee of United States for purposes of the FTCA, and independent contractor exception to FTCA's waiver of sovereign immunity barred claim asserted by patient based on alleged malpractice because the contract explicitly identified radiologist as independent contractor, radiologist agreed to assume sole liability for acts and omissions of himself, and Air Force lacked control over physician's daily medical judgments.)

Nor can the United States be found *vicariously liable* for the tortious acts of a contractor's employees under any state law theory of non-delegable duty, agency or imputed liability.  Rather, the waiver of sovereign immunity provided under the FTCA permits claims for injuries based only upon the direct negligence of government employees.  Orleans, at 817-818; Williams v. United States, 50 F.3d 299, 304-305 (4th Cir. 1995).

Whether a party is an independent contractor or an employee of the government under the FTCA is determined by federal law. Id.   In Logue v. United States, the Supreme Court stated that "the critical factor in making this determination is the authority of the principal to control the detailed physical performance of the contractor." 412 U.S. 521, 527-28 (1973).  In Orleans, the Supreme Court expounded upon this point and stated that "the question here is not whether the [contractor] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." 425 U.S. at 815.

The Fourth Circuit has applied and interpreted the tests established by the Supreme Court

in <u>Logue</u> and <u>Orleans</u> to mean that read together, these cases:

> "[e]stablish the principle that the United States will not be liable under the independent contractor exception of the FTCA by virtue of entering contracts and demanding compliance with federal standards, unless the United States actually supervises the 'day-to-day operations' of the endeavor. . ."

<u>Williams</u>, 50 F.3d at 306, *quoting* <u>Logue</u>, 412 U.S. at 529.[3]

Under the facts of the present case, Plaintiffs' attempt to bootstrap their claims against the United States through Dr. Gupta are unavailing. There is no dispute that Humana Military Healthcare was hired by the government as a general contractor, and Sterling Medical was subsequently engaged by Humana as a subcontractor. In turn, Sterling Mired hired Dr. Gupta and paid him as an independent contractor. Manifestly, each is an independent contractor under the circumstances of this case. Humana Mot. Summ. J. at 3-5.

Clearly, the alleged negligent actions attributed to Dr. Gupta relate to the professional duties which had been delegated to him, and over which only he exercised day-to-day control. In this case, Plaintiffs' claims of medical malpractice relate to the oncology care provided by Dr. Gupta while she remained in the United States. As shown in the United States's first motion in this case, Dr. Gupta is and was an independent contractor. Def.'s First Mot. Dismiss, Ex. 6. Decl. Sue Krell, Chief of Contract. Pursuant to the contract, Dr. Gupta, as a professional oncologist, was paid to examine patients, prescribe treatment, provide consultation, make reports of clinical findings, and perform

---

[3]*See also* <u>Robb</u>, 80 F.3d at 887; <u>Becker</u>, 981 F. Supp. at 907; <u>Wood v. Standard Products Company, Inc.</u>, 671 F.2d 825, 829-832 (4th Cir. 1982)(the real test is control over the primary activity contracted for and **not the peripheral, administrative acts** relating to such activity); <u>Berkman v. United States</u>, 957 F.2d 108, 114 (4th Cir. 1992)(a contractor does not lose its independence and become an 'employee' of the government in every case in which the government writes into the contract sufficient procedural safeguards to ensure compliance with the terms of the agreement).

related services.  Id.    Dr. Gupta was also required to maintain his own medical liability insurance, including a certificate of insurance evidencing an acceptable amount of coverage.  Humana Mot Summ J. Ex. 9 ¶6.  See Vargas v. Santiago Cummings, 149 F.3d 29, 34 (1st Cir. 1998) (The requirement that contractors maintain liability insurance suggests a level of autonomy indicative of independent contractor status).  The medical care provided by Dr. Gupta was neither directly supervised or controlled by government employees.  In this case, the ultimate decisions as to further treatment were made between Dr. Gupta and Mrs. Pollard.

Specifically, Dr. Gupta recommended that chemotherapy be administered.  The care provided at Eisenhower included but was not limited to, the fine needle aspiration, the lumpectomy and the immediate post-operative care.   Neither the  involvement of surgery or pathology services in supporting roles, nor the fact that Eisenhower required Dr. Gupta to comply with its procedures is sufficient to cause the United States to be liable.  See Logue v. United States, 412 U.S. 521, 530 (1973)(The fact that an agency retains a right to inspect or demand compliance with various regulations is irrelevant with respect to the independent character of a contractor).  Moreover, we have the testimony of head of the oncology section at Eisenhower, Dr. Fink, that Dr. Gupta functioned without direct supervision. Ex. 1,  Dep. Dr. Fink at 79.  In another words, he was free to make medical decisions in conjunction with his patients.

The intent of the parties was to establish an independent contractor relationship. The contracts between the government and Humana Military Healthcare (Humana contract) on one hand and Humana and Sterling Medical (Sterling contract) on the other hand explicitly identify Humana, Sterling Medical, and Dr. Gupta,  as independent contractors.  Humana Mot Summ. J. at 5.   Dr. Gupta was paid directly by Sterling Medical. Id., Ex. 9 at ¶4.  He made his own professional

decisions; he was not on the government payroll.

Under the Sterling contract, Dr. Gupta was obligated to carry his own medical liability insurance. Id. at ¶6. That Dr. Gupta was required to obtain his own liability insurance further supports a finding that he was acting as an independent contractor. See Lurch v. United States, 719 F.2d 333, 338 (10th Cir.1983) (holding medical contractor providing own workers' compensation and other insurance supports finding of independent contractor, not employer-employee, relationship).

Despite these facts supporting the conclusion that Dr. Gupta was an independent contractor, Plaintiffs argue that Dr. Gupta was, in fact, an employee of the government. They argue that by the terms of the "Oncology Statement of Work," the government retained the power to conduct periodic quality reviews of his performance; the government imposed minimum standards for doctors hired to perform services under its contract with Sterling Medical with respect to education, licensing, work experience, and general health; the government required doctors to abide by a dress code; the government required doctors to follow government-established rules, policies, and procedures in treating patients; the government supplied virtually all equipment and support personnel; and the government required that Dr. Gupta be at the medical center during designated hours. Pls.' Opp. at 4-5. However, these facts do not support the conclusion that Dr. Gupta was a governmental employee rather than an independent contractor. They are the sort of "peripheral, administrative acts" which the courts have rejected as indicators of employee status. See fn. 3 supra. Cf. Robb v. United States, 80 F.3d 884, 892 (4th Cir.1996) (the government's ability to require that contract doctors meet minimum qualifications and to conduct reviews of the contract doctors' performance "amounts to nothing more than a standard quality assurance [provision] by which the government

reserves the right to determine whether it is satisfied with the services it is purchasing under the contract."; see also Curry v. United States, 97 F.3d 412, 415 (10th Cir.1996) ( "[T]he right of the government to inspect work for compliance with a contract does not automatically make the worker an employee.").

There was no evidence showing that the Eisenhower's regulations and dress code diminished Dr. Gupta's control over the choices he made in fulfilling his duties. As the court held in Lilly v. Fieldstone, 876 F.2d, 857 at 860 (10th Cir. 1989) "[s]urely, being subject to [a] hospital's rules as a condition of staff privileges does not remotely make a private physician an employee of that hospital.". Likewise, that Dr. Gupta was subject to the government's rules as a condition of working at Eisenhower does not indicate that he was an employee of the government.  Also the requirements that Dr. Gupta be at the medical center during designated hours, the government's provision of equipment and office space, and the government's control over patient records are not facts weighing in favor of finding Dr. Gupta an employee of the government. Even when viewed together, these particulars are insufficient to demonstrate government control over Dr. Gupta's "detailed physical performance" when balanced against the delineation of responsibility and insurance liability set forth in the contracts and other facts supporting the conclusion that Dr. Gupta was an independent contractor.  See Duplan v. Harper, 188 F.3d 1195, 1202 (8th Cir. 1999).

Finally, with respect to the alleged connection between the pathology report and Dr. Gupta's decision to recommend or not appropriate adjuvant treatment is simply a red herring. The plain fact is the size of the tumor was only one factor in Dr. Gupta's decision **to recommend** adjuvant therapy. In his deposition, Dr. Gupta indicated that :

> I would tell her that her breast cancer is in an early stage, the tumor is very small, and the smaller the tumor the more favorable it is, the lower the risk of spreading or

recurrence. Her lymph nodes are all negative and that's a good prognostic indicator. Most of the tumors of this size...are detected by screening mammography and not, and not present as a palpable tumor. In her case it is somewhat unusual in that regard. We know that tumors that are this small have a very good prognosis and many times we do not recommend any adjuvant chemotherapy. **Since there is something unusual about her case I would explain to her that I favor giving her chemotherapy.** (emphasis added.)

Ex. 2 Dr. Gupta dep. at 47.

In short, Dr. Gupta recommended the chemotherapy which the patient decided, for whatever reasons, not to undergo. As is discussed more fully in the Dr. Gupta's and Humana briefs, there is no good evidence that even is she underwent chemotherapy her life would have been spared.

## CONCLUSION

WHEREFORE, based on the above stated reasons, the United States of America, respectfully requests that the Court enter summary judgment on its behalf.

Respectfully submitted,

Thomas M. DiBiagio
United States Attorney


By:_____
Larry D. Adams, Bar No: 03118
Assistant United States Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692
(410) 209-4800


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically filed this 18th day of

February, 2004 and sent to:

Lesley Zork, Esquire
Bruce J. Klores, and Associates, P.C.
915 15th Street, N.W.
Washington, D.C. 20005
Plaintiffs' Counsel

Joan Cerniglia-Lowensen, Esq.
Morgan, Shelsby, Carlo, Downs & Everton
4 North Park Drive, #404
Hunt Valley, Md.  21030
Attorney for Dr. Raj Gupta and Sterling Medical

Catherine A. Harahan, Esq.
Wilson, Elser, Moskowitz, Edelman and Dicker
1341 G Street, N.W.   5th Floor
Washington, D.C. 20005-3105
Attorney for Humana Military Healthcare, Inc.


_____/s/_____
Larry D. Adams
Assistant United States Attorney