**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| VERONICA POLLARD, *et al.*, : <br> : <br> Plaintiffs : <br> : <br> v. : <br> : <br> UNITED STATES OF AMERICA, *et al.*, : <br> : <br> Defendants : | C.A. No.: S-02-764 WDQ |

**REPLY OF DEFENDANT HUMANA MILITARY HEALTHCARE SERVICES, INC. TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendant Humana Military Healthcare Services, Inc., ("Humana") by counsel, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, moved for summary judgment by Motion filed December 24, 2003. Plaintiffs filed their opposition on February 4, 2004. Defendant Humana hereby submits the following as its reply.

Plaintiffs argue in their opposition that 1) Humana is liable for Dr. Gupta's actions because Dr. Gupta is Humana's agent or employee, and 2) Dr. Gupta's alleged negligence proximately caused Mrs. Pollard's cancer to recur and lead to her death.

Plaintiffs do not contend in their opposition that defendant Raj Gupta, M.D. was acting as the apparent agent of defendant Humana, or that Humana's contracts in this case were for non-delegable duties. Humana submits that summary judgment in its favor as to the issues of apparent agency or agency based upon a non-delegable duty is therefore appropriate.

Additionally, Humana incorporates herein the reply brief of Dr. Gupta to his Motion for Summary Judgment in response to plaintiffs' causation arguments.

Plaintiffs filed a Motion for Leave to file a Second Amended Complaint on January 28, 2004. The Second Amended Complaint omits the apparent claim for negligent infliction of emotional distress. This Motion has not been granted as of the date of this Reply. As plaintiffs'

169510.1

Opposition does not contest that Georgia law does not allow recovery for negligent infliction of emotional distress, *see* Pls.' Opp'n at 3, summary judgment in favor of Humana is proper as to Count III in the First Amended Complaint.

## I. ARGUMENT

### A. Summary judgment is appropriate as a matter of law on the issue of agency.

When the question of agency rests upon "a written document and inferences deduced therefrom," the issue is a question of law for the court since construction of written contracts is exclusively for a judge. *McMullan v. Georgia Girl Fashions, Inc.*, 348 S.E.2d 748, 749-50 (Ga. Ct. App. 1986). A jury need only consider the issue of agency or the existence of an employment relationship if there is an issue of material fact. *See Edwards-Warren Tire Co. v. Cole, Sanford & Whitmire*, 373 S.E.2d 83, 86 (Ga. Ct. App. 1988) (finding trial court appropriately determined issue of agency as a matter of law where no material facts were in dispute on the issue). Here, there are no issues of fact precluding the entry of summary judgment in favor of Humana.[1]

### B. The government and Humana expressly contemplated assignment of resource sharing responsibilities under the contracts.

Plaintiffs inaccurately assert that "There is no provision in the Resource Sharing Agreements between Humana and the U.S. Department of Defense ("DoD") or Humana and

---

[1] There are misstatements in what plaintiffs present as "Undisputed Facts." As an example, plaintiffs write without supporting citation: "Dr. Gupta conceded at his deposition that he never advised Mrs. Pollard that chemotherapy was indicated when she came back to see him on December 15, 1999." Pls' Opp'n at 10. Dr. Gupta's testimony is as follows: "Mr. Klores: Q: In order for . . . well, let me ask it to you this way. You mentioned that you would have sat down and discussed with Mrs. Pollard the risks and benefits of chemotherapy, right? A: Right." Plaintiff Ex. 5 at page 44, L13-L17.
  Also, identified as an undisputed fact is the statement "Mr. & Mrs. Pollard never saw this letter," Pls.' Opp'n at 10, which the defendant suggests is not "undisputed" as alleged by plaintiff. There are many additional arguments, not facts, which plaintiffs identify in the "Undisputed Facts" section of their brief that are in fact disputed, but do not have bearing on the substantive issues raised by the defendant in its Motion and accordingly will not be addressed herein.

[Eisenhower Army Medical Center ("Military Treatment Facility" or "MTF")] that would allow Humana to assigned [sic] its duties and responsibilities under the contract." *See* Pls.' Opp'n at 17. The clear language of the contracts belies this assertion. For example, in Humana's contract with the DoD, the parties agree:

> The contractor [Humana] shall develop and implement a resource sharing program for seeking agreements with individual MTF Commanders for the provision of medical personnel . . . from the contractor's provider network and from private sources outside of the network for the purpose of enhancing the capabilities of MTFs to provide needed inpatient and outpatient care to beneficiaries. The contractor shall obtain the approval of the Lead Agents prior to implementing any such agreements . . .
>
> Resource sharing shall be based upon written agreements between the contractor [Humana] and the MTF Commanders . . . and between the contractor [Humana] and the resource sharing provider(s), support personnel, and/or equipment and equipment maintenance vendors, and supply vendors.

*See* Ex. 8 at C-15, C-16.[2] This language clearly contemplates that Humana, as the contractor, will seek agreements with "private sources outside of the network" and "the resource sharing provider(s)" to provide staffing at MTFs.

The contracts between Humana and the MTF and Humana and its subcontractor, Sterling Medical, support this language. Humana's contract with the MTF contemplates that Humana will subcontract out work by referencing the "HMHS subcontractor." *See* Ex. 11 ¶ 9.1 (stating "HMHS subcontractor" will perform background check on resource sharing personnel); Ex. 11 ¶ 10 (stating resource sharing personnel will be clearly identified with badge issued by "HMHS Subcontractor"). Humana's contract with the MTF provides that Humana's subcontractor could perform criminal background checks, and in fact, Humana's subcontractor, Sterling Medical, agreed to perform the background checks. *See* Ex. 10 ¶ 14.1.

---

[2] References to numeric exhibits are to exhibits attached to Humana's Motion for Summary Judgment.

3

169510.1

The contracts with the DoD and the MTF expressly authorize and contemplate that Humana can and will subcontract its resource sharing duties.[3]

**C. No liability for Dr. Gupta's actions can be attributed to Humana because the undisputed facts show that Dr. Gupta has no employment or agency relationship with Humana and is at best an independent contractor.**

The decision of *Harris v. City of Chattanooga*, 507 F.Supp. 365 (N.D. Ga. 1980), relied upon by plaintiff, acknowledges that in determining whether an individual is an employee or an independent contractor, "the Court utilizes as its lodestar the concept of control; the right to control, not necessarily the exercise of that right." *Harris*, 507 F.Supp. at 368. Therefore, the guiding factor, throughout the factors analyzed below, is control.

As the analysis below demonstrates, Dr. Gupta is an independent contractor not subject to the control of Humana. Humana has no contract with Dr. Gupta. Dr. Gupta's contract is with Sterling Medical. The right of control over Dr. Gupta, essential to a determination of agency or employment, was never given to or retained by Humana in any of the contracts at issue in this case.

The following factors were reviewed by the *Harris* court:[4]

---

[3] Plaintiffs' Opposition also incorrectly states that Mrs. Pollard was an intended beneficiary of Humana's contracts with the DoD and the MTF. *See* Pls' Opp'n at 17. "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." Restatement (Second) Contracts § 313(2) cmt. a (2003). In order to have standing to enforce a contract as a third party beneficiary under Georgia law, "it must clearly appear from the contract that it was intended for his or her benefit. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient." *Garner & White Consulting Services, Inc. v. Ray*, 474 S.E.2d 663, 665 (Ga. Ct. App. 1996). *See also Culberson v. Fulton-DeKalb Hosp. Auth.*, 411 S.E.2d 75 (1991) *rev'd on other grounds Lemonds, et al. v. Walton County Hosp. Auth.*, 441 S.E.2d 821 (Ga. Ct. App. 1994) (patient and her family were not beneficiaries of contract whereby hospital authority agreed to maintain a facility that would render medical care to the indigent). Plaintiffs do not meet the criteria for third party beneficiary under the circumstances of this case.

[4] The *Harris* decision, issued by a federal district court in Georgia in 1980, gleaned factors frequently utilized by prior Georgia state court decisions in the independent contractor / employee analysis. While *Harris* is comprehensive, Georgia state courts do not necessarily review every factor set forth in the *Harris* decision in analyzing whether an employment or agency relationship exists. *See, e.g., Charter Peachford Behavioral Health System, Inc. v. Vargas*, 504 S.E.2d 514, 525 (Ga. Ct. App. 1998); *Bell*

(continued . . .)

**1) The employer's right to make additional plans and specifications; to impose its will in lieu of contractual provisions; and to direct the work step-by-step**

Humana retains no right in this case to direct Dr. Gupta's work in a step-by-step manner. Rather, Dr. Gupta was supervised by the military physicians at the MTF. Dr. Fink, the Chief of Hematology / Oncology at the MTF, testified:

> Q.  So are you, as the chief of the department, responsible for overseeing the quality of care that Dr. Gupta provides to patients at Eisenhower?
> . . .
> A.  Yes. I oversee the quality of the care that he delivers, and I reflect that in my credentials review.
> Q.  Is there anyone outside of your department, either at Sterling or at Humana, that oversees the quality of Dr. Gupta's care at Eisenhower?
> . . .
> A.  I understand. I don't believe so. I am not aware of anyone else overseeing the quality of his medical care.

*See* Deposition of Dr. Fink, attached hereto as Exhibit A, at 18-20.

The terms of the Resource Sharing Agreement between Humana and the MTF further illustrate the lack of control Humana has over Dr. Gupta. For example, the MTF retains the right to dictate the use of certain medical procedures. *See* Ex. 11 ¶ C.1.9.6 ("The physician shall not introduce new medical procedures or services without prior recommendations to, and approval of the EAMC Commander, Chief, Department of Medicine, and the COTR")[5]. Further, the contract requires Dr. Gupta to comply with MTF policies and procedures. *See* Ex. 11 ¶ C.1.9.5 ("The physician must comply with . . . EAMC policies and procedures").

---

( . . . continued)
*South Telecomm., Inc. v. Widner*, 495 S.E.2d 52, 55 (Ga. Ct. App. 1997). However, to provide the Court with an analysis in response to plaintiffs, Humana reviews the factors herein.

[5] "COTR" is an abbreviation for "Contracting Officer's Technical Representative." "Contracting Officer" is defined as "A person with the authority to enter into, administer, and/or terminate contracts/agreements and make findings and determinations on behalf of the government." Ex. 11 ¶ C.2.5.

169510.1

The MTF also reserves the right to determine whether Dr. Gupta qualifies for privileges at the MTF. *See* Ex. 11 ¶ 4.1, 4.2. Once a physician is identified, his or her credentials are reviewed to determine whether he or she qualifies for privileges at the MTF. *See* Ex. 11 ¶ C.1.7.2.3. This right is also reserved by the DoD in its contract with Humana: "Before a provider is permitted to practice in the MTF, he or she must be granted privileges by the MTF Commander to do so, based upon his or her credentials, in accordance with applicable regulations." Ex. 8 at C-16. This is a retention of the right by the DoD and the MTF to make additional plans or impose conditions above and beyond the terms of the contract.

To the extent Humana retains any right to monitor Dr. Gupta's performance, it is only to ensure compliance with the terms of the resource sharing program. Specifically, the contract with the MTF states: "[Humana] shall be responsible for monitoring the performance of Resource Sharing personnel to ensure compliance with the terms and conditions of the Resource Sharing provider agreements." Ex. 11 ¶ 2.3. This is not a reservation of rights to impose duties beyond the terms of the contracts at issue. Instead, the contract dictates that Humana must assess compliance with the procedures and protocols required by the agreement whose terms were set forth by the Government, and clearly falls short of any employer-employee relationship that plaintiffs argue exists.

Plaintiffs cannot eliminate the multiple layers of contractual supervision imposed between Dr. Gupta and Humana by the contracts at issue herein. Humana does not retain the right to impose duties above and beyond those articulated in the contracts with the DoD and the MTF. Humana never reserves the right to prevent Dr. Gupta from performing certain procedures, and Humana never reserves the right to require credentials above and beyond those set by the MTF. These contracts establish that Humana does not control Dr. Gupta, and Dr. Gupta is an independent contractor.

6

169510.1

**2) Contracts to perform a service rather than to accomplish a task**

Contracts to accomplish a task are indicative of an independent contractor relationship, while contracts to perform a service are indicative of an employee-employer relationship.  *See Lee v. Satilla Health Services, Inc.*, 470 S.E.2d 461, 462 (Ga. Ct. App. 1996).  Dr. Gupta signed a contract to render his services as a physician, but not with Humana:  Dr. Gupta's contract is with Sterling.  Humana never entered into any contract with Dr. Gupta to provide services.  Therefore this factor is not relevant to the analysis at issue.  Further, Humana's contract with Sterling was to perform the *task* of placing a medical provider at the MTF.  Hence, this factor supports the conclusion that Dr. Gupta is an independent contractor.

**3) Controlling time**

"The right to control the time means the employer has assumed the right to control the person's actual hours of work."  *See Cooper v. Binion,* 2004 Ga. App. LEXIS 230 at *7 (Ga. Ct. App. February 18, 2004).

The contract between Humana and the MTF in this case does designate the hours of duty for Dr. Gupta.  *See* Ex. 11 ¶ C.1.6.  Humana submits that this agreed upon schedule between Humana and the MTF does not mean that Humana controls Dr. Gupta's hours of work.  The provisions of the contract demonstrate that the MTF, not Humana, controls Dr. Gupta's schedule.  For example, Dr. Gupta's hours can only be changed "at the discretion of" the Chief of the Department of Medicine.  *See* Ex. 11 ¶ C.1.6.  The Government reserves the right in the contract to verify the hours worked by the Oncologist to include implementing sign-in/sign-out procedures or using a time clock if appropriate.  *See* Ex. 11 ¶ C.1.6.1.  Through Humana, Dr. Gupta must submit any changes to the work schedule, and the changes must be approved by the Chief of the Department of Medicine.  *See* Ex. 11 ¶ C.1.6.2.  Through Humana, the physician must advise the Chief of the Department of Medicine if the physician is ill.  *See* Ex. 11 ¶ C.1.6.3.

169510.1

While Humana may serve as a conduit for communication between Dr. Gupta and the MTF, the MTF retains the right to control the hours of duty under the terms of the agreement. The contract clearly demonstrates that Humana does not control the hours Dr. Gupta works. As control is the "lodestar" in this analysis, Dr. Gupta is an independent contractor under this criterion and Humana is not liable for his actions.

4) **Inspection**

"Where a hospital reserves no right to control specific medical techniques employed by the doctors but merely exercises a limited surveillance in order to monitor the quality of the medical care provided, these controls are not inconsistent with an employer-independent contractor relationship." *Charter Peachford Behavioral Health System, Inc. v. Kohout*, 504 S.E.2d 514, 525 (Ga. Ct. App. 1998).

Here, Humana is not in the role of a hospital, but rather as a contractor which contracted with another company to provide a physician to staff the MTF. In its contract with Sterling Medical, Humana retains the right to review records of Dr. Gupta's treatment to monitor the quality of the services he provided: "[Sterling Medical] agrees to maintain such records and provide such information to [Humana] and MTF as may be necessary to comply with the terms of the [Humana]/DoD contract . . ." *See* Ex. 10 ¶ 8. While Humana reserves the right to review other records, this language demonstrates that the purpose in so doing is to ensure compliance with the resource sharing program's requirements. *See id.*

Humana does not retain any right to advise Dr. Gupta on his treatments based upon review of the records. Humana's right to review records is premised upon its obligations under the Resource Sharing program and does not support a finding that Dr. Gupta is Humana's employee. Dr. Gupta is an independent contractor.

8

169510.1

**5) Equipment**

"The majority of cases hold that the fact that the employee furnishes his own tools and equipment is a factor tending to show an independent contractor relationship." *See Harris*, 507 F.Supp. at 371. Conversely, if the employer provides necessary equipment and facilities, then it suggests that there is an employer-employee relationship. *See Cooper*, 2004 Ga. App. LEXIS 230 at *6.

The contracts establish that Humana provides no equipment whatsoever to Dr. Gupta. Dr. Gupta provides his own staffing and minor equipment, *See* Ex. 11 ¶ C.4, and the MTF provides the facilities and supplies for the treatment of the patient. *See* Ex. 11 ¶ C.3.1. Humana provides no equipment at all; therefore, this factor points towards Dr. Gupta as an independent contractor.

**6) Right to terminate the contract or to fire an employee of the employer**

Humana's retention of the right to replace Dr. Gupta in its contract with Sterling Medical does not support a finding of control sufficient to conclude Dr. Gupta is an employee of Humana. This factor cannot be considered in a vacuum. Dr. Gupta's presence was pursuant to the resource sharing program established by the government to ensure treatment of patients at the MTF. All of Humana's actions under those contracts are to ensure compliance with the resource sharing program and the mandates of the government. This right is retained in order to ensure compliance with the mandates of the U.S. government and the military.

The undisputed testimony of Dr. Fink, the Chief of the Department, supports this position. Dr. Fink testified:

> Q. Who would be – if you believed that Dr. Gupta should be fired, what would be the procedure that you would have to follow?
>
> A. I would go to the contracting office and tell them of my complaint and file it in writing. And then an action would subsequently take place through this government office, which would go through the contractor, Humana,

169510.1

> who would then take the action as necessary. And they would have to perform that to my satisfaction.
>
> Q. When you say they would have to perform that to your satisfaction, can you explain who that is and what they would have to do?
>
> A. So, the government office is, I believe – well, the contract office, who handles these contracts, would have to put forward through my request whatever action it is that I request, and then the hiring company would then have to take action on my recommendation and would have to satisfy me that that action was completed.

*See* Ex. A at 54-55.

Further, the contract between Humana and the MTF demonstrates that Humana's retention of the right to terminate Dr. Gupta is not in order to control his activities as an employee of Humana, but rather to ensure that Dr. Gupta performs in compliance with the terms of the Resource Sharing Program. "[Humana] shall be responsible for monitoring the performance of Resource Sharing personnel *to ensure compliance with the terms and conditions of the Resource Sharing provider agreements*." Ex. 11 ¶ 2.3 (emphasis added). This language demonstrates that Humana's right to remove Dr. Gupta is to ensure compliance with the resource sharing program. This factor supports a finding that Dr. Gupta is an independent contractor.

### 7) Nature or skill of the employee's work

"The more skilled the employee, the more likely he is an independent contractor." *Lee v. Satilla Health Services, Inc.*, 470 S.E.2d 461, 462-63 (Ga. Ct. App. 1996) (citation omitted). As a physician, a board-certified oncologist, Dr. Gupta is a skilled employee, and therefore more likely an independent contractor. *See Stewart v. Midani,* 525 F.Supp. 843, 849 (N.D. Ga. 1981) (physician is a skilled employee and therefore likely to be an independent contractor); *Cooper,* 2004 Ga. App. LEXIS 230 at *7 (Ga. App. February 18, 2004) (stating emergency room physician likely an independent contractor under test of degree of skill of employee); *Lee,* 470

169510.1

S.E.2d at 462-63 (observing physician would likely be independent contractor under degree of skill test). Dr. Gupta is an independent contractor under this factor.

### 8) Method of payment

Courts in Georgia review whether an employee is salaried or paid hourly, as salaried employees are more likely to be independent contractors. *See Lee*, 470 S.E.2d at 463. Further, courts review who actually pays the salary. *See id.*

Here, Dr. Gupta receives a salary, which supports the fact that he is an independent contractor. *See* Ex. 9, Attachment A. Dr. Humana's contract with Sterling provides that Sterling pays Dr. Gupta's salary by monthly payments. *See* Ex. 9, Attachment A (stating "Said annual amount will be payable monthly by Sterling Medical to Physician"). Sterling also pays his state and federal taxes, worker's compensation, and disability benefits. *See* Ex. 10 ¶ 6.

Given the clear provisions of Dr. Gupta's contract with Sterling Medical, Dr. Gupta is an independent contractor under this factor as well.

### 9) Other aspects of the relationship

Other aspects of the contracts demonstrate there is no employment relationship between Humana and Dr. Gupta.

The express terms of the contracts between Dr. Gupta and Sterling Medical and between Sterling Medical and Humana demonstrate Dr. Gupta is an independent contractor. Dr. Gupta's contract with Sterling Medical specifically identifies him as such. *See* Ex. 9 ¶ 5. Humana's contract with Sterling Medical expressly disavows any employment relationship between Humana and Sterling Medical or any of its employees or agents. *See* Ex. 10 ¶ 1.2.

In *Cooper v. Binion*, *supra,* the issue was whether a physician was an employee of a hospital. In addition to some of the *Harris* factors above, the Court also considered whether the physician paid his own medical malpractice insurance, the method of billing patients, and

11

whether the physician practiced exclusively at the hospital. *See Cooper,* 2004 Ga. App. LEXIS 230 at *4-13. In *Cooper*, the hospital paid the physician's malpractice insurance premiums, the hospital billed the patients, and the physician practiced exclusively at the hospital. All of these therefore favored an employee-employer relationship.

Here, Sterling Medical maintains professional liability insurance for Dr. Gupta. *See* Ex. 10 ¶ 7.1. In fact, Humana specifies that while it maintains professional liability insurance, this insurance will in no event cover the physician with whom Sterling Medical contracts. *See* Ex. 10 ¶ 7.3. Dr. Gupta cannot bill the patients, *see* Ex. 11 ¶ C.1.9.1, but neither can Humana – Humana's compensation was limited to funds received under its DoD contract. *See id.* ¶ 3.1 ("[t]here will be no charges made to the government beyond those specified in the HMHS/DoD contract or cost to CHAMPUS eligible beneficiaries [patients]"). Finally, Dr. Gupta is not physically present at a Humana facility, but working at the MTF. This supports a finding that Dr. Gupta is an independent contractor.

The factors reviewed above all demonstrate as a matter of law that Dr. Gupta is an independent contractor. Dr. Gupta's presence at the MTF was pursuant to a series of contracts designed to ensure compliance with the military's Resource Sharing Program. Humana does not retain the right to control Dr. Gupta, and to the extent Humana retains the right to monitor Dr. Gupta's performance, including the right to terminate him, that retention is to ensure compliance with the terms of the Resource Sharing Program and its rules and regulations. *See* Contract between Humana and DoD, Ex. 8 at C-16, C-17 (incorporating by reference DoD regulations into terms of contract); Contract between Humana and MTF, Ex. 11 ¶ C.1.7.2.2 (incorporating by reference army regulations into terms of contract).

12

**D.    Dr. Gupta is not Humana's agent: Humana never expressly authorized Dr. Gupta to act as its agent and there is no evidence to show Humana ever exerted control over Dr. Gupta.**

Agency is codified in Georgia. *See* O.C.G.A. § 10-6-1 (2002) (relation of principal and agent arises when one person expressly or by implication authorizes another to act for him). The discussion of agency is so often intertwined with the issue of employer/employee or independent contractor that courts frequently use the term employer instead of principal. "[T]he historical test applied by Georgia courts [for agency] has been 'whether the contract gives, or the *employer* assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract." *See McMullan v. Georgia Girl Fashions, Inc.*, 348 S.E.2d 748, 750 (Ga. Ct. App. 1986) (quoting *Greenbaum v. Brooks*, 139 S.E.2d 432, 434 (Ga. Ct. App. 1964)) (emphasis added). The same essential analysis applies to the determination of agency; namely, whether the principal retained control over the agent's actions.[6]

As discussed above, Humana has no control over Dr. Gupta's daily activities. The terms of the contract establish that Dr. Gupta is an independent contractor who contracted with Sterling Medical to provide services at the MTF. Humana never authorized Dr. Gupta to hold himself out as an agent of Humana and to act on its behalf. In fact, Humana disclaims any agency relationship with Sterling Medical, the entity with whom Dr. Gupta contracted. *See* Ex. 10 ¶ 1.2 ("None of the parties hereto . . . shall be construed to be the officer, agent, or employee of the other"). Based upon the contracts before the Court, there is no issue of fact, and summary judgment in favor of Humana is appropriate.

---

[6] Plaintiff's Opposition begins its argument on page 18 by claiming Dr. Gupta is Humana's agent, briefly citing cases that address agency, and the proceeds to argue that Dr. Gupta is Humana's employee, arguing exclusively the issue of employment versus independent contractor.

13

169510.1

Under the law and the facts, including the contract language addressed herein, it is clear that the liability road via agency or employment does not lead to Humana. To hold a contractor such as Humana liable under the circumstances in this case clearly undermines the intent and expectations of the contractor in discharging its responsibilities under the Resource Sharing Agreement. Without question, the parties specifically intended that the risk of any failure in the health care provider's professional judgment would be borne by the professional liability policy that the subcontractor agreed to purchase and maintain on behalf of Dr. Gupta.

## II.     CONCLUSION

For the reasons set forth herein and in its initial Motion for Summary Judgment, defendant Humana Military Healthcare Services, Inc. respectfully submits that entry of summary of judgment in its favor is appropriate in this case as a matter of law.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP

By:    *Catherine A. Hanrahan*
       Catherine A. Hanrahan, #06711
       The Colorado Building
       1341 G Street, NW
       Suite 500
       Washington, DC  20005
       (202) 626-7668
       fax (202) 628-3606

169510.1

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true copy of the foregoing Defendant Humana Military Healthcare Services, Inc.'s Reply to Plaintiffs' Opposition to Motion for Summary Judgment, Memorandum of Points and Authorities, Exhibits and Proposed Order were mailed, postage pre-paid, this 27th day of February, 2004 to:

> Bruce J. Klores, Esquire
> Lesley S. Zork, Esquire
> Bruce J. Klores & Associates, PC.
> 915 15th Street, NW
> Washington, DC  20005
>
> Peter R. Masciola, Esquire
> 601 Indiana Avenue, NW
> Suite 603
> Washington, DC  20004
> *Counsel for Plaintiffs*
>
> Larry Adams, Esquire
> Assistant United States Attorney
> United States Attorney's Office
> 6625 U.S. Court House
> 101 W. Lombard Street
> Baltimore, MD  21201
> *Attorney for United States of America*
>
> Joan Cerniglia-Lowensen, Esquire
> Morgan, Shelsby, Carlo, Downs & Everton
> 4 North Oak Drive
> Suite 404
> Hunt Valley, MD  21030
> *Attorneys for Dr. Gupta and Sterling Medical Corporation*

                                      *Catherine A. Hanrahan*
                                      Catherine A. Hanrahan

169510.1