1          IN THE UNITED STATES DISTRICT COURT
2            FOR THE DISTRICT OF MARYLAND

3     VERONICA POLLARD, et al.,              )
                                             )
4                          Plaintiffs,       )
      Vs.                                    )CASE NO.
5                                            )S-02—CV-764
      THE UNITED STATES OF AMERICA,          )
6                                            )
                           Defendant.        )
7                                            )

8

9     VIDEOTELECONFERENCE DEPOSITION OF DAVID LEE PAGE, M.D.

10              Wednesday, October 29, 2003

11                      3:35 p.m.

12

13
      Pages: 1 - 54
14
      Job Number: 24-24321
15
      Reported by: Trine M. Mitchell, R.P.R.
16

17

18

19

20

21

22

23                                    EXHIBIT
24                                    ___i___
25



L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

VIDEOTELECONFERENCE DEPOSITION OF DAVID LEE PAGE, M.D.
CONDUCTED ON WEDNESDAY, OCTOBER 29, 2003

2

1    Appearing For the Plaintiff:

2           LESLEY S. ZORK, ESQUIRE

3           BRUCE J. KLORES & ASSOCIATES

4           915 15th Street, Northwest

5           Washington, D.C.  20005

6           Via teleconferencing

7    Appearing For the United States of America:

8           LARRY D. ADAMS, ESQUIRE

9           U.S. DEPARTMENT OF JUSTICE

10          101 West Lombard Street

11          Baltimore, Maryland  21201

12

13   Appearing For Dr. Raj Gupta:

14          JOAN CERNIGLIA-LOWENSEN, ESQUIRE

15          MORGAN, SHELSBY, CARLO, DOWNS & EVERTON

16          4 North Park Drive, Suite 404

17          Hunt Valley, Maryland  21030

18          Via teleconferencing on phone

19

20   Appearing For Humana Military Health Care:

21          CATHERINE A. HANRAHAN, ESQUIRE

22          WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER

23          1341 G Street, Northwest, 5th Floor

24          Washington, D.C.  20005-3105

25          Via teleconferencing

VIDEOTELECONFERENCE DEPOSITION OF DAVID LEE PAGE, M.D.
CONDUCTED ON WEDNESDAY, OCTOBER 29, 2003

3

1                         I N D E X

2   WITNESS: DAVID LEE PAGE

3                  INDEX OF EXAMINATIONS

4                                          Page

5   By Ms. Zork ........................    4

6   By Mr. Adams .......................    49

7   By Ms. Zork ........................    51

8

9

10                    E X H I B I T S

11                    NONE MARKED

12

13

14

15

16

17

18

19

20

21

22

23

24

25

VIDEOTELECONFERENCE DEPOSITION OF DAVID LEE PAGE, M.D.
CONDUCTED ON WEDNESDAY, OCTOBER 29, 2003

4

1           The deposition of DAVID LEE PAGE,

2    M.D., taken on behalf of the Plaintiff, on

3    October 29th, 2003, at Vanderbilt University,

4    1919 21st Avenue, South, Light Hall, Room 208,

5    Nashville, Tennessee, for all purposes under

6    the Federal Rules of Civil Procedure.

7           The formalities as to notice,

8    caption, certificate, et cetera, are waived.

9    All objections, except as to the form of the

10   questions, are reserved to the hearing.

11          It is agreed that Trine M. Mitchell,

12   R.P.R., being a Notary Public and Court

13   Reporter for the State of Tennessee, may swear

14   the witness, and that the reading and signing

15   of the completed deposition by the witness are

16   waived.

17

18

19                   *   *   *

20

21           DAVID LEE PAGE, M.D.,

22

23   was called as a witness, and after having been

24   first duly sworn, testified as follows:

25

VIDEOTELECONFERENCE DEPOSITION OF DAVID LEE PAGE, M.D.
CONDUCTED ON WEDNESDAY, OCTOBER 29, 2003

5

1                     E X A M I N A T I O N

2    BY MS. ZORK:

3    Q.       Good afternoon, Dr. Page.

4    A.       Hello.

5    Q.       My name is Lesley Zork, and I represent

6    Mr. and Mrs. Pollard in this case.

7             Would you, please, state your full

8    name, for the record?

9    A.       David Lee Page, P-A-G-E.

10   Q.       And would you give us your residential

11   address and your professional address, please?

12   A.       Residence is 5905 Robert E. Lee Court

13   in Nashville.

14            And my professional address is the

15   Department of Pathology at Vanderbilt

16   University Medical Center in Nashville.

17   Q.       Now, you're here today designated as an

18   expert on behalf of the United States in this

19   action that's been filed on behalf of Mr. and

20   Mrs. Pollard.

21            Is that your understanding?

22   A.       Yes.

23   Q.       Have you seen a copy of your

24   designation that was filed by the United States

25   designating you in this case?

Case 1:02-cv-00764-WDQ    Document 110-2    Filed 12/23/2004    Page 6 of 30
VIDEOTELECONFERENCE DEPOSITION OF DAVID LEE PAGE, M.D.
CONDUCTED ON WEDNESDAY, OCTOBER 29, 2003

25

1    actually have.  So that's what that document

2    says.

3    Q.        Now, what would be the purpose, what

4    would you be conveying in terms of prognosis by

5    using the term medullary, and then saying but

6    it's atypical medullary?  Explain that to me.

7    A.        In as specific terms as I'm capable of,

8    it's difficult to diagnose a pure medullary

9    carcinoma.  Many of us recognize it as being

10   very difficult and are reticent to make that

11   diagnosis, because it means slightly different

12   things to different clinicians.

13          That's not relevant in this case,

14   because that diagnosis was not made.

15          But if you say a tumor is high grade

16   and that it's like medullary, but not a pure

17   medullary, that's a clear message to folks who

18   understand breast cancer, that this is a high

19   grade cancer with the attendant poor prognosis

20   that high grade indicates, even in smaller

21   tumors in young women.

22   Q.        If you could, I guess, describe for

23   me -- well, first of all, can you look at the

24   report from -- that was written by Dr. Adams

25   from the October 14th biopsy, his study of

26

1    those specimens, and indicate to me or point

2    out to me where he has described the grade of

3    the tumor?

4    A.      The diagnosis is infiltrating carcinoma

5    with medullary features.  To me, that's a clear

6    statement that a medullary carcinoma is

7    mimicked, but it isn't a pure medullary

8    carcinoma.  It's the same phrase we use.

9            And then he has a comment that says,

10   the neoplasm is well circumscribed.  It's a

11   descriptor, which goes along with medullary or

12   almost medullary carcinomas.

13           He talks with the lymphoid infiltrate.

14   He says, there's a high grade cytologic feature

15   and features of medullary carcinoma.

16           Then he talks about nodals and

17   necrosis, and says, it's not typical of

18   medullary, and, thus, should be removed from

19   the pure medullary classification.

20           The rest of the information is,

21   perhaps, relevant.  He has stated -- and this

22   is something that pathologists, perhaps, should

23   do, many don't do.  He's gone ahead to say that

24   the AJCC staging is T1B.

25           Now, T1B is greater than five

Case 1:02-cv-00764-WDQ    Document 110-2    Filed 12/23/2004    Page 8 of 30
VIDEOTELECONFERENCE DEPOSITION OF DAVID LEE PAGE, M.D.
CONDUCTED ON WEDNESDAY, OCTOBER 29, 2003

27

1    millimeters and less than 10 millimeters.  So

2    he's placed this tumor in the category, as I've

3    said, between greater than five millimeters and

4    equal to or less than 10 millimeters, which is

5    exactly what I would have done at nine

6    millimeters.

7            So he must have thought, when he made

8    that designation, that it was greater than five

9    millimeters, because five millimeters or less

10   should be called T1A.

11           I'm not sure how that happened, but,

12   again, his summary statement here is correct.

13   It's T1B.  Not larger then a centimeter, but

14   larger than five millimeters.

15   Q.      The TMM designation, that is -- that

16   goes to the staging of the tumor?

17   A.      Yes.

18   Q.      And that is -- but that's separate than

19   the grading of the tumor?

20   A.      Yes, it is.

21   Q.      Okay.  So grading of the tumor goes to

22   the histologic makeup of the tumor; is that

23   correct?

24   A.      And is a measure that most of us have

25   been lecturing about since about 1990, is more

VIDEOTELECONFERENCE DEPOSITION OF DAVID LEE PAGE, M.D.
CONDUCTED ON WEDNESDAY, OCTOBER 29, 2003

28

1   important than the size or minimal lymph node

2   status.

3   Q.      I believe you began by saying that in

4   your review of the slides, that you would have

5   scored this as a three, three, three --

6   A.      Yes.

7   Q.      -- on the grading system that you

8   talked about in your publications --

9   A.      Yes.

10  Q.      -- where you took at the tubules and

11  the --

12  A.      Nuclei.

13  Q.      -- nuclei and the mitoses.

14  A.      Yes, that's right.

15  Q.      So three, three, three, would be the

16  highest grade that you would give a tumor --

17  A.      Yes.

18  Q.      -- is that correct?

19  A.      Yes.

20  Q.      What in this report identifies that

21  this tumor has a three, three, three?

22  A.      Well, I started by saying, whether it's

23  mandatory standard of care that that system be

24  used I think is questionable, because it is not

25  routinely used by even some very highly

VIDEOTELECONFERENCE DEPOSITION OF DAVID LEE PAGE, M.D.
CONDUCTED ON WEDNESDAY, OCTOBER 29, 2003

29

1  regarded centers.  And, in my opinion, that

2  information is contained in this report, as

3  I --

4            MR. ADAMS:  Go ahead and finish.

5            MS. ZORK:  Sorry.

6            THE WITNESS:  I believe that that

7  information is present in this report, as I

8  have previously stated, by saying that it has

9  the features of a medullary without being a

10  pure medullary.  And this information is

11  strongly supported by the Ki67, which was one

12  of the special studies that was done.

13  BY MS. ZORK:

14  Q.      Okay.  As of the -- well, the Ki67, as

15  we know, wasn't done for another six weeks or

16  so.

17            As of the time of the report, when

18  you're looking at the report, what would tell

19  the reader of this report that this was a tumor

20  that had, I guess, less than the number of

21  tubules that will give it a one or a two?

22  A.      As I said before -- and I'll try to

23  make it more articulate and concise -- a

24  medullary carcinoma is a three, three, three.

25  If it isn't, it isn't a medullary carcinoma.

VIDEOTELECONFERENCE DEPOSITION OF DAVID LEE PAGE, M.D.
CONDUCTED ON WEDNESDAY, OCTOBER 29, 2003

30

1    It's only a pure medullary, because it has the

2    confinement and the pattern of growth which is

3    appropriate for that unusual tumor type.

4         To say that something is a medullary

5    variant with high grade cytology is to say,

6    very clearly, in my view, to a clinician who

7    understands breast disease, that this is a

8    three, three, three, or possibly a three,

9    three, two, but is a high grade mammary

10   carcinoma.

11   Q.    The reason why I'm asking these

12   questions is because later the oncologist

13   referred to the medullary features as giving

14   this cancer a better prognosis, and that term

15   medullary features was picked up and relied on

16   by oncologists, on down the line, as tending to

17   suggest that the cancer that Ms. Pollard had

18   had good prognostic features.

19        So there appears to have been confusion

20   --

21   A.    I understand.

22   Q.    -- based upon this report.

23   A.    Sure.

24   Q.    So I'm trying to understand what else

25   about this report --

Vol II

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Veronica Pollard, et. al.,          :

            **Plaintiffs,**          :

                                        **Civil Action No.**

   **v.**          :          **WDQ-02-764**

United States of America,          :
et al.,

                               :

             **Defendant.**          :
                  ...oOo...

### DEFENDANT UNITED STATES' RULE 26(a)(2) DISCLOSURES

Defendant, United States of America, by Thomas M. DiBiagio, United States Attorney for the District of Maryland, and through undersigned counsel, makes the following disclosures pursuant to Rule 26(a)(2),Federal Rules of Civil Procedure:

Defendant United States identifies the following individuals who may be called to provide expert testimony at trial:

    1.    Dr. Robert Somers
           Albert Einstein Hospital
           5401 Old York road
           Klein building, Suite 510
           Philadelphia, Penn 19141

Dr. Somers is expected to testify that the employees of the United States followed all accepted standards of care with respect to the surgical aspect of this case.  His opinions will be based on review of all available medical records, depositions and other pertinent materials.  His curriculum vitae is attached.



EXHIBIT

2

2.    Dr. David Page
      Vanderbilt University Hospital
      1211 22nd Avenue South
      Nashville, Tenn 37232

Dr. Page is expected to testify that the employees of the United States followed all accepted standards of care with respect to the pathology of the case.  His opinions will be based on review of all available medical records, depositions and other pertinent materials.  His curriculum vitae is attached.

3.  The United States hereby incorporates in its entirety the designation of experts filed on behalf of defendant Raj Gupta, M.D..  The United States will rely upon the the testimony of these experts (Drs. Lippman and Stark) with regard to standard of care, proximate cause and damages in their respective specialities.  In addition, the United States will rely on the testimony of Dr. Maccini with regard to issues concerning alleged economic losses suffered by the plaintiffs.

4.  In addition, the United States reserves the right to solicit expert opinions from the experts and treating physician designated the plaintiffs.

5.  The United States reserves the right to supplement this expert witness designation since not all of the plaintiff's experts have been deposed at this time.  Moreover, counsel for plaintiffs have indicated that they might not use some experts previously designated which further complicates the decision on additional experts.

Respectfully submitted,

Thomas M. DiBiagio
United States Attorney


Larry D. Adams
Assistant United States Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201
410-209-4801

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of DEFENDANT UNITED STATES'
RULE 26(a)(2) DISCLOSURES was sent, first class mail, postage
prepaid, this 1st day of July 2003 to:

Bruce J. Klores, Esq.
Lesley S. Zork, Esq.
915 15th Street, N.W. , Third Floor
Washington, D.C. 20005

Joan Cerniglia-Lowensen, Esq.
Morgan, Shelsby, Carlo, Downs & Everton
4 North Park Drive, #404
Hunt Valley, Md.  21030

Catherine A. Harahan, Esq.
Wilson, Elser, Moskowitz, Edelman and Dicker
1341 G Street, N.W.   5th Floor
Washington, D.C. 20005-3105

Larry D. Adams
Assistant United States Attorney

COPY

Page 1

```
1           IN THE UNITED STATES DISTRICT COURT

2                    DISTRICT OF MARYLAND

3

4    VERONICA POLLARD,        :

5    et al.,

6              Plaintiffs    : Civil Action

7        vs.                 . No. S-02-CV-764

8    UNITED STATES OF AMERICA,:

9    et al.,

10            Defendants     :

11                    -------------------

12

13        Deposition of ARTHUR H. McTIGHE, M.D., was

14   taken on Monday, June 30, 2003, at 915 15th

15   Street, N.W., Washington, D.C., commencing at

16   1:25 p.m. before Carol T. Lucic, Notary Public.

17                    -------------------

18

19

20

21   REPORTED BY:  Carol T. Lucic
```

PLAINTIFF'S EXHIBIT 3
ALL-STATE LEGAL SUPPLY CO.



**Art Miller & ASSOCIATES L.L.C.**
COURT REPORTERS AND VIDEOGRAPHERS
BALTIMORE, MD 410-367-3838 • WASHINGTON, D.C. 202-234-8300

Page 2

```
 1    APPEARANCES:

 2         LESLEY S. ZORK, ESQUIRE

 3              On behalf of the Plaintiffs

 4         LARRY D. ADAMS, ESQUIRE

 5              On behalf of the Defendant

 6              United States of America

 7         (via telephone)

 8         JOAN CERNIGLIA-LOWENSEN, ESQUIRE

 9              On behalf of the Defendant

10              Raj Gupta, M.D.

11         (via telephone)

12         CATHERINE A. HANRAHAN, ESQUIRE

13              On behalf of the Defendant

14              Humana Military Healthcare

15              Systems, Inc.

16

17

18

19

20

21
```

Page 3

1            I N D E X   O F   W I T N E S S E S

2    WITNESS                               PAGE

3    ARTHUR H. McTIGHE, M.D.

4    By Mr. Adams                          4, 71

5    By Ms. Cerniglia-Lowensen              48

6    By Ms. Hanrahan                        68

7

8            I N D E X   O F   E X H I B I T S

9    EXHIBIT                               PAGE

10   No. 1    Curriculum vitae              4

11

12

13

14

15

16

17

18

19

20

21            (Exhibit attached.)

*Art Miller & ASSOCIATES L.L.C.*
**COURT REPORTERS AND VIDEOGRAPHERS**
BALTIMORE, MD 410-367-3838 • WASHINGTON, D.C. 202-234-8300

1    are no opinions.  It's not a report exactly.

2    These are just notes that I took as I reviewed

3    the record and as I reviewed the depositions.

4    Q.    But these are notes that you're relying

5    upon to give your testimony today; correct?

6    A.    Yes.

7         MR. ADAMS:  I would ask counsel to have a

8    copy of that.

9         MS. ZORK:  Sure.

10   Q.    Based on your review of the material that

11   we've outlined have you reached a medical

12   opinion as regards the pathology that was

13   conducted in this case?

14   A.    Yes.

15   Q.    What opinions have you reached?

16   A.    The initial biopsy that was reviewed by

17   Dr. Adams was collected in a timely fashion.  It

18   was obtained only a short time after the patient

19   noticed this lesion by self breast examination,

20   but after that a number of problems occurred.

21        I think that the report by Dr. Adams



Page 34

1    departs from the standard of care for a

2    pathologist.  It misstates some things.  It

3    misses some things.  It has a diagnosis that I

4    think was confusing, and some very important

5    ancillary studies were not promptly performed.

6    Q.    Well, let's go into each of those details.

7    You say that there were some misstatements in

8    Dr. Adams' report.

9    A.    Yes.

10   Q.    What are you referring to?

11   A.    Well, the diagnosis that he gave was

12   carcinoma with medullary features, and I think

13   that that diagnosis misled a lot of people.

14   What does that mean?  What does carcinoma with

15   medullary features mean?  There is a medullary

16   carcinoma that pathologists recognize.  There is

17   another entity that people call atypical

18   medullary carcinoma.

19      Atypical medullary carcinoma does not have

20   a behavior that is any different than ordinary

21   infiltrating adenocarcinoma.  It's a condition

COPY

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MARYLAND

 3

 4    VERONICA POLLARD,          :

 5    et al.,

 6            Plaintiffs     : Civil Action

 7        vs.                       No. S-02-CV-764

 8    UNITED STATES OF AMERICA,:

 9    et al.,

10            Defendants     :

11                     -------------------

12

13        Deposition of ARTHUR H. McTIGHE, M.D., was

14    taken on Monday, June 30, 2003, at 915 15th

15    Street, N.W., Washington, D.C., commencing at

16    1:25 p.m. before Carol T. Lucic, Notary Public.

17                     -------------------

18

19

20

21    REPORTED BY:  Carol T. Lucic
```

PLAINTIFF'S
EXHIBIT
3
ALL-STATE LEGAL SUPPLY CO.



*Art Miller* & ASSOCIATES L.L.C.
COURT REPORTERS AND VIDEOGRAPHERS
BALTIMORE, MD 410-367-3838 • WASHINGTON, D.C. 202-234-8300

Page 2

1    APPEARANCES:

2         LESLEY S. ZORK, ESQUIRE

3              On behalf of the Plaintiffs

4         LARRY D. ADAMS, ESQUIRE

5              On behalf of the Defendant

6              United States of America

7         (via telephone)

8         JOAN CERNIGLIA-LOWENSEN, ESQUIRE

9              On behalf of the Defendant

10             Raj Gupta, M.D.

11        (via telephone)

12        CATHERINE A. HANRAHAN, ESQUIRE

13             On behalf of the Defendant

14             Humana Military Healthcare

15             Systems, Inc.

16

17

18

19

20

21

Page 3

1           I N D E X   O F   W I T N E S S E S

2    WITNESS                                    PAGE

3    ARTHUR H. McTIGHE, M.D.

4    By Mr. Adams                              4, 71

5    By Ms. Cerniglia-Lowensen                   48

6    By Ms. Hanrahan                             68

7

8           I N D E X   O F   E X H I B I T S

9    EXHIBIT                                    PAGE

10   No. 1    Curriculum vitae                   4

11

12

13

14

15

16

17

18

19

20

21              (Exhibit attached.)

*Art Miller* & ASSOCIATES L.L.C.
COURT REPORTERS AND VIDEOGRAPHERS
BALTIMORE, MD 410-367-3838 • WASHINGTON, D.C. 202-234-8300

1    are no opinions.  It's not a report exactly.

2    These are just notes that I took as I reviewed

3    the record and as I reviewed the depositions.

4    Q.    But these are notes that you're relying

5    upon to give your testimony today; correct?

6    A.    Yes.

7         MR. ADAMS:   I would ask counsel to have a

8    copy of that.

9         MS. ZORK:   Sure.

10   Q.    Based on your review of the material that

11   we've outlined have you reached a medical

12   opinion as regards the pathology that was

13   conducted in this case?

14   A.    Yes.

15   Q.    What opinions have you reached?

16   A.    The initial biopsy that was reviewed by

17   Dr. Adams was collected in a timely fashion.  It

18   was obtained only a short time after the patient

19   noticed this lesion by self breast examination,

20   but after that a number of problems occurred.

21         I think that the report by Dr. Adams

1    departs from the standard of care for a

2    pathologist.  It misstates some things.  It

3    misses some things.  It has a diagnosis that I

4    think was confusing, and some very important

5    ancillary studies were not promptly performed.

6    Q.    Well, let's go into each of those details.

7    You say that there were some misstatements in

8    Dr. Adams' report.

9    A.    Yes.

10    Q.    What are you referring to?

11    A.    Well, the diagnosis that he gave was

12    carcinoma with medullary features, and I think

13    that that diagnosis misled a lot of people.

14    What does that mean?  What does carcinoma with

15    medullary features mean?  There is a medullary

16    carcinoma that pathologists recognize.  There is

17    another entity that people call atypical

18    medullary carcinoma.

19         Atypical medullary carcinoma does not have

20    a behavior that is any different than ordinary

21    infiltrating adenocarcinoma.  It's a condition

# COPY

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MARYLAND

 3

 4   VERONICA POLLARD,           :

 5   et al.,

 6           Plaintiffs     : Civil Action

 7      vs.                    , No. S-02-CV-764

 8   UNITED STATES OF AMERICA,:

 9   et al.,

10           Defendants   :

11                   -------------------

12

13      Deposition of ARTHUR H. McTIGHE, M.D., was

14   taken on Monday, June 30, 2003, at 915 15th

15   Street, N.W., Washington, D.C., commencing at

16   1:25 p.m. before Carol T. Lucic, Notary Public.

17                   -------------------

18

19

20

21   REPORTED BY:  Carol T. Lucic
```

PLAINTIFF'S
EXHIBIT
_3_
ALL-STATE LEGAL SUPPLY CO.



Art Miller & ASSOCIATES L.L.C.

COURT REPORTERS AND VIDEOGRAPHERS

BALTIMORE, MD 410-367-3838 • WASHINGTON, D.C. 202-234-8300

Page 2

1    APPEARANCES:

2         LESLEY S. ZORK, ESQUIRE

3              On behalf of the Plaintiffs

4         LARRY D. ADAMS, ESQUIRE

5              On behalf of the Defendant

6              United States of America

7         (via telephone)

8         JOAN CERNIGLIA-LOWENSEN, ESQUIRE

9              On behalf of the Defendant

10             Raj Gupta, M.D.

11        (via telephone)

12        CATHERINE A. HANRAHAN, ESQUIRE

13             On behalf of the Defendant

14             Humana Military Healthcare

15             Systems, Inc.

16

17

18

19

20

21

*Art Miller* & ASSOCIATES L.L.C.

COURT REPORTERS AND VIDEOGRAPHERS

BALTIMORE, MD 410-367-3838 • WASHINGTON, D.C. 202-234-8300

Page 3

1                  I N D E X   O F   W I T N E S S E S

2      WITNESS                              PAGE

3      ARTHUR H. McTIGHE, M.D.

4      By Mr. Adams                         4, 71

5      By Ms. Cerniglia-Lowensen            48

6      By Ms. Hanrahan                      68

7

8                  I N D E X   O F   E X H I B I T S

9      EXHIBIT                              PAGE

10     No. 1    Curriculum vitae            4

11

12

13

14

15

16

17

18

19

20

21                  (Exhibit attached.)

*Art Miller* & ASSOCIATES L.L.C.
COURT REPORTERS AND VIDEOGRAPHERS
BALTIMORE, MD 410-367-3838 • WASHINGTON, D.C. 202-234-8300

Page 33

1    are no opinions.  It's not a report exactly.

2    These are just notes that I took as I reviewed

3    the record and as I reviewed the depositions.

4    Q.    But these are notes that you're relying

5    upon to give your testimony today; correct?

6    A.    Yes.

7          MR. ADAMS:  I would ask counsel to have a

8    copy of that.

9          MS. ZORK:  Sure.

10   Q.    Based on your review of the material that

11   we've outlined have you reached a medical

12   opinion as regards the pathology that was

13   conducted in this case?

14   A.    Yes.

15   Q.    What opinions have you reached?

16   A.    The initial biopsy that was reviewed by

17   Dr. Adams was collected in a timely fashion.  It

18   was obtained only a short time after the patient

19   noticed this lesion by self breast examination,

20   but after that a number of problems occurred.

21          I think that the report by Dr. Adams

Page 34

1    departs from the standard of care for a

2    pathologist.  It misstates some things.  It

3    misses some things.  It has a diagnosis that I

4    think was confusing, and some very important

5    ancillary studies were not promptly performed.

6    Q.    Well, let's go into each of those details.

7    You say that there were some misstatements in

8    Dr. Adams' report.

9    A.    Yes.

10   Q.    What are you referring to?

11   A.    Well, the diagnosis that he gave was

12   carcinoma with medullary features, and I think

13   that that diagnosis misled a lot of people.

14   What does that mean?  What does carcinoma with

15   medullary features mean?  There is a medullary

16   carcinoma that pathologists recognize.  There is

17   another entity that people call atypical

18   medullary carcinoma.

19        Atypical medullary carcinoma does not have

20   a behavior that is any different than ordinary

21   infiltrating adenocarcinoma.  It's a condition



*Art Miller* & ASSOCIATES L.L.C.
COURT REPORTERS AND VIDEOGRAPHERS
BALTIMORE, MD 410-367-3838 • WASHINGTON, D.C. 202-234-8300