IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VERONICA POLLARD, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CA No. S-02-CV-764 |
| | ) | Judge Quarles |
| THE UNITED STATES OF | ) | |
| AMERICA, et al. | ) | |
| | ) | |
| Defendants | ) | |

## JOINT PRETRIAL STATEMENT

### I.    STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S CLAIMS

This is a medical malpractice case brought by Roosevelt Pollard on behalf of the estate

and beneficiaries of his wife, Veronica Pollard, who died of metastatic breast cancer on

December 29, 2003, at the age of 48.  Veronica Pollard's beneficiaries include her husband,

Roosevelt Pollard, and her children, Benjamin Pollard, who is 7 years old; Lynn Pollard, who is

20 years old; and Shantryce Phelps Brown and James Phelps, both of whom are adults.

The allegations in this case relate to the medical care and treatment that Mrs. Pollard

received at the Eisenhower Army Medical Center at Fort Gordon, in Augusta, Georgia, in

October-December, 1998, after being diagnosed with breast cancer.  Plaintiff contends that the

doctors at Eisenhower negligently failed to provide Mrs. Pollard with the necessary treatment for

her breast cancer, which should have included timely chemotherapy and radiation treatment.

Plaintiffs contend that as a result of this negligence, Mrs. Pollard developed metastatic breast

cancer that resulted in her death on December 29, 2003.

1

Veronica Pollard and Roosevelt Pollard were married in June of 1992.  They met in the Army, where they both specialized in the installation and repair of micro electronic satellite equipment.  Mr. Pollard is still active duty in Army where he has served for twenty years.  He is a Sergeant First Class, and is currently stationed at Fort Meade in Odenton, Maryland.  Mrs. Pollard retired from the Army as a staff Sergeant in 1996, after 20 years of service.  Mrs. Pollard had three children, Lynn, James and Shantryce from a previous marriage.  SFC Pollard adopted Lynn, who was six years old at the time, after they were married.  They had Benjamin in 1997.

In 1998, the Pollards lived near Fort Gordon in Augusta, Georgia, in a home that they owned.  During that year SFC Pollard was on a "hardship" assignment in Kuwait, which meant he was separated from his family for many months. The Kuwait assignment was scheduled to end in December 1998.  Mr. Pollard's next assignment was a "permanent change of station" to Menwith Hill Station, in England, and it was scheduled to begin in January 1999.  The family was scheduled to accompany him.  In October 1998, SFC Pollard returned to Fort Gordon when his wife was diagnosed with breast cancer.

In late September 1998, Mrs. Pollard discovered a lump in her right breast on self-examination.  She was 43 years old at the time.  Mrs. Pollard had a strong family history of breast cancer that included her mother and an older sister, and she immediately went to see the doctors at Eisenhower to have it examined.

On October 2, 1998, Mrs. Pollard underwent a fine needle aspiration of the lump.  This showed "atypical cells," and on October 14, 1998, Mrs. Pollard  had an excisional biopsy of the tumor, performed by Dr. David Sees.  The pathology report related to  the excisional biopsy was prepared by Dr. Stephen Adams.  He described a .5 cm tumor, with margins that were

2

"extremely close" to the edge of excised tissue, when in fact, the tumor measured 1.1 cm in greatest diameter. Dr. Adams also described the tumor as an "infiltrating carcinoma with medullary features." In fact, it was a poorly differentiated high grade tumor. Dr. Adams' description of the tumor as having "medullary features," and his under reporting of its size, gave the false impression that the cancer was of a less serious nature and that less serious treatment was needed.

On November 12, 1998, Dr. Sees performed a lumpectomy to remove a wider margin of tissue in the area surrounding the biopsy. He also dissected and removed seventeen axillary lymph nodes. There were no additional findings of cancer in the lumpectomy tissue or the lymph nodes.

Mrs. Pollard was referred to Dr. Raj Gupta for an initial oncology consult on December 1, 1998. Plaintiff contends that Mrs. Pollard should have already begun receiving chemotherapy by the time of the initial referral. Instead, Mrs. Pollard learned that the pathologic studies following the October 14, biopsy were incomplete, and that Dr. Adams had failed to obtain studies that were relevant to determining the need for chemotherapy. Dr. Gupta told Mrs. Pollard that he could not discuss her treatment options without the results of these pathologic studies. Dr. Gupta then ordered the studies, and rescheduled Mrs. Pollard for an appointment on December 15, 1998, one day before the Pollards were scheduled to leave Fort Gordon and transfer to England.

The additional studies were completed a week later, and showed that the cancer was estrogen and progesterone receptor negative, and had a high proliferation index. These results confirmed that Mrs. Pollard was a strong candidate for chemotherapy. When Dr. Gupta saw

Mrs. Pollard on December 15, it had been over four weeks since the lumpectomy. Instead of advising Mrs. Pollard that she should undergo chemotherapy and that she should begin treatment right away as the standard of care required, Dr. Gupta assumed that someone else would be responsible for treating her cancer. Consequently, he never advised Mrs. Pollard of the need for chemotherapy. Instead, on December 16, 1998, Dr. Gupta wrote a letter, "To Whom It May Concern," outlining his treatment recommendations which included radiation treatment and "adjuvant chemotherapy" based on the fact that she was "pre-menopausal and that her receptors were negative." This letter was sent to the military base in England where Sgt. Pollard had been reassigned. Dr. Gupta did nothing to identify who would be involved in Mrs. Pollard's care. He never spoke with anyone, and took no steps to determine whether appropriate and timely treatment was available for Mrs. Pollard in England.

Because of this, the Pollard's left Fort Gordon in December, 1998, to transfer to England with no knowledge or understanding that Mrs. Pollard needed chemotherapy; knowing nothing about the critical importance of beginning adjuvant treatment for breast cancer as soon as possible after surgical removal of the cancer, and believing that it was safe for Mrs. Pollard to accompany her husband to England.

When Mrs. Pollard arrived in England in mid-January, 1999, contrary to Dr. Gupta's letter, Mrs. Pollard was advised against having chemotherapy by the doctors in England. She was advised that she needed radiation treatment, but because of a waiting list radiation treatment was not available until late April, 1999, five-six months after her lumpectomy.

Plaintiff contends that the physicians at the Eisenhower Army Medical Center, failed to provide timely and appropriate chemotherapy and radiation treatment following the excisional

4

biopsy on October, 14, 1998, and lumpectomy and lymph node dissection on November 12, 1998. The purpose of adjuvant chemotherapy is to systemically eradicate any cancer cells that may have been released into the blood stream during surgery, before they have a chance to multiply and spread throughout the body, which is why the timing of treatment is critical. In addition, when a lumpectomy is performed instead of a mastectomy, radiation treatment of the entire breast is done to eradicate any microscopic tumors that may remain.

Plaintiff contends that it was Dr. Adams' duty to obtain complete and accurate pathologic studies on the tumor that was removed from Mrs. Pollard's right breast on October 14, 1998, and to do so in a timely manner. It was also Dr. Adams' duty to clearly and accurately communicate those findings to the oncologist who would be treating Mrs. Pollard's cancer following surgery. Plaintiff contends it was Dr. Gupta's duty, as Mrs. Pollard's treating oncologist, to inform and advise her of the need for chemotherapy and radiation treatment, and to arrange for this treatment to begin within the 3-6 weeks of surgery.

In February, 2000, Mrs. Pollard developed pain in her right breast and chest area. A biopsy in May, 2000, revealed recurrent cancer in her right chest wall. Mrs. Pollard was transferred back to the United States for further treatment at Walter Reed Army Hospital. Following diagnosis of metastatic cancer, Mrs. Pollard underwent right mastectomy, bone marrow transplant, surgery to remove portions of her lungs, and at least seven trials of chemotherapy. were unable to eradicate the wide-spread metastatic disease. Plaintiffs contend that Mrs. Pollard would more likely than not have survived if she had received the appropriate adjuvant treatment at the appropriate time.

## II.    STATEMENT OF FACTS IN SUPPORT OF DEFENDANTS' DEFENSES

192932.1

A.    **Dr. Gupta's Statement of Facts**

Raj Gupta, M.D. is an oncologist practicing at Fort Gordon, Georgia.  Pursuant to a

contract, Dr. Gupta, who is a civilian, provides oncology care to various members of the Armed

Forces and their dependents.

On December 1, 1998, Veronica Pollard presented to Dr. Gupta after being referred by

her surgeon, David Sees, M.D.  Ms. Pollard's history was that Dr. Sees had performed a needle

biopsy of a breast lump on October 2, 1998.  The pathology report indicated that atypical cells

were present and malignancy could not be ruled out.  The mammogram indicated that the tumor

was .5 centimeters in size.  An open biopsy was scheduled and was performed on October 14,

1998.  That biopsy identified infiltrating carcinoma and the margins were extremely close to the

edge of the excised tissue.  As a result, Dr. Sees performed a lumpectomy on November 12, 1998

and right axillary dissection to obtain a wider margin of tissue surrounding the mass.  On

November 17, 1998, Dr. Sees referred Mrs. Pollard to oncology for consultation.

The pathology provided to Dr. Gupta was that the tumor was .5 centimeters in size.  The

staging also provided to Dr. Gupta indicated that the tumor was a $T_1a$ (the smallest classification

in size), with no nodal involvement and no metastasis.

On December 1, 1998 when Mrs. Pollard presented to Dr. Gupta, she told him that her

family would be moving to England before the end of the year so that they could accompany her

husband who was a member of the United States Army on his transfer.  Upon review of Ms.

Pollard's chart, Dr. Gupta ascertained that the needed pathological studies were not completed or

ordered by any of the physicians providing care to Ms. Pollard prior to his involvement.  Dr.

Gupta informed Mrs. Pollard that he could not make final recommendations regarding her care

until those studies were completed.  Dr. Gupta arranged for the ordered studies to be accomplished on the tumor tissue sent to pathology.  A repeat appointment was scheduled for Mrs. Pollard to once again see Dr. Gupta on December 15, 1998.

Mrs. Pollard returned to Dr. Gupta's office on December 15, 1998, one day before her scheduled move from Georgia.  Dr. Gupta provided a consultation to Mrs. Pollard which is verified by a written report of recommendations to Mrs. Pollard's future treating physicians. This consultation report sets forth Dr. Gupta's recommendation that Mrs. Pollard undergo chemotherapy, radiation therapy and therapy with Tamoxifen.  Additionally, Dr. Gupta spoke with a representative in England for the United States Army.  This individual, now known as Helen Hodgkins, assured Dr. Gupta that the proper referral would be made once Ms. Pollard arrived in England and that chemotherapy was indeed available as was radiation therapy and Tamoxifen.

Veronica Pollard arrived in England in  mid-January, 1999 and was seen by David Dodwell, M.D.  Dr. Dodwell is an oncologist practicing in Leeds, England.  Dr. Dodwell discussed his recommendation with Veronica Pollard that chemotherapy was unnecessary in light of the presentation of her tumor.  He documents in his medical records that she agreed with the treatment protocol of radiation therapy.

Ms. Pollard began radiation therapy, as recommended by Dr. Dodwell, in April of 1999. In February of 2000, Veronica Pollard developed pain in her breast and chest area.  A biopsy obtained in May of 2000 revealed additional cancer in Veronica Pollard's chest wall.  Ms. Pollard returned to the United States and underwent additional treatment for her metastatic cancer.  She succumbed to her illness in December of 2003.

192932.1

After Ms. Pollard's recurrence in England, the slides obtained during her initial lumpectomy and needle biopsy were read by the pathologist in England.  It was determined by the pathologist that the tumor was larger, 1.1 cm's, then originally diagnosed by the pathologist, Dr. Adams.  This would then change the staging to indicate that the tumor was a $T_1b$, node negative and without metastasis.

Dr. Gupta contends that nothing he did or failed to do caused damage to Mrs. Pollard.  The facts and the medical literature support the conclusion that Dr. Gupta's consultation and recommendations were within standards of care and that there is no proximate cause to support judgment against Dr. Gupta.

**B.    HMHS Military Healthcare Services, Inc. ("HMHS") Statement of Facts**

In addition to the facts as set forth by Dr. Gupta, which HMHS adopts by reference, HMHS sets forth the following facts.

Defendant HMHS contends that as a matter of law, there are no facts to support any liability which HMHS allegedly has to the plaintiffs for any alleged negligent act of Dr. Gupta, a health care provider with whom it has no contract and no control over his exercise of medical judgment.  The complete facts in support of HMHS's defense are set forth in its Motion for Summary Judgment, which HMHS incorporates by reference herein.  The facts are summarized below.

The TRICARE program is the health care program established and underwritten by the Department of Defense.  The TRICARE program authorizes contracts with contractors in the private sector to perform certain administrative and financial services.  In 1996, HMHS contracted with the U.S. Department of Defense to manage delivery of health care services in the

8

Southeast region of the United States to beneficiaries of the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) pursuant to the TRICARE program. The Treatment Center at Fort Gordon, Georgia, falls within the Southeast region governed by HMHS's contract.

One aspect of HMHS's TRICARE contract is what is referred to as the "Resource Sharing Program." The Resource Sharing Program requires a contractor, at the direction of the Government, to supply civilian medical personnel to facilities such as Fort Gordon, which from time to time needs to supplement existing active military health care personnel.

Prior to 1996, Dr. Gupta's presence at the Fort Gordon Treatment Center was the result of a relationship between Dr. Gupta and those responsible for running the Treatment Center. Dr. Gupta first began seeing patients at the Fort Gordon Treatment Center in 1990. He was the only civilian oncology medical provider at the Treatment Center.

In 1996, when HMHS was awarded the TRICARE contract, Dr. Gupta remained in his role as a civilian oncologist providing oncology services at Fort Gordon. HMHS, to meet its contractual obligation to supply medical personnel under the resource sharing provision, entered into contracts with Sterling and Fort Gordon. HMHS's contract with Sterling was to provide an oncologist at Fort Gordon. Sterling then contracted with Dr. Gupta to continue working as an oncologist at Fort Gordon. HMHS is not a party to that contract. Under the terms of the contract, Sterling agrees to pay Dr. Gupta's salary. The hours and the oversight as to the work performed are not the responsibility of Sterling or HMHS. Dr. Gupta and Sterling also expressly agreed that Dr. Gupta is an independent contractor and not an employee of Sterling.

192932.1

Dr. Kenneth Fink, a colonel in the Army and Chief of the Department of Oncology at Fort Gordon, testified that no one from Sterling or HMHS supervised the quality of Dr. Gupta's care. Dr. Fink oversees Dr. Gupta's credentialing and Dr. Gupta's performance as an oncologist. The are no facts to support that Dr. Gupta is an agent, actual or apparent, or servant of HMHS.

## III.  AMENDMENT OF PLEADINGS

On behalf of Plaintiff – None, aside from those reflected in Plaintiff's Second Amended Complaint.

On behalf of the Defendants – None

## IV.  ISSUES IN PLEADINGS TO BE ABANDONED AT TRIAL

On behalf of Plaintiff –  None, aside from the issues addressed in the Court's previous rulings.

On behalf of Defendants – None.

## V.  REQUESTED STIPULATION OF FACTS

### A.    Plaintiff

1.    The pathology slides that were sent to Dr. Cecily Quinn, in Leeds, England, for review, are the original slides from Mrs. Pollard's October 14, 1998 excisional biopsy, and were same slides that were examined and reported on by Dr. Stephen Adams in his report dated October 19, 1998.

2.    The tumor on original slides from the October 14, 1998, excisional biopsy measures 11 mm in greatest diameter.

### B.    Dr. Gupta

1.    That the medical records of Veronica Pollard are admissible.

### C.    HMHS

In addition to the stipulations requested by Dr. Gupta, HMHS requests that Plaintiffs stipulate:

1.    The contracts listed as HMHS Exhibits 1 through 4 are authentic.

2.    The contracts listed as HMHS Exhibits 1 through 4 were in effect in December 1998.

### VI.    DAMAGES CLAIMED

192932.1

Georgia law on damages applies in this case which means that non-economic damages are uncapped.  Under Georgia law plaintiff is entitled to recover "the full value of Veronica Pollard's life,"  in addition to the full amount of her pain and suffering.  The "full value of life" has two components.  The first encompasses the economic loss.  Assuming that Mrs. Pollard would have worked until the age of 65 and lived a normal life expectancy, pecuniary losses total approximately $1.5 million.

The second component is the intangible value of Mrs. Pollard's life, as she valued it. Under Georgia law Mrs. Pollard's relationships with family, friends, church, community, etc., and the joy and meaning that she derived from those relationships and activities are relevant in valuing this loss.

Mrs. Pollard was a woman of outstanding character, strength and beauty.  For three years she endured one debilitating treatment after another, and fought courageously to extend her life for the sake her family, and, in particular, her seven year old son Benjamin.  Defendants face significant exposure from a jury or fact finder charged with placing a value on Mrs. Pollard's life, and her pain and suffering.

## VII.    EXHIBITS

### A.  Plaintiff

#### PLAINTIFF'S PROPOSED LIST OF EXHIBITS

| EX # | ITEM DESCRIPTION | I.D. | ADMITTED |
|------|------------------|------|----------|
|      | *Medical Records of Dwight D. Eisenhower Army |      |          |

192932.1

| | | | |
|---|---|---|---|
| | Medical Center | | |
| | *Medical Records of Menwith Hill Station – Harrogate | | |
| | *Medical Records of Cookridge Hospital - Yorkshire Regional Centre for Cancer Treatment | | |
| | *Medical Records to Lakenheath RAF | | |
| | *Medical Records to Walter Reed Army Medical Center | | |
| 10. | Letters of Administration of Estate □ Anne Arundel County | | |
| 11. | Death Certificate | | |
| 12. | Death Notice | | |
| 13. | Photograph of Veronica Pollard | | |
| 14. | Photograph of Veronica Pollard with Family | | |
| 15. | Photograph of Veronica Pollard with Family | | |
| 16. | Day in the Life Video of Veronica Pollard | | |
| 17. | Funeral/Burial Bill | | |
| | Photomicrographs of Pathology Slides (Date: 10/14/98) | | |
| | *Curriculum Vitae* of L.F. Smith, M.D. | | |
| | *Curriculum Vitae* of G. Peter Pushkas, M.D. | | |
| 21. | | | |
| 22. | *Curriculum Vitae* of James Fiorica, M.D. | | |
| 23. | *Curriculum Vitae* of Rebecca Zuurbier, M.D. | | |
| | *Curriculum Vitae* of Gerald Sokol, M.D. | | |
| | *Curriculum Vitae* of Arthur McTighe, M.D. | | |
| | *Curriculum Vitae* of David Page, M.D. | | |

13

| 27. | *Curriculum Vitae* of Richard Lurito, Ph.D. | | |
|-----|---------------------------------------------|--|--|
|     | Report of Richard Lurito, P.h.D. | | |
|     | Life Tables | | |
| 30. | Video □ Trial testimony of Veronica Pollard, June 6, 2002 | | |
| 31. | Video □ Trial testimony of Veronica Pollard, November 6, 2003 | | |
| 32. | Video □ Trial testimony of Veronica Pollard, November 6, 2003 | | |
| 33. | Transcript □ Trial testimony of Veronica Pollard, June 6, 2002 | | |
| 34. | Transcript □ Trial testimony of Veronica Pollard, November 6, 2003 | | |
| 35. | Defendant Gupta□s Answers to Interrogatories | | |
| 36. | Defendant USA□s Answers to Interrogatories | | |
| 37. | Defendant Humana□s Answers to Interrogatories | | |
| 38. | Medical Literature | | |
|     | Medical Literature | | |
| 40. | Medical Literature | | |
| 41. | Medical Literature | | |
| 42. | Medical Literature | | |
| 43. | Medical Literature | | |
| 44. | Medical Literature | | |
|     | Medical Literature | | |
| 46. | *Mammogram, 10/2/98, Eisenhower AMC | | |
| 47. | *Mammogram, 2/29/00, Menwith Hill | | |
| 48. | *Ultrasound-Right Breast, 4/17/00, Lakenheath | | |

14

| 49. | *Mammogram, 4/17/00, Lakenheath | | |
|---|---|---|---|
| 50. | *NM, Bone Scan, 11/10/98, Eisenhower | | |
| 51. | *Chest Xray, 4/17/00, Lakenheath | | |
| 52. | *Rib Xray, 4/17/00, Lakenheath | | |
| 53. | *Chest Xray, 6/1/00, Lakenheath | | |
| 54. | *Bone Scan (WB), 4/20/00, Harrogate | | |
| 55. | *CT Abdomen, 6/1/00, Lakenheath | | |
| 56. | *MRI Chest, 6/17/00, Walter Reed AMC | | |
| 57. | Demonstrative Evidence ☐ | | |
| 58. | Demonstrative Evidence ☐ | | |
| 59. | Demonstrative Evidence ☐ | | |
| 60. | Tumor Board Records Eisenhower Army Medical Center | | |
| | Medical Records - Dodwell De Bene Esse Deposition | | |
| 62. | **HMHS/Military Treatment Facility Resource Sharing Agreement, with Attachments A, B & C | | |
| 63. | **Resource Sharing Agreement Between Humana Military Healthcare Services and Fort Gordon For Oncology | | |
| 64. | **Agreement Between Humana Military Healthcare Services and Sterling, with Attachments A & B | | |
| 65. | **Oncology Partnership Conversion Resource Sharing Program Proposal | | |
| | | | |
| 67. | Blow-up ☐ Medical Record | | |
| 68. | Blow-up ☐ Medical Record | | |
| 69. | Blow-up ☐ Medical Record | | |

15

| | Blow-up ☐ Medical Record | | |
|---|---|---|---|
| | Time Line | | |
| | Impeachment Evidence | | |
| 73. | Impeachment Evidence | | |
| 74. | Family Member Deployment Screening Sheet (DA Form 5888-R) | | |
| 75. | Exceptional Family Member Program Screening Questionnaire (DA Form 7246-R) | | |
| | Army Exceptional Family Member Program Medical Summary (DA Form 5862-R) | | |
| 77. | *Pathology Slides (10/14/98) | | |
| 78. | *Pathology Slides (11/12/98) | | |
| 79. | | | |
| 80. | | | |
| 81. | | | |

16

Plaintiff reserves the right to rely upon exhibits tendered by the Defendants.

Plaintiff reserves the right to use a time line, medical illustrations, or other pedagogical objects or documents during the course of opening or closing statements, which may or may not be entered into evidence as exhibits.  If plaintiff intends to use any such object or document, it will be made available to defense counsel for inspection in advance.

Plaintiff reserves the right to supplement and/or amend Plaintiff's Witness List and Exhibit List.  This list may also be amended based upon Court Rulings on Plaintiff's pending Motion to reinstate claims against the United States, Motions in Limine and other evidentiary issues that may arise at trial.

* Plaintiff requests that the parties stipulate to the authenticity of these records, radiologic films, and pathology slides

** Plaintiff requests that the parties stipulate to the authenticity of these documents. Plaintiff also requests that the parties stipulate that these agreements governed the contractual relationship between Humana and the Eisenhower Army Medical Center, and Humana and Sterling Medical during the time that Veronica Pollard was treated for breast cancer at Eisenhower.

Plaintiff objects to the following Defense Exhibits:

Exhibit 5          10 U.S.C. § 1072(7) (1998) – hearsay, foundation, relevance

Exhibits 1-19   Medical Journal Articles –  hearsay, foundation, relevance

Exhibit 20        Enlargement of Medical Records – vague

Exhibit 22        Enlargement of Evidence – vague

**B.  Dr. Gupta**

1.        Medical Records of Veronica Pollard

**C.  HMHS**

In addition to the exhibits identified by Plaintiff and Defendant Dr. Gupta, HMHS identifies the following:

17

1.      Resource Sharing Program Amendments

2.      Tricare Resource Sharing Services, Dwight D. Eisenhower Army Medical Center, Ft. Gordon, Georgia Oncology Agreement – Fee for Service

3.      Agreement Between HMHS Military Healthcare Services and Sterling Medical (Oncology)

4.      HMHS / Military Treatment Facility Resource Sharing Agreement

5.      10 U.S.C. § 1072(7) (1998).

6.      Marc Lippman, M.D., *curriculum vitae*

7.      Louis J. Maccini, Ph.D., *curriculum vitae*

8.      James Stark, M.D., *curriculum vitae*

9.      Gerald Sokol, M.D., *curriculum vitae*

10.     Kenneth Fink, M.D., *curriculum vitae*

11.     Susan Corrin, M.D., *curriculum vitae*

12.     Raj Gupta, M.D., *curriculum vitae*

13.     David Dodwell, M.D., *curriculum vitae*

14.     Cecily Quinn, M.D., *curriculum vitae*

15.     Michael Beer, M.D., *curriculum vitae*

16.     B. Fisher, *et al.*, *Five-year results of a randomized clinical trial comparing total mastectomy and segmental mastectomy with or without radiation in the treatment of breast cancer*, 312 N.Engl. J. Med. 665-73 (1985).

17.     B. Fisher, *et al.*, *Eight-year results of a randomized clinical trial comparing total mastectomy and lumpectomy with or without irradiation in the treatment of breast cancer*, 320 N.Engl. J. Med. 822-28 (1989).

18.     B. Fisher, *et al., Reanalysis and results after 12 years of follow-up in a randomized clinical trial comparing total mastectomy and lumpectomy with or without radiation in the treatment of breast cancer*, 333 N.Engl. J. Med. 1456-1467 (1995).

19.    E. Fisher, *et al.*, *Ipsilateral Breast Tumor Recurrence and Survival Following Lumpectomy and Survival Following Lumpectomy and Irradiation:  Pathological Findings From NSABP Protocol B-06*, 8 Seminars in Surgical Oncology 161-66 (1992).

20.    Enlargement of Mrs. Pollard's Medical Records

21.    Time Line of Mrs. Pollard's medical care

22.    Enlargements of evidence – deposition testimony, discovery responses, contractual language of exhibits 1-4.

23.    Pollard's answers to interrogatories.

24.    Pollard's responses to requests for production of documents.

The defendants reserve the right to supplement and/or amend the list based upon Court rulings on pending motions and evidentiary issues at trial.

The defendants also reserve the right to use a time line or illustrations during opening statement and closing argument which will be made available for inspection.

HMHS objects to the following plaintiffs' exhibits:

Exhibit 13-15  "photographs;" vague, cumulative

Exhibit 16      Day in the Life Video of Veronica Pollard/heresy; relevance

Exhibit 33-34  Transcript of testimony; cumulative; see Motion in Limine

Exhibits 38 – 45.  "Medical Literature;" vague

Exhibits 57 – 59  "Demonstrative Evidence;" vague

Exhibits 67 – 70 "Blow up – Medical Record" vague; Timeline; vague

## VIII.   WITNESSES FOR PLAINTIFF

### Fact Witnesses

1.    Roosevelt Pollard
        Odenton, Maryland

2.      Lynn Pollard
        Odenton, Maryland

3.      Williemae Pollard
        Brooklyn, New York

4.      Elijah Pollard,
        Columbia, South Carolina

5.      Sharon Marshall,
        Stone Mountain, Georgia

6.      Veronica Pollard - Videotaped Trial Depositions
        (June 6, 2002 & November 6, 2003)

7.      Dr. Raj Gupta

8.      Dr. Stephen Adams
        2398 William Few Parkway
        Evans, Georgia

9.      Dr. David Sees
        Brook Army Medical Center
        San Antonio, Texas

10.     Dr. Kenneth Fink
        4313 Riverside Drive
        Evans, Georgia

11.     Dr. David Dodwell - Videotaped Discovery and Trial Depositions

12.     Dr. Cecily Quinn - Videotaped Discovery and Trial Depositions

13.     Dr. Cheryl Naulty
        Walter Reed Army Medical Center
        Washington, DC

14.     Helen Hodgkins
        117 Roads End Lane
        Severna Park, Maryland

**Expert Witnesses**

1.    L. F. Smith, M.D.
      5226 Dawes Avenue
      Alexandria, VA 22311-1404

2.    G. Peter Pushkas, M. D.
      11510 Old Georgetown Road
      Rockville, MD 20852

3.    James V. Fiorica, M.D.
      H. Lee Moffitt Cancer Center
      12902 Magnolia Drive
      Suite 3057L
      Tampa, Florida 33612

4.    Rebecca Zuurbier, M.D.
      Chief of Radiology
      Breast Cancer Center
      Sibley Memorial Hospital
      Washington, DC

5.    Gerald H. Sokol, M.D.
      New Hope Cancer Center
      7651 Medical Drive
      Hudson Florida 34667

6.    Arthur McTighe, M.D.
      10 Witherspoon Road
      Baltimore, Maryland

7.    Richard Lurito, PH.D.
      1491 Chain Bridge Road #300
      McLean, Virginia

8.    Plaintiff reserves the right to call any treating physicians who are

identified in the medical records of Veronica Pollard

9.    Plaintiff reserves the right to call any of defendants☐ experts who were

      deposed in this case.

21

## IX.    WITNESSES FOR THE DEFENDANTS

### A.  Dr. Gupta

**Fact Witnesses**

1.  Roosevelt Pollard

2.  Raj Gupta, M.D.

3.  Stephen Adams, M.D.

4.  David Sees, M.D.

5.  Helen Hodgkins

6.  David Dodwell, M.D.

7.  Cecily Quinn, M.D.

8.  Cheryl Naulty, M.D.

9.  Kenneth Fink, M.D.

10. Ona Cates

**Expert Witnesses**

1.  Marc Lippman, M.D.

2.  Louis J. Maccini, Ph.D.

3.  James Stark, M.D.

4.  Gerald Sokol, M.D.

5.  Rebecca Zuurbier, M.D.

6.  Kenneth Fink, M.D.

7.  The Defendant reserves the right to call any and all treating physicians of Veronica Pollard.

192932.1

8.    The Defendant reserves the right to call any expert witnesses identified by any of the parties in this case including those identified by prior Defendants, Dr. Sees and Dr. Adams

**B.  HMHS**

Defendant HMHS incorporates the fact and expert witnesses identified by Defendant Dr. Gupta, and reserves the right to call Veronica Pollard's treating physicians as experts and any expert witness identified by any of the parties in this case at any time.

In addition, HMHS identifies the following fact witness:

1.  Paul Esselman*

2.  Susan Corrin, M.D.

The defendants reserve the right to supplement this list pending the Court's disposition of motions.

* Plaintiff objects to Defendant HMHS's  designation of Paul Esselman as a fact witness.  Mr. Esselman was not identified as a fact witness and made available for deposition during discovery.

**X.    <u>PLAINTIFF'S DEPOSITION DESIGNATIONS</u>**

1.    Raj R. Gupta, M.D. - Deposition taken March 21, 2003

Page 13        Line 20-22

Page 14        Line 1-22

Page 15        Line 1-17

Page 16        Line 8-11

Page 23        Line 12-22

Page 24        Line 1-5

Page 26          Line 16-22

Page 27          Line 1-5

Page 28          Line 14-18

Page 29          Line 9-19

Page 34          Line 19-22

Page 35          Line 1, 14-22

Page 36          Line 1-18

Page 37          Line 14-18

Page 38          Line 20-22

Page 39          Line 1-22

Page 40          Line 1-17

Page 41          Line 1-14

Page 42          Line 4-8, 16-22

Page 43          Line 1-17

Page 44          Line 1-12

Page 46          Line 15-22

Page 47          Line 1-2

Page 49          Line 15-22

Page 50          Line 1-5

Page 52          Line 7-11

Page 54          Line 8-22

Page 55          Line 1-9

192932.1

Page 62          Line 7-22

Page 68          Line 9-22

Page 69          Line 1-18

Page 74          Line 20-22

Page 75          Line 1-2

Page 76          Line 12-16

Page 96          Line 9-19

Page 103         Line 17-18, 22

Page 104         Line 1-7

Page 118         Line 13-22

Page 133         Line 19-22

Page 134         Line 1

192932.1

2.      Plaintiff reserves the right to submit in their entirety the depositions of the

following witnesses:  David Sees, M.D.; Kenneth I. Fink, M.D.; Stephen Adams;

Cheryl Naulty, M.D.; Helen Hodgkins; David Lee Page, M.D.


## X.      DEFENDANT'S DEPOSITION DESIGNATIONS

### A.  Dr. Gupta

1.      Deposition of Sergeant Roosevelt Pollard- April 29, 2003

Page 17          Line 19 through Page 18, Line 20

Page 19          Line 9 through Page 20, Line 13

Page 21          Line 10, 17

Page 22          Line 6-16

Page 27          Line 18 through Page 28, Line 6

Page 29          Lines 17-20

Page 39          Line 5 through Page 43, Line 8

Page 53          Line 15 through Page 54, Line 18

Page 88          Line 21 through Page 91, Line 11

2.      Deposition Transcript of Veronica Pollard – June 6, 2002

Page 21          Line 2 through Page 24, Line 5

Page 43          Lines 9-14; Lines 18-20

14.     The defendant reserves the right to submit the entire deposition of David Sees,

M.D., Stephen Adams, M.D., Cheryl Naulty, M.D., Helen Hodgkins, David Dodwell, M.D. (by

videotape) and Cecily Quinn, M.D.

### B.  HMHS

HMHS incorporates the deposition designations identified by Dr. Gupta. In addition, HMHS identifies the following excerpts:

1.    Deposition of Dr. Kenneth I. Fink, M.D.

        Page 3         Line 13 through Line 15

        Page 4         Line 17 through Page 5, Line 8

        Page 7         Line 8 through Page 9, Line 25

        Page 10       Line 5 through Page 12, Line 8

        Page 13       Line 11 through Page 15, Line 1

        Page 15       Line 10 through Page 16, Line 23

        Page 17       Line 2 through Page 20, Line 1

        Page 46       Line 23 through Page 47, Line 9

        Page 53       Line 10 through Page 55, Line 21 (end it at line13?)

        Page 57       Line 22 through Page 59, Line 23

        Page 60       Line 25 through Page 62, Line 19

        Page 79       Line 3 through Line 12

2.    Deposition of Helen Hodgkins

        Page 7         Line 13 through Line 15

        Page 7         Line 22 through Page 8, Line 9

        Page 8         Line 15 through Line 19

        Page 9         Line 21 through Line 18

        Page 11       Line 7 through Line 10

        Page 16       Line 3 through Page 18, Line 14

        Page 22       Line 14 through Page 24, Line 4

Page 32          Line 17 through Page 35, Line 19

Page 41          Line 7 through Page 43, Line 9

Page 53          Line 14 through Page 54, Line 16

Page 60          Line 9 through Page 62, Line 9

Page 63          Line 2 through Page 64, Line 8

Page 69          Line 8 through Page 70, Line 21

Page 74          Line 4 through Page 86, Line 13

3.      Deposition of Sergeant Roosevelt Pollard – April 29, 2003
Page 23          Line 3 through Line 13

Page 26          Line 5 through Line 11

Page 92          Line 4 through Line 17

Page 94          Line 17 through Page 98, Line 10

Page 104        Line 14 through Page 107, Line 12

4.      *De bene esse* Deposition of Veronica Pollard, June 6, 2002

Page 41          Line 2 through Line 12

Page 83          Line 3 through Page 86, Line 5

5.      Deposition of Dr. Smith

Page 107        Line 7 through Page 108, Line 9

6.      Deposition of Dr. Sokol

Page 64          Line 8 through Page 67, Line 1

6.      Discovery Deposition of Veronica Pollard

June 6, 2002

7.      Deposition of Robert G. Somers, MD

Page 47          Line 5 through Page 18

Page 48          Line 10 through Page 50 Line 19

8.    Deposition of Arthur H. McTighe, MD

Page 33          Line 15 through Page 36 Line 2

Page 37          Line 8 through Page 39 Line 15

Page 40          Line 15 through Page 41 Line 7

9.    Deposition of Ona Cates transcript of November 20, 2003

## XI.    PENDING MOTIONS

The only Motion currently pending is Plaintiff's Motion for Reconsideration, or in the Alternative, Motion to Vacate, The Court's June 30, 2004, Order Dismissing Claims Against The United States of America.

Defendant HMHS will file the following Motions in Limine

1.    Wrongful Death Damage Evidence

2.    Exclude Cumulative Expert Testimony

3.    Exclude Veronica Pollard's November Testimony Regarding Medical Records

4.    Exclude testimony of Dr. Page

5.    Exclude causation testimony of plaintiff's experts

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By:____/s/_____
     Lesley S. Zork
     Bruce J. Klores
     915 15th Street, NW
     Washington, D.C. 20005
     (202) 628-8100
Co-counsel for Plaintiffs

and

LAW OFFICES OF PETER MASCIOLA


___/s/_____

Peter R. Masciola
601 Pennsylvania Avenue, N. W. #900
Washington, D.C. 20004
202-628-5680
Co-counsel for Plaintiffs
(signed by Lesley Zork with Permission of Peter Masciola)


MORGAN SHELSBY CAROL DOWNS & EVERTON


___/s/_____

Joan Cerniglia-Lowensen, Esquire
4 North Park Drive #404
Hunt Valley, MD 21030
(410) 584-2800
Counsel for Defendants Gupta and Sterling Medical
(signed by Lesley Zork with Permission of Joan Cerniglia-Lowensen)


WILSON, ELSER, MOSKOWITZ EDELMAN & DICKER


___/s/_____

Catherine A. Hanrahan, Esquire
1341 G Street, N. W. - 5th Floor
Washington, DC 20005-3105
(202) 626-7660
Counsel for Defendant Human Military Healthcare Services (signed by Lesley Zork with permission of Catherine Hanrahan)

192932.1