| | | |
|---|---|---|
| VERONICA POLLARD, et al | * | IN THE |
| Plaintiffs | * | UNITED STATES |
| v. | * | DISTRICT COURT |
| RAJ R. GUPTA, M.D., et al | * | FOR THE |
| Defendants | * | DISTRICT OF MARYLAND |
| | * | CASE NO.: WDQ-02-764 |

\* \* \* \* \*

## MOTION IN LIMINE OF DEFENDANTS, RAJ R. GUPTA, M.D. AND STERLING MEDICAL CORPORATION

The Defendants, Raj R. Gupta, M.D. and Sterling Medical Corporation, by and through their attorneys, Joan Cerniglia-Lowensen and Morgan Shelsby Carlo Downs & Everton, move that the Court limit the testimony presented at the trial of this matter. In support thereof, Defendants state the following:

1. The medical question of causation in this case is a complex one, requiring competent expert testimony to support Plaintiffs' assertion that the advice, diagnosis and treatments rendered by the Defendants in this case proximately caused Plaintiffs' claimed damages.

2. Plaintiffs' expert testimony is insufficient to support their assertion.

3. Plaintiffs have failed to establish the essential element of proximate causation of damages, and as such, this should not come before the jury as it will serve to confuse them.

4. Defendants incorporate the accompanying Memorandum in Support of their Motion.

Wherefore, Defendants respectfully request that the Court grant Defendants' Motion in Limine to preclude Plaintiff from presenting testimony about causation and delay with respect to the administration of chemotherapy to the jury.

Respectfully submitted,

*Joan Cerniglia-Lowensen*
Joan Cerniglia-Lowensen, #10747
Morgan Shelsby Carlo Downs & Everton
4 North Park Drive
Suite 404
Hunt Valley, Maryland 21030
410-584-2800

| | | |
|---|---|---|
| VERONICA POLLARD, et al | * | IN THE |
| Plaintiffs | * | UNITED STATES |
| v. | * | DISTRICT COURT |
| RAJ R. GUPTA, M.D., et al | * | FOR THE |
| Defendants | * | DISTRICT OF MARYLAND |
| | * | CASE NO.: WDQ-02-764 |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION IN LIMINE OF DEFENDANTS, RAJ R. GUPTA, M.D. AND STERLING MEDICAL CORPORATION

Comes Now, Defendants, Raj R. Gupta, M.D. and Sterling Medical Corporation, by and through their attorneys, Joan Cerniglia-Lowensen and Morgan Shelsby Carlo Downs & Everton, hereby move that this Court rule in limine to prevent the presentation of evidence in the trial of this matter.

### INTRODUCTION

On December 1, 1998, Veronica Pollard presented to the Defendant, Raj R. Gupta, M.D., for consultation regarding her diagnosis of breast cancer. When Ms. Pollard presented to Dr. Gupta she was recovering from her breast lumpectomy which had been done at the Dwight D. Eisenhower Medical Center on November 12, 1998. Ms. Pollard presented to Dr. Gupta at the request of her surgeon, Dr. Sees.

Upon presentation, Ms. Pollard informed Dr. Gupta that her husband was transferring to England, since he was on active duty in the United States Army. She further informed Dr. Gupta that it was her intent to move to England with her husband. After reviewing the records, Dr. Gupta requested certain other testing be done on the

tissue removed from Ms. Pollard's breast. He further scheduled a repeat visit with Ms. Pollard for December 15, 1998.

On December 15, 1998, Ms. Pollard returned to see Dr. Gupta. At that point, Dr. Gupta made certain recommendations regarding adjuvant therapy that he would recommend once she arrived in England. Dr. Gupta drafted correspondence to be taken to England suggesting this adjuvant therapy. Additionally, Sergeant Roosevelt Pollard, Veronica Pollard's husband, testified that Dr. Gupta had contact with a liaison provided by the United States Army to assure Ms. Pollard's care once she arrived in England.

On February 3, 1999, Veronica Pollard presented to Dr. Corrin, a primary care doctor in England for follow-up care. Dr. Corrin provided a referral to see an oncologist located in England, D. J. Dodwell, M.D. Dr. Dodwell reviewed all of the material available regarding Ms. Pollard's condition. Dr. Dodwell, in consultation with Veronica Pollard, decided that chemotherapy was not indicated for Veronica Pollard. Instead, it was determined that Ms. Pollard would undergo radiation therapy. This recommendation was contrary to the correspondence and recommendations provided by Raj Gupta, M.D.

One year later, in March of 2000, Veronica Pollard was diagnosed with a recurrence of her breast cancer. In June of 2000, it was determined that Ms. Pollard's breast cancer had metastasized requiring a total mastectomy, removal of a portion of her lung, chemotherapy, radiation therapy, bone marrow transplants and other treatment.

In March of 2002, the Plaintiffs in this matter filed a Complaint alleging medical negligence against Raj Gupta, M.D., the United States of America, Sterling Medical Corporation and Humana Military Healthcare. The allegations against this Defendant include permitting Veronica Pollard to move to England further alleging that Dr. Gupta

knew or should have known that the healthcare providers in England would not follow appropriate standards of care.

## ARGUMENT

PLAINTIFFS' EXPERTS HAVE NOT OFFERED TESTIMONY THAT MS. POLLARD'S LIFE EXPECTANCY FELL BELOW 50% BASED ON THE TREATMENT THAT SHE RECEIVED; THEREFORE, THIS CAUSATION TESTIMONY IS IRRELEVANT AND SHOULD NOT BE HEARD BY THE TRIER OF FACT.

Plaintiffs have designated numerous experts in this matter, among them are L.F. Smith, M.D., an oncologist; G. Peter Pushkas, M.D. an oncologist; Michael Auerbach, M.D., an oncologist; James Vincent Fiorica, M.D., a gynecologist, Rebecca Zuurbier, M.D., a radiologist; Gerald H. Sokol, M.D., a radiation oncologist, Arthur McTighe, M.D., a pathologist, and Arnold Schwartz, M.D., a pathologist. Of those experts, Drs. Smith, Pushkas, Auerbach, and Fiorica offered causation testimony against Dr. Gupta. However, none of their testimony represented opinions that are legally cognizable under established principles of tort law.

The pathology report provided to Dr. Gupta after Ms. Pollard's cancer diagnosis indicated that the lump was .5 centimeter in size. Each of Plaintiffs' experts were questioned regarding any change in five year survival rate with the use of chemotherapy for a patient with a tumor the size of Veronica Pollard's. Plaintiffs named causation experts include Gerald H. Sokol, M.D. During the deposition of Dr. Sokol, he testified that patients with tumors similar to Veronica Pollard's enjoy a five year survival rate of 90 percent when the tumor is removed and the area radiated to control local spread. (See the deposition transcript of Gerald H. Sokol, page 48, adopted and incorporated as Exhibit 1). When chemotherapy is added to the radiation regime, local control, pursuant

3

to the testimony of Dr. Sokol, is improved from two to five percent. (See the deposition transcript of Dr. Sokol, page 62, adopted and incorporated as Exhibit 2). This takes the five year cure rate from 90 percent to 92 to 95 percent.

Additionally, Plaintiffs have identified Leroy Fleming Smith, Jr., M.D., as a causation expert in this case. During the deposition of Dr. Smith, he provided certain ten year survival statistics in support of the fact that standards of care required Ms. Pollard to undergo the chemotherapy. Specifically, Dr. Smith stated that a breast cancer patient with tumors of varying sizes, that undergo radiation therapy, alone, enjoy a 58 percent survival rate at ten years. The addition of chemotherapy takes the ten year survival rate to 68.3 percent. (See the deposition transcript of L. F. Smith, M.D., pages 44-46, adopted and incorporated as Exhibit 3).

Plaintiffs' causation expert, G. Peter Pushkas, M.D. espoused slightly different numbers. During his deposition, Dr. Pushkas stated that all patients with a Stage 1 breast tumor, without metastasis, who were treated with radiation alone enjoy an 80 percent survival rate at five years. Dr. Pushkas testified that this number changed to 87 percent with the addition of chemotherapy. When asked specifically about tumors the size of Ms. Pollard's, Dr. Pushkas admitted that a patient with a tumor size similar to Ms. Pollard, would enjoy a 90 percent survival rate at five years with radiation only. This amount would increase to 93 percent with the addition of chemotherapy. (See the deposition transcript of Dr. Pushkas, pages 31-32, adopted and incorporated as Exhibit 4).

On August 27, 2003, the deposition of Plaintiff's last expert, James Vincent Fiorica, M.D. was taken. During that deposition, Dr. Fiorica was asked the incidence of recurrence in patients with tumors the size of Veronica Pollard's during a five year period

4

of time without chemotherapy. Dr. Fiorica answered that the rate of recurrence would be eight to ten percent. This would leave the disease free rate as being 90 to 92 percent. When chemotherapy is added to the regime, the recurrence rate would be five to six percent. This would leave a disease free survival percentage as 94 to 95 percent. (See the deposition transcript of James Vincent Fiorica, M.D., pages 33-41, adopted and incorporated as Exhibit 5).

Of note is that Dr. Fiorica is Plaintiff's only standard of care expert who testified as to the differences between various times that the chemotherapy could have been instituted and the effects of such administration in those hypothetical time periods. *See id.* at 33-37. He indicated that it is ideal if the treatment is instituted within 4 to 6 weeks after surgery. He explained that it is important to institute chemotherapy before the development of microscopic disease, and that it would be unlikely that microscopic disease would develop in less than 6 weeks. *See id.* at 37. He also said that it is more likely than not that in the first two months from the time of surgery there was no microscopic disease. *See id.* at 38. He indicated that there is no date at which you can say chemotherapy is not effective. *See id.* at 40. While Dr. Fiorica's opinions are interesting, he did not provide any basis for such opinions. It is well settled point of law that an expert's opinion must have scientific basis, and cannot be arbitrarily stated in a "because I said so" fashion.

Pursuant to Georgia law, the mere fact that a physician may be negligent is not sufficient to hold that physician liable unless the complaining patient can prove that the injury complained of proximately resulted from the negligence. Patterson v. Fulton-Dekalb Hospital Authority, 233 Ga. App. 706, 505 S.E.2d 232 (1988). When a physician

describes a decedent's prospect of survival with appropriate treatment, such prospect must be more then a mere chance or speculation. The prospect must be "a realistic assessment of the likelihood that the alleged negligence caused the injury or death." Cannon v. Jeffries, 250 Ga. App. 371, 551 S.E.2d 777 (2001); Berrell v. Hamilton, 260 Ga. App. 892, 581 S.E.2d 398 (2003). The proximate cause has been said to be both a mixed question of fact and law except in specific situations. A trial judge may decide that insufficient evidence of proximate cause exists "if reasonable persons could not differ as to the relevant facts and the evaluative application of legal standard." Atlanta Obstetrics and Gynecology Group, P.A. v. Coleman, et al, 260 Ga. 569, 398 S.E.2d 16 (1990). Georgia law defines proximate cause as "the natural and continuous sequence, unbroken by other causes, produces an event, without which the event would not have occurred." Zwiren v. Thompson, 276 Ga. 498, 578 S.E.2d 862 (2003); T. J. Morris & Co v. Dykes, 197 Ga. App. 392, 398 S.E.2d 403 (1990); Locke v. Vonalt, 189 Ga. App. 783, 377 S.E.2d 696 (1989).

In the present instance, the testimony provided by Plaintiffs' experts indicate that the addition of chemotherapy to the treatment regime as required by standard of care would have improved Plaintiffs chances of survival approximately three to ten percent depending upon studies cited by the experts. In any event, all of the experts agree that even without the addition of chemotherapy, Plaintiff's chances of a five year survival were in excess of 90 percent and her chance of ten year survival was well in the excess of 50 percent. Viewing the testimony in the light most favorable to the Plaintiff, none of Plaintiffs' experts testified that failure to utilize chemotherapy in any way decreased Ms. Pollard's chances of survival below the necessary 50 percent range.

6

In light of Plaintiffs' expert testimony, it appears that their claim is in reality a loss of chance argument. In Dowling v. Lopez, 211 Ga. App. 578, 440 S.E.2d 205 (1993), the Georgia court considered a similar issue. In that action, the court held that Georgia law did not permit recovery for loss of chance in situations like the one currently before this Honorable Court.

Thus, having examined the causation testimony offered in this case with respect to Dr. Gupta and the alleged delay in the administration of chemotherapy, it is clear that the testimony establishes very small differences in outcome which are not cognizable under the rubric of the law of torts. Consequently, permitting this testimony to be heard by the trier of fact is inappropriate because this testimony is irrelevant to the issues of causation and is unfairly prejudicial to the defendant.

The Federal Rules of Evidence provide that "Relevant evidence" means evidence which makes the existence of a fact that is of consequence to the proceeding more or less probable. F.R.E.401. In this instance, causation evidence which does not establish that the survival rate of Veronica Pollard fell below 50% as a result of the alleged actions of Dr. Gupta is irrelevant to the issue to be determined by the trier of fact. The Federal Rules of Evidence also provide that irrelevant evidence should be excluded. F.R.E.402.

The various survival rates offered to the jury by plaintiffs various causation experts is irrelevant and is only likely to confuse the jury. Georgia law does not permit a loss of chance recovery; therefore, any testimony regarding survivalship which does not drop below 50% when chemotherapy is not administered is irrelevant and should not be admitted.

7

## CONCLUSION

Wherefore, Defendants respectfully request that the Court grant Defendants' Motion in Limine to preclude Plaintiffs from presenting testimony about causation and delay with respect to the administration of chemotherapy to the jury.

Respectfully submitted,

Joan Cerniglia-Lowensen, #10747
Morgan Shelsby Carlo Downs & Everton
4 North Park Drive, Suite 404
Hunt Valley, Maryland 21030
410-584-2800

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of December, 2004, a copy of the foregoing Motion in Limine and Memorandum in Support of Motion in Limine of Defendants, Raj R. Gupta, M.D. and Sterling Medical Corporation were mailed postage prepaid to:

Lesley S. Zork, Esquire
Bruce J. Klores & Associates
915 Fifteenth Street, N.W.
Third Floor
Washington, D.C. 20005

Peter R. Masciola, Esquire
Law Offices of Peter Masciola
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004

Catherine A. Hanrahan, Esquire
Wilson, Elser, Moskowitz, Edelman
& Dicker LLP
1341 G Street, NW, 5th Floor
Washington, D.C. 20005

Larry Adams, Esquire
Assistant United States Attorney
United State Attorney's Office
6625 U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

Joan Cerniglia-Lowensen, #10747
Morgan Shelsby Carlo Downs & Everton
4 North Park Drive
Suite 404
Hunt Valley, Maryland 21030
410-584-2800