IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VERONICA POLLARD, et al.,   )<br>   )<br>   Plaintiffs   )<br>   )<br>   v.   )  CA No. S-02-CV-764<br>   )  Judge Quarles<br>THE UNITED STATES OF   )<br>AMERICA   )<br>   )<br>   Defendant   )   | |

**PLAINTIFFS' REPLY TO DEFENDANT UNITED STATES OF AMERICA'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE MOTION TO VACATE THIS COURT'S JUNE 30, 2004 ORDER DISMISSING CLAIMS AGAINST THE DEFENDANT UNITED STATES OF AMERICA**

Come Plaintiffs Veronica and Roosevelt Pollard, through counsel, Lesley S. Zork, Bruce J. Klores and Bruce J. Klores & Associates, P.C., and submit the following reply to Defendant The United States of America's ("the government") Opposition to Plaintiffs' Motion for Reconsideration, or in the Alternative Motion to Vacate the dismissal of plaintiffs' claims against the government.

**I.   INTRODUCTION**

The plaintiffs have proffered evidence supporting their allegations against the government's pathologists since the initial filing of their complaint in March, 2002.[1] These allegations are certainly not a "last gasp . . . to keep the original defendant in the case," as the government suggests, but have been a lynchpin in the plaintiffs' case against the government since its commencement.[2] Not only has the government been on notice of these allegations for

---

1 See Affidavit of L.F. Smith, M.D. supplementing the Complaint.
2 Defendant United States' Opposition to Plaintiffs' Motion for Reconsideration at p. 1.

1

over 2 ½ years, but the government *never* moved for dismissal or summary judgment on this issue.

As explained in plaintiffs' Motion for Reconsideration, the scope of the government's Motion for Summary Judgment did not include its liability for the actions of its undisputed healthcare providers; the government received a windfall on this issue based on a misunderstanding over the scope of the motion and the sufficiency of the evidence supporting plaintiffs' allegations on the record.³ Now, six months later the government attempts to salvage this windfall by presenting evidence that its pathologists did not breach the standard of care or proximately causes plaintiffs' injuries. Ironically, in presenting this argument the government proves that there are material issues in dispute, which makes summary judgment on these allegations improper.

## II.   BACKGROUND

Veronica Pollard had lost her mother, sister, and an aunt to cancer; she was very sensitive and diligent about detecting any manifestations of this disease. After noticing the two-day existence of a lump on her right breast, she immediately presented herself to Army Physicians on October 2, 1998. Def.'s Motion to Dismiss, Ex. 1 at 14. She had a breast biopsy on October 14, 1998. Id. Dr. Adams, the pathologist in this case, conducted a microscopic examination of the specimens, and signed a report with his findings on October 19, 1998. See Deposition of Stephen D. Adams, M.D. at p. 83-90, Exhibit 3 of Plaintiffs' Motion to Reconsider. The report

---

3 It is imperative to note that although plaintiffs' Motion for Reconsideration was limited to this Court's dismissal of the claims against the government relating to the negligence of its pathologists, that *does not* mean that plaintiffs now concede Dr. Gupta's status as an independent contractor, as stated by the defendant on page 2 of its opposition brief. A Motion for Reconsideration was not appropriate on that issue because this Court's decision was not based on a mistaken evaluation of the evidence, as was the case for the allegations against Dr. Adams. However, the omission of the allegations against Dr. Gupta in the pending motion is not a concession on that issue.

concluded Mrs. Pollard had an "infiltrating carcinoma with medullary features," and the tumor was 0.5 cm in diameter. Dr. Adams was supposed to immediately send the specimens out for DNA and hormonal studies, but this was not done until December 1, 1998. Id. When Mrs. Pollard saw Dr. Gupta, her treating oncologist, for the first time on approximately December 2nd, he had not yet received the pathology results, which were delayed by the outstanding DNA and hormonal information. See Deposition of Veronica Pollard on June 6, 2002 at p. 30., Exhibit 1.

     Dr. Gupta subsequently reviewed the pathology information and on December 16th wrote a letter for Mrs. Pollard's future physicians wherein he restated Dr. Adams' findings that the tumor was very small – 0.5 cm – and had medullary features, "which are of favorable prognosis." See Def.'s Motion to Dismiss, Exhibit 3 at p. 11. Dr. Gupta told Mrs. Pollard the "cancer was borderline. It was very small, and that he wasn't very sure of how he would go about treating it." Pollard Dep. at 31-32, Exhibit 1. Mrs. Pollard needed medical clearance to go to England; she was permitted to go and it was her understanding that Dr. Gupta would discuss her treatment with Doctors in England. Id. at 32-33. However, she was never told she needed immediate treatment, or for that matter what type of treatment– specifically, whether chemotherapy or radiation was an option, let alone necessary. She was never told about the risks or benefits of any treatment by any of the physicians she saw in the United States. Mrs. Pollard testified at her deposition, that if Dr. Gupta had told her "Veronica, I want you to take chemotherapy and radiation treatment, then I would have taken it. . . In the States." Id. at 38. She further explained why she would have wanted treatment in the United States: "I knew what's going on in the States, I knew how they would treat me in the States. I was going to a place where I had no knowledge of how their system worked or their doctors." Id.

### III. SUMMARY JUDGMENT IS IMPROPER BECAUSE THERE ARE GENUINE ISSUES AND MATERIAL FACTS IN DISPUTE AS TO DR. ADAMS' NEGLIGENCE AND WHETHER IT PROXIMATELY CAUSED THE PLAINTIFFS' INJURIES.

Summary Judgment is improper when a nonmovant party sets forth specific facts demonstrating there is a genuine issue for trial. Fed. R. Civ. P. 56. A genuine issue exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249 (1986). In this case, a reasonable finder of fact could accept the plaintiffs' experts' conclusions that Dr. Adams breached the standard of care and his delayed and misleading pathology report proximately caused Dr. Gupta to not realize the urgency of Mrs. Pollard's condition, which in turn contributed to her not receiving immediate treatment. The issues disputed by the parties and their experts could affect the verdict, and therefore, this issue is not appropriate for summary disposition.

#### A. Plaintiffs' Proffered Evidence.

Plaintiffs have produced two highly-qualified experts, Drs. L.F. Smith and Arthur McTighe, who have both concluded that Dr. Adams' negligence proximately caused plaintiffs' injury. These experts both opine that the pathologic information provided to Dr. Gupta was not accurate or reliable. For instance, Dr. McTighe explained that Dr. Adams measured the tumor in the gross, but not on a microscopic slide. See. McTighe dep. at p. 35, Exhibit 5 to plaintiffs' Motion for Reconsideration. This is a significant difference: the tumor in the gross was 0.5 cm, but Dr. McTighe found that the tumor was actually *double* this size in the microscopic slide. Also, the report included Dr. Adams' diagnosis that there was a carcinoma with medullary features, and Dr. McTighe believes that such a description is misleading because it is a favorable prognosis. Id. In sum, Dr. McTighe concluded "that the pathology report wasn't rendered in a way that made it readily understandable and to convey the urgency that it needed to convey." Id.

4

at 47. Dr. Gupta adopted Dr. Adams' pathology findings. This is evidenced by his December 16th letter where he described the tumor as very small at 0.5 cm with medullary features. It is reasonable to conclude that Dr. Adams' misrepresentations on the size and description of the tumor adversely affected Dr. Gupta's decision-making process and treatment of this case.

It is also reasonable to conclude that Dr. Adams' delay in sending the specimens for DNA and hormonal testing pushed back Mrs. Pollard's treatment schedule and Dr. Gupta's decision-making process, and proximately caused the detrimental six-week lapse in treatment Mrs. Pollard suffered. It is undisputed that timeliness of treatment is an essential component in the successful treatment of breast cancer. It is also undisputed that adjuvant chemotherapy, if it is to be administered, should begin when the breast has healed sufficiently from the surgery. According to all of the experts who have testified in this case, as well as Dr. Gupta, chemotherapy may begin as soon as two weeks following the definitive surgery, or may be delayed for as long as six weeks if there is an infection or other post-operative complication. There is no indication in the medical records that Mrs. Pollard suffered any post-operative infection or complications following the lumpectomy on November 14, 1998, and therefore, chemotherapy should have been started at around December 1, when she first saw Dr. Gupta, but no later than December 31, 1998.

Dr. Adams' failure to complete the pathology studies in a timely manner resulted in the delay of Mrs. Pollard's oncology consult with Dr. Gupta. When Dr. Gupta first met with Mrs. Pollard in early December, he did not have the pathology reports and therefore could not discuss any treatment options with her. See Pollard Dep. at 29, Exhibit 1. The earlier she was treated with chemotherapy, the better her chances were for survival; once again, no expert could dispute this. Two weeks after Mrs. Pollard's first meeting with Dr. Gupta, he had received the pathology

5

reports and wrote the December 16th letter recommending chemotherapy. However, at that time Dr. Gupta was already clearing Mrs. Pollard for her move to England. He made an immediate decision upon the receipt of the delayed pathology reports, and he did so without consulting anyone, including Mrs. Pollard of her options. Mrs. Pollard left the country without learning that Dr. Gupta recommended chemotherapy. Indeed, it wasn't until March of 2000 that she saw the December 16, 1998 letter and first learned of Dr. Gupta's recommendations. Id. at 41. It is reasonable to infer that Dr. Gupta was rushed by the delay in receiving the results from pathology. It is also reasonable to infer that if the pathology results were ready in late October, as they should have been, and Dr. Gupta was able to review them before he first met with his patient, he would have had time to discuss the various treatment options and his recommendation with Mrs. Pollard.

### B. Defendant's Proffered Evidence.

The government contends that "[t]he pathology report show[ed] a carcinoma; that is about all that was needed for Dr. Gupta to prescribe treatment. The fact that Plaintiffs' experts seek to make an issue of the description of the carcinoma does not make it an element of causation in this case." See Defendant's Opposition Brief at p. 3. Without reference to factual or expert testimony, the government simply asserts that the deficiencies in Dr. Adams' report and his untimeliness in obtaining a full report did not affect Dr. Gupta's treatment or lack thereof.

This is an issue genuinely in dispute that precludes summary judgment. In fact, Dr. Gupta, Dr. Dodwell, and the experts in this case uniformly agreed that an accurate description and measurement of the carcinoma was essential for determining the appropriate treatment, and that

there are major implications for prognosis and the recommendation for adjuvant treatment of a breast tumor that is .5 cm in size versus 1.1 cm in size.

Another disputed issue highlighted in the government's Opposition is the assertion that Dr. Gupta recommended chemotherapy to Mrs. Pollard, and that "it was up to Mrs. Pollard to decide whether she wanted chemotherapy," thereby suggesting that Mrs. Pollard was aware of Dr. Gupta's recommendation and nevertheless chose to move to England and forego medical treatment for six weeks, breaking any chain of causation to Dr. Adams' pathology report. Id. at 12. The government buttressed this argument by stating "[Mrs. Pollard] chose to move to the United Kingdom with her husband . . .[when she] could have chosen to stay in the United States and continued to receive care through the dependent health care programs provided by the military." Id. at 13.

Plaintiff contends that it borders on ridiculous to suggest that Mrs. Pollard, who had lost her mother and sister to breast cancer, and who had diligently sought medical attention two days after finding a lump in her breast, was told that she needed chemotherapy and chose to ignore this recommendation. In her deposition, Mrs. Pollard testified unequivocally that if she had known that chemotherapy was necessary, she would have stayed in the United States to receive the treatment. See Pollard Dep. at 38, Exhibit 1. Whether Mrs. Pollard knew she needed chemotherapy before she left the United States and chose to ignore this recommendation is factually disputed and very much an issue that the jury should decide. Whether the delayed pathology reports affected Mrs. Pollard's treatment schedule is also an issue for the jury to decide. Accordingly, summary judgment is not appropriate for any of the claims relating to the conduct of the government's undisputed employees.

## IV.   CONCLUSION

WHEREFORE, for these reasons, and the reasons set forth in the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Reconsideration, or in the Alternative Motion to Vacate, plaintiffs respectfully request that their Motion be granted and the claims against the government relating to the negligence of its undisputed healthcare providers be reinstated.

>Respectfully submitted,
>
>BRUCE J. KLORES & ASSOCIATES, P.C.
>
>By: _____/s/_____
>    Lesley S. Zork
>    Bruce J. Klores
>    915 15th Street, NW
>    Washington, D.C. 20005
>    (202) 628-8100
>    Co-counsel for Plaintiffs
>
>    and
>
>LAW OFFICES OF PETER MASCIOLA
>
>_____/s/_____
>Peter R. Masciola
>601 Pennsylvania Avenue, N. W. #900
>Washington, D.C. 20004
>202-628-5680
>Co-counsel for Plaintiffs