IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VERONICA POLLARD, et al., )<br> )<br>   Plaintiffs )<br> )<br>        v. )<br> )<br>THE UNITED STATES OF )<br>AMERICA, et al. )<br> )<br>   Defendants ) | CA No. S-02-CV-764<br>Judge Quarles |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT HUMANA'S MOTION IN LIMINE TO EXCLUDE TESTMONY OF PLAINTIFF'S EXPERTS ON MEDICAL CAUSATION AND DEATH**

During discovery plaintiff produced four highly qualified, board certified experts, with extensive training and experience in the treatment of breast cancer, whose expertise in the field is unchallenged. All four experts opined to a reasonable degree of medical certainty that Mrs. Pollard would more likely than not would have survived her breast cancer had she been given adjuvant chemotherapy and timely radiation treatment. Defendant Humana argues that the experts' testimony on this issue does not satisfy the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579 (1993), because it is contrary to published medical literature. Defendant's argument fails for several reasons.

First, it is imperative to note that this Court already concluded that plaintiff's experts are reliable when it found their testimony was sufficient on proximate cause, and denied the defendants' motions for summary judgment. This motion in limine is merely another attempt to rehash an issue that has already been resolved by this Court.

1

Second, the experts in this case did not rely solely on prospective statistical data in reaching the conclusion that Mrs. Pollard would likely have survived if she had received timely and appropriate treatment for her breast cancer. The experts' opinions were based on their considerable experience over several decades in treating breast cancer, their evaluation and understanding of Mrs. Pollard's clinical condition at the time her cancer was first diagnosed, their knowledge and understanding of the characteristics of the tumor cells and how cancer spreads, their knowledge and understanding of the effects of adjuvant treatment in preventing the recurrence and systemic spread of cancer, and the fact that Mrs. Pollard's cancer was responsive to chemotherapy when it reoccurred. These are recognized individual variables affecting prognosis, which were not factored in to the meta-analyses of statistical data regarding breast cancer staging and survival for obvious practical reasons. The methodology that plaintiff's experts used in arriving at their opinions is a tried and true, reliable method that most physicians use in evaluating the prognosis of individual patients. It is the same methodology underlying the opinions expressed by defendants' experts, who reached a different conclusion. A difference in the conclusions reached, however, does not render plaintiff's experts' testimony too speculative to comply with Daubert and FRE 702.

**I.    THE DOCTRINE OF COLLATERAL ESTOPPEL PRECLUDES DEFENDANT HUMANA FROM RELITIGATING THIS ISSUE.**

On June 30, 2004, this Court issued an Opinion and Order denying the defendants' motions for summary judgment. The main argument briefed by both parties was the reliability and sufficiency of plaintiff's expert testimony on causation. In ruling on these issues the Court concluded: "Dr. Gupta ignores the overwhelming expert testimony that Mrs. Pollard's cancer

would have been unlikely to recur had she received chemotherapy and/or radiation in a timely manner. The experts' testimony, *based on their extensive professional experience*, is sufficient to show that Dr. Gupta's actions could have been the proximate cause of Mrs. Pollard's cancer recurrence." (Emphasis added). See June 30, 2004 Memorandum Opinion and Order at pp. 9-10. Courts have routinely recognized the importance of professional experience as a factor for reliability of expert opinions. See Daubert, 509 U.S. 579 (1993). In reaching this conclusion, the Court performed its gate-keeping function of ensuring that the experts' opinions were reliable and not based merely subjective belief or unsupported speculation. This is all that Daubert and FRE 702 require.

     Although the words "Daubert" and "FRE 702" were not explicitly used in the defendants' summary judgment argument or in the Court's ruling, the determination that plaintiff's proffered evidence was sufficient to establish proximate cause required a threshold finding that experts' opinions were reliable and based on scientifically recognized and valid criteria. Defendant Humana's attempt to reargue the same issue – the sufficiency and reliability of plaintiffs' expert testimony under the guise of an evidentiary motion – does not change the substance of the argument or the fact that it has been fully briefed by both sides and ruled on by this Court. The defendant has proffered no new evidence or testimony, and no compelling reason for revisiting the issue as a motion in limine. The doctrine of collateral estoppel precludes the readjudication of an issue that has already been litigated and decided between the same parties, and should serve as a bar to defendants' re-introduction of the issue under a different title. See Edmondson v. Gilmore, 251 Ga. App. 776, 778 (2001), rev'd on other grounds.

II. **PLAINTIFF'S EXPERTS' CAUSATION OPINIONS SATISFY THE RELIABILITY REQUIREMENTS OF FEDERAL RULES OF EVIDENCE 702, AND SHOULD BE ALLOWED.**

Pursuant to FRE 702, the trial judge acts as a gatekeeper to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." Court's do so by conducting a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." See Daubert, 509 U.S. 579, 592-93.  Plaintiff contends that the Court already performed its gatekeeping role when it denied the defendants' summary judgment. Notwithstanding the fact that the issue has already been decided, on revisiting the issue, it is abundantly clear that the causation opinions expressed by plaintiff's experts are founded upon reliable and relevant clinical data and methodology, and that their testimony in this subject area should be permitted.

    A.  **The Requirements of Daubert and the Federal Rules of Evidence .**

In medical negligence cases such as this, where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," FRE 702 requires the trial court to make a reliability determination of the basis for an expert's opinions before the jury will be allowed to consider the expert's testimony.  FRE 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of this case.

4

"The inquiry envisioned by Rule 702 is . . . a flexible one. Its overarching subject is the scientific validity – and thus the evidentiary relevance and reliability – of the principles that underlie a proposed submission. The focus, of course, must be solely on the principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 593. " 'General acceptance' is not a necessary precondition to the admissibility of scientific evidence, . . . Rule 702 assigns the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id. at 597.

The analysis that applies for determining the reliability of expert testimony varies with the nature of the issue, an expert's area of expertise and the subject of the expert testimony. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 200-01 (4th Cir. 2001). The trial court's role as gatekeeper "is not intended to serve as a replacement for the adversary system." United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi, 80 F.3d 1074, 1078 (5th Cir. 1996).

    B. Plaintiff's Expert Testimony is Based Upon Sufficient Facts and Data, and is the Product of Reliable Scientific Principles and Methods Applied to the Facts of This Case.

The challenged testimony of plaintiff's experts satisfies the three-prong test set forth in FRE 702. First, in reaching their conclusions regarding Mrs. Pollard's chances of survival with proper treatment, plaintiff's experts considered all of the relevant clinical facts and data known to impact prognosis and survival in patients with breast cancer. This included Mrs. Pollard's family history of breast cancer, age, tumor size and characteristics, lymph node status, and the absence of any sign metastasis at the time of diagnosis. Plaintiff's experts also considered the

recorded facts and data about the size, location and spread of the cancer when it was rediscovered after it had metastasized a year and a half later.  They considered the documented responsiveness of the cancer to chemotherapy and treatment.  The defendant does not dispute that all of these factors are appropriate and relevant factors that are used in the field of oncology for determining the prognosis of patients diagnosed with breast cancer.  Plaintiff's experts applied their knowledge and understanding about this clinically relevant data to their knowledge and understanding of the action and effect of adjuvant treatments.[1]

The defendant argues that the statistics contained in studies which they cite, show that Mrs. Pollard's chances of survival were greater than 50%, regardless of whether she received adjuvant treatment, and therefore, plaintiff's causation testimony fails as a matter of law.  Defendant's argument glaringly omits the fact that Mrs. Pollard did not survive.  Unfortunately, in hindsight we know that Mrs. Pollard did not fall within the majority of women with a 1 centimeter tumor and negative lymph nodes who will survive with only a lumpectomy as treatment: her cancer did reoccur and it took her life.  In hindsight, we know that Mrs. Pollard was in the percentage of patients who needed radiation and chemotherapy in order to survive.  The studies that defendant cites are relevant in the prospective determination of patient prognosis at the time of diagnosis, when no one can predict for certain who will and will not stand to benefit from adjuvant treatment.  Plaintiff's experts recognized the studies as a relevant statistical source for prospectively determining the prognosis of breast cancer patients.  In fact, plaintiff's experts extrapolated from the prognostic criteria and statistical data contained in these

---

[1] Dr. Sokol testified that Mrs. Pollard suffered a "local regional recurrence of her cancer," (Exhibit 1, p. 55), and that radiation of the breast would more likely than not have prevented the recurrence. Id., p. 56. Dr. Sokol testified that Mrs. Pollard's likelihood of recurrence quadrupled – from 10% to 40% -- as a result of the delay in radiation treatment. Id., p. 66. Dr. Sokol testified that with timely radiation therapy Mrs. Pollard would have had a 90% that her cancer would be cured. Id., pp. 37-38. Dr. Sokol testified that Mrs. Pollard would have fallen into the 90% of women whose cancer more likely than not would have been cured based on the fact that "she had a small tumor and she had no lymph nodes. Both of those are good prognosticators for local control of disease given appropriate therapy." Id., pp. 50-51.

studies in reaching their conclusions regarding how Mrs. Pollard's outcome would have differed if she had received proper treatment for her breast cancer.

The second requirement in FRE 702, that the testimony be the product of reliable principles and method, is also satisfied. Plaintiff's experts looked at all of the available clinical and prognostic information regarding Mrs. Pollard, and applied their considerable professional knowledge and experience in formulating opinions regarding her chances for survival. This is a reliable method, routinely used by medical professionals in reaching decisions regarding the prognosis and treatment of patients. This type of patient-focused basis for expert opinions has sustained Daubert challenges, and has been widely accepted as a reliable underpinning for expert opinions. See e.g. Westberry v. Gummi AB, 178 F.3d 257, 262 (4th Cir. 1999) (Court found that differential diagnosis is "a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated," involving consideration of the circumstances surrounding the onset of a patient's illness, the patient's family and medical history, and any information about the patient's present illness); and Heller v. Shaw Industries, 167 F.3d 146 155-56 (3d Cir. 1999) (Court held that a physician's experience with numerous patients, discussions with peers, attendance of medical seminars and conferences, and consideration of a patient's family, personal, and medical histories were among the "tools of the trade" physicians used to make a differential diagnosis). See also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (trial court's objective as "gate-keeper" is to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). This Court already noted that the testimony of plaintiff's experts on the issue of causation was, "based on their extensive professional experience." See June 30, 2004 Memorandum Opinion and Order at pp. 9-10.

The third consideration under FRE 702 is whether the experts applied the principles and methods reliably to the facts of this case. All of the experts agreed that Mrs. Pollard would have

benefited from chemotherapy and radiation treatment. The experts differed only in the degree to which Mrs. Pollard's chances of survival would have improved if had been given timely and appropriate chemotherapy and radiation treatment. On that issue, the differences between the experts are not that significant. Defense experts testified that Mrs. Pollard would have had a *33% chance of survival* based on statistical data alone. However, defense experts failed to consider the inherent limitations of the statistical data contained in the studies, or the individual factors in Mrs. Pollard's case which affected her prognosis, factors which plaintiff's experts appropriately considered in arriving at their opinion that Mrs. Pollard, *more likely than not, would have survived.*

In arriving at their opinions, plaintiff's experts considered universally recognized prognostic factors and applied the knowledge derived from their education, training and vast experience treating women with breast cancer. Accordingly, the requirements of FRE 702 are satisfied, and plaintiff's experts should be permitted to present their opinion that timely chemotherapy and radiation treatment, more likely than not, would have prevented the recurrence and metastasis of Mrs. Pollard's cancer, and would have saved her life.

WHEREFORE, for these reasons, and any others that may appear to the Court, plaintiffs' respectfully request that defendant Humana's Motion in Limine to Exclude Testimony of Plaintiffs' Experts on Medical Causation and Death be denied.

        Respectfully submitted,

        BRUCE J. KLORES & ASSOCIATES, P.C.

        By:_____/s/_____
          Lesley S. Zork- #013454
          Bruce J. Klores- #03320
          915 15th Street, NW
          Washington, D.C. 20005

      (202) 628-8100
      Co-counsel for Plaintiffs

    and

LAW OFFICES OF PETER MASCIOLA


    _____/s/_____
 Peter R. Masciola
 601 Pennsylvania Avenue, N. W. #900
 Washington, D.C. 20004
 202-628-5680
 Co-counsel for Plaintiffs