IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VERONICA POLLARD, et al., | ) |
| | ) |
|     Plaintiffs | ) |
| | ) |
|     v. | ) CA No. S-02-CV-764 |
| | ) Judge Quarles |
| HUMANA MILITARY SERVICES, INC. | ) |
|   et al., | ) |
| | ) |
|     Defendant | ) |

**POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

The defendants Gupta and Sterling Medical Corp. have moved this Court to exclude a concedingly relevant fourteen minute videotape from plaintiffs' evidence, arguing:

(a) That the evidence is unfairly prejudicial; and

(b) That the evidence is cumulative of other trial evidence.[1]

The videotape should be admitted because:

(i) It is reliable;

(ii) There is nothing about it, either in its audio or in video, which is staged;

(iii) Master Sgt. Pollard and/or his son, Lynn, can be cross-examined concerning the content of the tape;

---

[1] The seventeen minute tape referenced in defendant's Motion has been edited. All music has been removed. Likewise, any reference, even indirect to the survivors' grief has been removed. The fourteen minute tape will be delivered under separate cover to the Court and defense counsel on Wednesday, January 19, 2005. Co-defendant Humana also moved for the exclusion of the tape on the grounds that it contained evidence of damages not properly recoverable under Georgia law. That objection has been addressed in plaintiffs' Opposition to the defendant Humana's Motion in Limine Regarding Georgia law.

1

(iv) There is no dispute in this case that Veronica Pollard suffered, that her family was an exceptional one, and that her husband and children would be entitled to damages assuming that liability is found;

(v) The tape is not "unfairly prejudicial" to the defendants because it is an accurate depiction of the suffering of Veronica Pollard and her family, and simply a demonstrative aid to allow the jury to assess damages;

(vi) The fact that the videotape is a powerful piece of evidence relates only to the fact that the losses in this case are substantial;

(vii) To the extent that the tape might be considered by the jury for the wrong reasons, the Court can solve this by issuing appropriate limiting instructions; and

(viii) The tape has been meticulously edited to remove all of the music and any reference that may even remotely be considered as going to issues of family members' sorrow, which is not recoverable under Georgia law.

II. **ARGUMENT**

A. BACKGROUND – THE FAMILY AND THE CIRCUMSTANCES.

Veronica Pollard was forty-eight years old when she died of metastatic breast cancer. She was a twenty plus year United States Army veteran working in electronics when she was diagnosed. She lived at that time in Augusta, Georgia, because her husband, Master Sergeant Roosevelt Pollard, was stationed at Ft. Gordon. Master Sgt. Pollard has more than twenty years of military service as well.

Mrs. Pollard felt a lump in her breast in October, 1998, while showering. Because her sister had died at a young age of breast cancer, and because her mother had breast cancer (but

was fortunate enough to survive), Mrs. Pollard immediately sought medical attention. She saw Dr. David Sees, an Army surgeon at Ft. Gordon who performed a biopsy and in days determined that Mrs. Pollard had cancer. Dr. Sees has testified that Mrs. Pollard's treatment plan was a lumpectomy to remove the cancer from the breast, followed by radiation to the breast. Dr. Sees also felt chemotherapy was warranted because Mrs. Pollard was pre-menopausal, but he deferred that decision to Dr. Gupta, the civilian oncologist at Ft. Gordon, and the defendant in this case, for final decision.

Dr. Gupta found out about Mrs. Pollard's cancer in late October, 1998 at a regular meeting of the cancer doctors at Ft. Gordon where new cancer cases on the base were discussed. On November 12, 1998, after Dr. Sees performed the lumpectomy he in fact referred Mrs. Pollard to Dr. Gupta. Dr. Gupta saw Mrs. Pollard for the first time on December 1, six weeks after she had been told she had cancer. Knowing that Mrs. Pollard was pre-menopausal, with an aggressive cancer, he concluded in his own mind that Mrs. Pollard should have systemic chemotherapy before the radiation. Gupta testified that the chemotherapy should have started in mid-December in order for it to be effective. Rather than explaining this to Mrs. Pollard and making sure that the therapy on his civilian patient commenced, he instead cleared her to move to England with her husband and children, sending a "To Whom It May Concern" introduction letter to an unidentified physician in Great Britain with his recommendations.

In England, because of a waiting list, Mrs. Pollard did not receive radiation therapy until five months after she had left the United States, and *seven months* after the cancer had been removed. She *never* received chemotherapy in England. According to plaintiffs' oncology experts, the failure to administer chemotherapy was the proximate cause of the cancer recurring

3

with a vengeance two years later. Five years after her visit with Dr. Gupta and after countless bouts of chemotherapy, surgery, mastectomies, removal of portions of her lungs, and bone marrow transplants, Mrs. Veronica Pollard succumbed to her disease. She left behind her husband, Roosevelt Pollard, and four children, Shantryce, James, Lynn and Benjamin. The two youngest children, Lynn and Benjamin, lived with Sgt. and Mrs. Pollard throughout this whole ordeal in their small townhouse in Odenton, Maryland.

 B. GEORGIA LAW

Georgia Wrongful Death law allows for the following recovery in this case.

1. The decedent's pain and suffering between the time of the medical malpractice and the time of death;

2. *The full value of the life of the decedent* measured (a) economically, ie., lost wages and loss of services; and (b) by the "intangibles" such as the loss of society, comfort, and guidance of losing a mother and wife. These damages "may be determined from the facts of the relationship and all of the facts and circumstances of the family and their living conditions." City of Macon v. Smith, et al., 160 S.E.2d 363 (Ga. Ct. Of Appeals), 1968.

Extrinsic evidence, including the testimony of witnesses, introduction of documents, and in this case a videotape showing Veronica Pollard's pain and suffering and the family's losses are clearly relevant. The tape shows Veronica Pollard as she was before she died, courageous, debilitated, and mentally anguishing on the future of her family without her. It captures her relationship with her husband and her son. It shows how she kept house, how she cared for her husband and how he cared for her, and it shows the type of boys she raised. It shows the essence

of the "full" Veronica Pollard in a way that cannot as effectively be described in any other format in this case, and it does so in a straightforward, reliable and unobjectionable way.

### C. THE VIDEOTAPE IS RELEVANT AND RELIABLE EVIDENCE

Preliminarily it should be noted that the defendants agree that the tape is relevant. That is to say, it tends to prove the claims that are at issue in this case, namely the plaintiffs' damages.

Moreover, the defendants cannot argue that the tape is not an authentic rendition of a series of events in Mrs. Pollard's life. Defense counsel met Roosevelt and Veronica Pollard. They were all at the Pollard home in fact. Roosevelt Pollard and his older son, Lynn can authenticate any portion of the videotape if necessary to establish a factual foundation as to reliability. There was no script, no rehearsal, no exaggeration. If anything, as the Court can tell, the damages are understated.

### D. FEDERAL RULE OF EVIDENCE 403 CALLS FOR ADMISSION OF THIS EVIDENCE

In arguing against admissibility the defendants use an incorrect legal standard. FRE 403 does not exclude prejudicial evidence. The Rule excludes relevant evidence "<u>only</u> if its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The unfair prejudice enunciated by the defendants is that the video is "very emotional," that it will "tug on the proverbially heartstrings of the jurors," and that based on the emotional nature of the video "a juror would likely give great weight to this evidence."[2]

---

[2] Defendant objected to the music which played through portions of the video. The music has been edited out. The circumstances presented are nothing more than the regular daily activities in the lives of Veronica Pollard and her family which the jury could not see absent the video.

In evaluating a FRE 403 objection "the Court should give the evidence its *maximum reasonable probative force* and its *minimum reasonable prejudicial value*." Deters v. Equifax, 202 F.3d 1262 (10th Cir.) 2000. In other words, just because the videotape is detrimental to the defendant is not a basis to exclude it. In holding that a similar videotape was admissible, the Tenth Circuit bluntly noted that "Rule 403 does not protect a party from all prejudice, only unfair prejudice." (*Videotape of a co-worker describing leering at a female co-worker admitted in a Title VII action*. Securities & Exchange Commission v. Peters, 979 F.2d 1162, 1171 (10th Cir. 1992).)

In a hotly contested liability case like this, where a wonderful person has died, leaving a broken family, all evidence of damages that the plaintiffs introduce will by definition be "prejudicial" to the defendants. But an accurate depiction of damages in not unfairly prejudicial to the defendant.

That powerful evidence is not in and of itself inadmissible was perhaps best stated by the Supreme Court of Kansas almost 100 years ago in State v. Moore, 102 P. 475 (1909). In that murder case the defense argued against admission of a dead woman's bloody jacket because it could potentially horrify the jury. The Court let the jacket in and noted it

> Cannot arrange for lively music to keep the jury cheerful while the State's case in a murder trial is being presented and gruesome evidence cannot be suppressed merely because it may strongly tend to agitate the jury's feeling. (Moore at 477.)

Almost eighty years later the Supreme Court of Mississippi followed the same reasoning when it upheld a trial court's decision allowing a "Day In The Life" video which showed the plaintiff's injuries. "[E]vidence, such as videotapes, may not be excluded solely because they may contain emotional overtones." Trapp v. Cayson, 471 So. 2d 375 (1985). Like most wrongful death

cases, there are emotional overtones in this case. These concerns are typically dealt with by an instruction that they should not decide the case based on sympathy. Since the video is understated, if anything, and produced in a non-inflammatory manner, the jury should be allowed to see it. This demonstrative evidence aids the jury in its evaluation of the injuries and damages in this case. When it allowed the evidence, the Trapp court reasoned that "it cannot be said that they were introduced in evidence for the sole purpose of inflaming the minds of the jury. They served the proper purpose of bringing vividly to the jurors the details of a tremendous injury." (Trapp at 382.) Absent the videotape the jury would have no way of actually understanding Mrs. Pollard's condition. The jury would have limited and insufficient evidence upon which to decide the full value of Veronica Pollard's life as allowed by Georgia law. Capturing the essence of the relationships between the mother and her husband and children, which is an essential element of Georgia law, can best be accomplished by observing that relationship and the interaction amongst the family members.

D. NONE OF THE FACTORS ENUNCIATED BY DEFENDANT FOR EXCLUSION ARE APPLICABLE HERE

The defendants' cite to Bolstridge v. Central Main Power Co., 621 F.Supp. 1202 (D. Me. 1985) to exclude the tape. In Bolstridge the tape was excluded because (1) it was a manufactured and uncommon depiction of the life of the plaintiff; (2) the participants knew there was a videotape running and acted differently; and (3) the jury was expected to give too much attention to the tape over the other evidence.

None of these concerns is present in this case because:

1. The events are reliable and accounted for;

2. There is no script, play acting or exaggeration;

7

3. There is no unfair danger of the tape being overly relied upon.[3]

In Bannister v. Town of Noble, Oklahoma, 812 F.2d 1265 (1987), the United States Court of Appeals for the Tenth Circuit affirmed the trial court's decision admitting a videotape. Referring to Bolstridge, the Court wanted to be satisfied that:

1. The tape did not depict the victim in unlikely circumstances or performing improbable tasks;

2. The tape did not contain particularly egregious self-serving conduct such as exaggerated difficulty in performing ordinary tasks would present a similar danger of prejudice; and

3. The contents of the tape could be tested in Court.

Here the tape shows Mrs. Pollard sleeping, walking down the stairs, watching television and discussing her future, and there is nothing either improbable or exaggerated. Moreover, Sgt. Pollard can be cross-examined if necessary if any reliability objection remains.

E. THE TAPE IS NOT CUMULATIVE

In a case where the damages law allows for plaintiffs to recover the full value of the life of a forty-eight year old mother of four and wife, who suffered with cancer for more than four years before dying, a fourteen minute tape is not cumulative.

It is generally held that photographic evidence can only be held cumulative of other photographic evidence of the same kind. Grimes v. Employers Mutual, 73 F.R.D. 607 (D. Alaska) 1977. The only photographic evidence in this case are a few pictures of the family, and

---

[3] The defense argues that plaintiffs' videotaped evidence will be given too much weight because it comes with built in credibility. Defense counsel intends to use a power point computer presentation in opening, so this objection is unfounded.

the proffered tape.   There is no danger of unfair prejudice.

III.   **CONCLUSION**

Any analysis as to admissibility of the videotape must be conducted within the context of what Georgia law allows the plaintiffs to recover.  Given that the law is expansive insofar as Wrongful Death damages, allowing for Veronica Pollard's Estate to collect for her own pain and suffering, her lost wages, and her economic loss of services, as well as "the full value of her life" evidence concerning the family, the quality of the family, and the relationships between the family members are of paramount importance.  There is no other videotape which has been offered in this case by the plaintiffs, and Veronica Pollard is unfortunately deceased.

The tape should be admitted for the following reasons:

1.   It is reliable;

2.   There is nothing about it, either in discussion or in video, which is staged;

3.   There will be live witnesses, including family members, Master Sgt. Pollard, a twenty year plus Army veteran, his son, Lynn, a college student who can authenticate and be cross-examined concerning the content of the tape;

4.   There is no real dispute in this case that Veronica Pollard suffered, that her family was an exceptional one, and that her husband and children would be entitled to damages assuming that liability is found;

5.   The tape is not "unfairly prejudicial" to the defendants because it is an accurate depiction of the suffering of Veronica Pollard and her family.  It is simply a demonstrative aid to allow the jury to assess damages.  The fact that it is a powerful piece of evidence relates only to the fact that the losses are substantial in

this case;

6. To the extent that the tape might be considered by the jury for the wrong reasons (i.e., sympathy), the Court can issue an appropriate limiting instruction; and

7. The tape has been meticulously edited to remove the music and to remove any content going to issues of family members' sorrow.

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By:_____/s/_____
   Bruce J. Klores
   915 15th Street, NW
   Washington, D.C. 20005
   (202) 628-8100
Co-counsel for Plaintiffs

and

LAW OFFICES OF PETER MASCIOLA

_____/s/_____
Peter R. Masciola
601 Pennsylvania Avenue, N. W. #900
Washington, D.C. 20004
202-628-5680
Co-counsel for Plaintiffs

1606\pa.videotape