IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VERONICA POLLARD, et al., ) <br> ) <br>     Plaintiffs                   ) <br> ) <br>         v.                       ) <br> ) <br> THE UNITED STATES OF     ) <br> AMERICA, et al.                ) <br> ) <br>     Defendants                ) | CA No. S-02-CV-764 <br> Judge Quarles |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT GUPTA'S MOTION IN LIMINE TO PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERTS ON PROXIMATE CAUSATION**

During discovery plaintiffs produced four experts, all of whom are all highly qualified and experienced in treating breast cancer, who all opined to a reasonable degree of medical probability that Mrs. Pollard, more likely than not, would have survived breast cancer if she had received chemotherapy and radiation treatment in an appropriate and timely manner. Plaintiff's experts reached this conclusion based on the prognostic factors that were present at the time Mrs. Pollard's cancer was diagnosed, including her age, family history of breast cancer, size and characteristics of the tumor, absence of evidence of metastasis, the cancer's demonstrated response to chemotherapy when it recurred, their knowledge and understanding of the effectiveness of adjuvant treatment based on documented studies and their considerable experience in treating thousands of women with breast cancer over several decades.

Defendant Gupta argues that the testimony of plaintiffs' experts did not establish that the failure to administer timely chemotherapy decreased Mrs. Pollard's chances of survival below

1

the 50% range. Defendant argues that plaintiffs' expert testimony established only a "loss of a chance" claim, which he contends is unrecognized under Georgia law. See Gupta's Memorandum in Support of their Motion in Limine at p. 6. In support of these arguments the defendant refers selectively to portions of deposition testimony of plaintiffs' experts, while misconstruing or ignoring the experts' clearly stated opinions on causation. When viewed in their entirety the depositions of plaintiffs' experts clearly establish with reasonable medical probability that Mrs. Pollard would have survived had adjuvant chemotherapy and radiation therapy been initiated in December, 1998, as the standard of care required.[1]

Moreover, defendants' expert, Dr. James J. Stark, testified that Mrs. Pollard would have had a *33 percent chance* of survival if she had received chemotherapy three to six weeks after the lumpectomy, whereas without the treatment her chances were zero. Contrary to defendant's contention, Georgia law does recognize claims for loss of a chance of survival, and expert testimony that the chance of survival was less than 50 percent does not defeat proximate cause. See Richmond County Hospital Authority v. Dickerson, et al., 182 Ga. App. 601, 356 S.E.2d 548 (1987) Hence, the defense expert testimony alone establishes the element of proximate causation in accordance with Georgia law. See Plaintiffs' Opposition to Defendant Gupta's Motion for Summary Judgment, Exhibit 14.

I. **THE DOCTRINE OF COLLATERAL ESTOPPEL, PRECLUDES DEFENDANT GUPTA FROM RELITIGATING THIS ISSUE.**

On June 30, 2004, this Court issued an Opinion and Order denying the defendants motions for summary judgment. One of the main arguments that was raised and briefed by the

---

[1] See Plaintiffs' delineation of the expert testimony on this issue in its Opposition to Defendant Gupta's Motion for Summary Judgment.

2

parties was the sufficiency of plaintiffs' expert testimony on proximate causation. At that time Defendant Gupta raised all of the same arguments, including the loss of chance argument that it raises again in this motion. In its previous ruling on this issue the Court concluded: "Dr. Gupta ignores the overwhelming expert testimony that Mrs. Pollard's cancer would have been unlikely to recur had she received chemotherapy and/or radiation in a timely manner. The experts' testimony, based on their extensive professional experience, is sufficient to show that Dr. Gupta's actions could have been the proximate cause of Mrs. Pollard's cancer recurrence." See June 30, 2004 Memorandum Opinion and Order at pp. 9-10. Accordingly, this legal issue has already been addressed by this Court, and it has ruled in favor of the plaintiffs.

This motion in limine is Defendant Gupta's attempt to reargue the same issue – the sufficiency of plaintiffs' expert testimony to establish proximate causation - under the guise of an evidentiary motion on the relevance of the testimony. Expert testimony that establishes an essential element of plaintiffs' claim is, inarguably, relevant pursuant to FRE 401 and 402. In rearguing proximate causation as an evidentiary motion in limine, the substance of the argument remains the same and the defendant has proffered no new evidence or testimony. The collateral estoppel doctrine precludes the re-adjudication of an issue of law or fact that has already been litigated between the same parties or their privies. See Shields v. Bellsouth Advertising & Publishing Corp., 273 Ga. 774, 777 (2001); Edmondson v. Gilmore, 251 Ga. App. 776, 778 (2001), rev'd on other grounds, In re T.M.G., 275 Ga. 543 (2002).

## II. PLAINTIFF'S EXPERTS TESTIMONY IS SUFFICIENT TO ESTABLISH PROXIMATE CAUSATION, AND THEIR TESTIMONY IS RELEVANT AND ADMISSIBLE.

Regardless of whether collateral estoppel doctrine applies, plaintiff's experts' opinions are sufficient to establish proximate causation and are clearly relevant to the issues to be determined by the trier of fact.

Under Georgia law "proximate cause is always determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent." Atlanta Obstetrics and Gynecology Group, Inc. v. Coleman, 260 Ga. 569, 569-70, 398 S.E.2d 16, 17 (Ga. 1990). Whether proximate cause exists in a particular case is considered a mixed question of law and fact. Proximate cause under Georgia law is defined as "'that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred.'" Zwiren v. Thompson 276 Ga. 498, 578 S.E. 2d 862, 865 (quoting T.J. Morris Co. V. Dykes, 197 Ga.App. 392, 395-396(4), 398 S.E.2d 403 (1990)).

The plaintiff must use expert testimony to establish proximate cause in a medical malpractice action, "because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson." Zwiren, 578 S.E.2d at 865 (other citations omitted). "Using the specialized knowledge and training in his field, the expert's role is to present to the jury a realistic assessment of the likelihood that the defendant's alleged negligence caused the plaintiff's injury." Id. As an evidentiary threshold the expert's opinion regarding causation must be based on the determination that "'there was a reasonable probability that the negligence caused the injury.'" Zwiren, 578 S.E.2d at 865 (quoting Pilzer v. Jones, 242 Ga. App. 198(1), 201, 529

4

S.E.2d 205 (2000)).

The deposition testimony of plaintiffs' experts, individually and collectively, establish with reasonable medical probability, that defendant Gupta's failure provide appropriate and timely adjuvant chemotherapy and radiation therapy to Mrs. Pollard in December, 1998, resulted in the reoccurrence and metastasis of her cancer in 2000, and that Mrs. Pollard would have survived had this treatment been given.

The defendant, however, inexplicably ignores this testimony and focuses on the studies cited by plaintiffs' experts regarding the survival statistics for patients with node negative tumors less than 1 centimeter in size, and the benefits of chemotherapy in improving survival. In so doing, defendant Gupta misconstrues the application of these studies to Mrs. Pollard's circumstances and the plaintiffs' experts' testimony on proximate causation. Based on these studies, the defendant asserts that the plaintiffs' experts cannot establish that Mrs. Pollard's survival rate fell below 50% as a result of Dr. Gupta's actions and omissions. Defendant Gupta once again misses the point of these studies and their application to Mrs. Pollards' case: the studies may demonstrate <u>prospectively</u> that 90 percent of patients with tumors of this size will be cured by surgery alone and that an additional 3 percent will survive if chemotherapy is given. However, in <u>hindsight</u> we know that Mrs. Pollard was not among those 90 percent of patients who were destined to survive regardless of chemotherapy. We now know that Mrs. Pollard is in the category of the 10 percent of patients who stood to benefit from chemotherapy.

Plaintiffs' experts testified with reasonable medical probability that Mrs. Pollard was among the patients in this much smaller group who would have survived had she been given chemotherapy as the standard of care required. Their opinions were based on the clinical factors

5

that were present when Mrs. Pollard's cancer was diagnosed, as well as her proven response to chemotherapy when her cancer reoccurred. Dr. Smith testified that Mrs. Pollard fell into the percentage that would have survived based on the fact that Mrs. Pollard's tumor burden was very small at the time of diagnosis, that she had no sign of mestatic cancer anywhere, and that ER and PR negative cells respond much better to chemotherapy that ER and PR high positive cells." See Plaintiffs' Opposition to Gupta's Motion for Summary Judgment at Exhibit 10, pp. 55-56. Dr. Sokol likewise testified that had Mrs. Pollard received timely radiation treatment, she would have fallen into the 90 percent of patients who avoid reoccurrence because she had a small tumor and negative lymph nodes. See id. at Exhibit 13, pp. 50-51.

Moreover, the studies do not account for cases involving a five-six month delay in radiation therapy following lumpectomy, as occurred in Mrs. Pollard's case. Plaintiffs' experts all opined that Mrs. Pollard's cancer, more likely than not, reoccurred in 2000 as result of the delay in radiation treatment in the absence of chemotherapy.

Defendant's own expert, James J. Stark, M.D., supports the opinions expressed by plaintiffs' experts regarding Mrs. Pollard's prognosis and proximate cause. Dr. Stark, who is also Board Certified in internal medicine and oncology and hematology, testified during his deposition that based on statistics alone Mrs. Pollard would have had a 33 percent chance of survival if she had received chemotherapy three to six weeks after the lumpectomy, (see id. at Exhibit 14, Stark Deposition, p. 34), and that without this treatment her chance were reduced to zero. Id. Dr. Stark also conceded that if Mrs. Pollard had a meaningful anti-tumor response to conventional chemotherapy in June or July of 2000, when her cancer reoccurred, "it would be more likely that her disease free interval would be longer with chemo than without chemo." Id.

at p. 88. Dr. Stark agreed that the poorer the prognostic indicators are of a particular breast cancer, the greater the benefit you see with chemotherapy. <u>Id.</u> at p. 91. In response to the following question: "And just so that I make sure I understand, assuming that Ms. Pollard's tumor was responsive to chemotherapy, the type of breast cancer that she had, if chemotherapy had been administered three to six weeks after surgery, that chemotherapy would have gotten to the cancer cells wherever they were located." Dr. Stark responded "Yes." <u>Id.</u> at pp. 91-92.

At the time of his deposition Dr. Stark could not recall whether Mrs. Pollard's tumor did in fact respond to chemotherapy after her cancer reoccurred in June, 2000. However, the medical records from August of 2000 state that "clinically, patient has responded to chemo." <u>See id.</u> at Exhibit 15. Dr. Stark agreed that Mrs. Pollard was in to the 10 percent of patients who stood to benefit from chemotherapy. <u>See id.</u> at Exhibit 14, p. 123. Dr. Stark also agreed that it is "reasonable for an oncologist who treats women on a regular basis to look at those statistics and to look at how they are stratified and to come to reasonable conclusions with respect to prognosis of an individual patient." <u>Id.</u>

Defendant further asserts that plaintiffs' experts' testimony on proximate cause demonstrates, at most, a "loss of a chance," that defendant argues is not compensable under Georgia law. Defendant relies on <u>Dowling v. Lopez</u>, 211 Ga. App. 578, 580, 440 S.E.2d 205, 208 (Ga. App. 1994). However, defendant's reliance on <u>Dowling</u> is misplaced in this case. <u>Dowling</u> held in the context of a wrongful death action, that the loss of a chance of **extended survival** was not recoverable under the Georgia wrongful death statute. In <u>Dowling</u>, the only claim was that decedent's life could have been prolonged (rather than saved) had it not been for defendant's alleged malpractice." <u>Id.</u> In this case, defendant's expert Dr. Stark, testified that

Mrs. Pollard would have had a <u>33 percent chance of survival</u> had she been given appropriate adjuvant chemotherapy, and that now her chances of survival are zero. This loss of chance of survival is, in fact, compensable under Georgia law. See <u>Richmond County Hospital Authority v. Dickerson, et al.</u>, 182 Ga. App. 601, 356 S.E.2d 548 (1987)

Further, defendant Gupta's reference to fifty percent as the magic number plaintiffs need to establish is not supported by Georgia law. In <u>Richmond</u>, the Court held that proximate cause is not eliminated by merely establishing by expert opinion that patient had less than a fifty percent chance of survival had the negligence not occurred. The negligence in <u>Richmond</u> related to the failure of the defendants to perform surgery on the decedent who was seen in the emergency room for an aneurysm. The expert testimony was that the chances of survival with surgery were less than fifty percent, but that the decedent's death was not inevitable. In denying the defendant's motion for summary judgment, the Court held that "the record does not establish that the actions or inactions of the hospital staff were not a proximate or contributing cause of [the decedent's] death". <u>Id.</u> at 603, 550.

Defendants' expert testified that Mrs. Pollard's chance of survival would have been 33 percent if she had received chemotherapy at an appropriate time; plaintiffs' experts all testified that it was *more likely than not* that Mrs. Pollard would have survived with appropriate treatment. Under Georgia law, both opinions are sufficient to establish proximate causation. Thus, plaintiffs' expert testimony on this issue is relevant and should be allowed.

III. **CONCLUSION**

WHEREFORE, for these reasons, and any others that may appear to the Court, plaintiffs' respectfully request that defendant Gupta's Motion in Limine to Exclude Testimony of

8

Plaintiffs' Experts on Proximate Causation be denied.

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By:_____/s/_____
Lesley S. Zork- #013454
Bruce J. Klores- #03320
915 15th Street, NW
Washington, D.C. 20005
(202) 628-8100
Co-counsel for Plaintiffs

and

LAW OFFICES OF PETER MASCIOLA

:_____/s/_____
Peter R. Masciola
601 Pennsylvania Avenue, N. W. #900
Washington, D.C. 20004
202-628-5680
Co-counsel for Plaintiffs