| | | |
|---|---|---|
| VERONICA POLLARD, et al | * | IN THE |
| Plaintiffs | * | UNITED STATES |
| v. | * | DISTRICT COURT |
| RAJ R. GUPTA, M.D., et al | * | FOR THE |
| Defendants | * | DISTRICT OF MARYLAND |
| | * | CASE NO.: WDQ-02-764 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE

Comes Now, Defendants, Raj R. Gupta, M.D. and Sterling Medical Corporation, by and through their attorneys, Joan Cerniglia-Lowensen and Morgan Shelsby Carlo Downs & Everton, hereby respond to Plaintiffs' Opposition to Defendants' Motion in Limine, and move that this Court rule in limine to prevent the presentation of evidence in the trial of this matter.

I. Plaintiffs' Collateral Estoppel Argument is Not Supported By the Case Law and Should Not Be Given Credence By the Court

Plaintiffs maintain that collateral estoppel precludes Defendant from raising the causation issue. Plaintiffs quote a statement made by the Court with respect to causation in its ruling on the motions for summary judgment. From this statement, Plaintiffs attempt to conclude that the issue has been addressed by the Court, and it has ruled in favor of Plaintiffs. *See* Plaintiffs' Opposition at 3. Plaintiffs rely on *Edmonson v. Gilmore* for support for their theory that collateral estoppel bars the litigation of the causation argument. However, Plaintiffs reliance on this case is curious, as the law as stated in Edmonson does not support their argument. *Edmonson* provides that:

"The doctrine of collateral estoppel precludes the adjudication of an issue of law or fact already adjudicated between the parties or their privities, where that issue is essential to judgment." *Edmonson* citing *Atlanta Cas. Ins. Co. v. Gardenhire*, 248 Ga. App. 42, 43 (1), 545 S.E.2d 182 (2001). Moreover, *Edmonson* additionally provides that collateral estoppel does not require identity of the claim, <u>so long as the issue was determined in the previous action</u> and there is identity of parties, that may not be re-litigated, even as part of a different claim. (Emphasis supplied.) *Edmonson* citing *Gwinnett County Bd. of Tax Assessors v. Gen Elec. Capitol Computer Svcs.*, 273 Ga. 175, 178 (1), 538 S.E.2d 746 (2000). Thus, the case cited by Plaintiffs states that collateral estoppel requires that the issue that was previously determined was previously determined in a prior proceeding. *See id.* Consequently, the precedent dictates that collateral estoppel can not lie on an interlocutory order that is part of the same action in question. In the case at bar, Plaintiff's attempt to use the Court's ruling in an interlocutory order to serve as a bar to litigate the same issue in a subsequent motion.

Moreover, Georgia's Court of Appeals has ruled specifically on the issue of whether collateral estoppel can serve as a bar to motions in the same action. Specifically, the Court of Appeals held the trial court's ruling that collateral estoppel barred a subsequent motion was an error. The Court of Appeals provided that "this doctrine precludes the re-adjudication of an issue that has been previously been litigated and adjudicated on the merits in <u>another</u> action between the same or similar parties." (emphasis in original) *Brahn v. Young*, 265 Ga. App. 705, 595 S.E.2d 553 (2004)(citing *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. App. 864, 866-86792), 463 S.E.2d 5 (1995). The Court's decision turned on the fact that the denial of the motion to dismiss

was interlocutory in nature and subject to revision by the trial court at any time before judgment. *See Brahn* citing *Barber v. Collins*, 201 Ga. App. 104, 105(2), 410 S.E.2d 444 (1991).

In sum, it is clear that an interlocutory order can not serve as the basis to bar a claim in the same action on the basis of collateral estoppel. Thus, Plaintiffs' argument that the Court's denial of Defendants' motion to dismiss constitutes a prior adjudication is clearly contrary to established Georgia precedent.

II.     Plaintiffs' Expert Testimony is Not Sufficient to Establish Causation

Upon initial examination, Plaintiffs' argument with respect to causation appears to be the more substantial argument, however, after examination it becomes clear that Plaintiffs' causation argument is as specious and the collateral estoppel argument.

Plaintiffs employ wisdom of hindsight, which entails the later acquired knowledge of Ms. Pollard's death to bolster their claimed negligence. Plaintiffs' assert that "in hindsight we know that Ms. Pollard was not one of those 90% of patients who were destined to survive regardless of chemotherapy. We now know that Ms. Pollard is in the very small category of patients who stood to benefit from chemotherapy." *See* Plaintiffs' Opposition at 5. Georgia law clearly prohibits such arguments, as "an after the fact assessment of facts or evidence cannot be the basis of a negligence claim so long as the initial assessment was made in accordance with reasonable standards of medical care." *Merker v. Abend*, 260 Ga. App. 836, 839, 581 S.E.2d 351 (2003). Dr. Gupta recommended that Ms. Pollard receive chemotherapy. Georgia law does not allow for the imposition of a higher standard of care or a heightened duty based on facts that were not known or reasonably available at the time the care was rendered. *DeVooght v.*

*Hobbes*, 265 Ga. App. 329, 593 S.E.2d 868 (2004). *Horton v. Eaton*, 215 Ga. App. 803, 807, 452 S.E.2d 541 (1994). However, even had Dr. Gupta successfully prohibited her from leaving the country and forcibly gave Ms. Pollard chemotherapy, there is a chance that she still would have died. Ignoring the hindsight principle, Plaintiffs' assert that Ms. Pollard would have had a 33 percent chance of survival had she been given the appropriate chemotherapy, and that now her chances of survival are zero. See Plaintiffs' Opposition at 8. This assertion is clearly based on the knowledge that Ms. Pollard did, in fact, die; an outcome that was not known to anyone at the time the medical care was rendered to her.

Plaintiffs' brandish the case *Richman v. County Hospital Authority v. Dickerson, et al.*, as it were a strong sword capable of slaying Defendant's arguments. However, upon analysis it is clear that *Richman* is distinguishable from the case at bar. Based on the specific facts of that case, the Court held that proximate cause is not eliminated by merely establishing by expert opinion that the patient had less than 50% chance of survival had the negligence not occurred. *Richmond* at 550. There, expert witness had maintained that the patient needed surgery from the outset, in order to sustain her life. This scenario is the opposition of the situation in this case, where death was unlikely, whether or not the patient received chemotherapy. This decedent had an extremely good chance of survival, to a degree much higher than more likely than not, 50%, regardless of what happened. Statistically, as testified to by Plaintiffs' expert Dr. Fiorica, without chemotherapy this patient had a recurrence rate of 8 to 10 percent, which would result in disease free rate between 90 to 92 percent. Additionally, according to Dr. Fiorica, when

chemotherapy is added to the treatment, the recurrence rate would be 5 to 6 percent, and correspondingly, the disease free survival rate would be 94 - 95 percent.

These statistics provided by Plaintiffs' experts illustrate the absurdity of the claim that the failure to treat with chemotherapy is the proximate cause of Ms. Pollard's death. Clearly, this failure to treat claim can not be a proximate cause of her death, because, by the testimony of their experts, the addition of chemotherapy only produces a change in survival rate of 3 to 4 percent, and as such is not dispositive on the issue of whether she would have survived. This component of the argument also highlights the Plaintiffs' inability to meet the burden of proving the proximate cause element of the wrongful death analysis. According to well established Georgia precedent:

> It follows that negligence alone is insufficient to sustain recovery for wrongful death in a medical malpractice action. It must be proven that the death of a patient proximately resulted from such want of care or skill. A bare possibility of such a result is insufficient.

*Dowling v. Lopez*, 211 Ga. App. 578, 440 S.E. 2d 205 (1994) citing and quoting *Maddox v. Houston County Hospital Auth.*, 158 Ga. App. 283, 284, 279 S.E. 732 (1981).

Plaintiffs' argument is an example of the logical fallacy of affirming the consequent. The holding of *Richmond* is that proximate cause is not eliminated if there is less than 50% chance of survival and negligence. However, Plaintiffs' have logically perverted this principle, as they have argued that because of the fact that she did die her death was caused by the negligence. This argument allows them to bootstrap existence of proximate cause, which they otherwise cannot establish. To give credence to this argument goes against the weight of established precedent and principles of logic.

III.    Conclusion

Wherefore, for the reasons articulated herein, Defendants' respectfully request that their Motion to Exclude the Testimony of Plaintiffs' Experts on Proximate Causation be denied.

Respectfully submitted,

Joan Cerniglia-Lowensen, #10747
Morgan Shelsby Carlo Downs & Everton
4 North Park Drive, Suite 404
Hunt Valley, Maryland 21030
410-584-2800

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 31st day of January, 2005, a copy of the foregoing Reply to Plaintiffs' Opposition to Defendants' Motion in Limine on behalf of Raj R. Gupta, M.D. and Sterling Medical Corporation was mailed postage prepaid to:

Lesley S. Zork, Esquire
Bruce J. Klores & Associates
915 Fifteenth Street, N.W.
Third Floor
Washington, D.C. 20005

Peter R. Masciola, Esquire
Law Offices of Peter Masciola
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C. 20004

Catherine A. Hanrahan, Esquire
Wilson, Elser, Moskowitz, Edelman
& Dicker LLP
1341 G Street, NW, 5th Floor
Washington, D.C. 20005

Joan Cerniglia-Lowensen, #10747
Morgan Shelsby Carlo Downs & Everton
4 North Park Drive
Suite 404
Hunt Valley, Maryland 21030
410-584-2800