**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ROOSEVELT POLLARD, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL NO. WDQ 02-CV-764 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' SURREPLY IN SUPPORT OF THEIR OPPOSITION TO THE
UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

COME NOW THE PLAINTIFFS, by and through their counsel, and file this brief Surreply in Support of their Opposition to the United States of America's (the "Government") Motion for Summary Judgment.

After seeking four extensions of time to file its Reply[1], the Government submitted a "Reply" that is longer than its moving brief, in which it restates and rehashes its entire original argument as well as setting forth several new points. To the extent that the vast majority of the Government's Reply is simply a re-wording of its moving brief, plaintiffs will not belabor the Court any further and rely upon their Opposition to refute the Government's arguments.

In this Surreply, plaintiffs briefly address the few new issues raised by the Government. To be sure, none of these additional issues support the Government's argument that summary judgment is appropriate here. In fact, the new issues that the Government now interjects only further the need for a trial on the merits.

---

[1] Plaintiffs consented to each request for extra time.

I.  **COLLATERAL ESTOPPEL DOES NOT APPLY**

Plaintiffs are at a loss to understand how the Government can continue to argue that collateral estoppel applies in this case when the Fourth Circuit explicitly held that it does not. *Pollard v. United States,* 2006 U.S App. LEXIS 2605, **11 n.1 (4th Cir. Feb. 2, 2006). The Government cites no authority to support its contention that this Court is free to ignore the law-of-the-case doctrine, and it does not distinguish any of the authority cited by plaintiffs demonstrating that this Court is bound by the Fourth Circuit's holding that collateral estoppel does not apply as to proximate cause.

The Fourth Circuit understood what the Government refuses to acknowledge here: collateral estoppel does not apply because no factfinder has yet determined whether the Government's actions/omissions, via its pathologist Dr. Adams, were a proximate cause of Mrs. Pollard's death. As the Fourth Circuit determined, this is a wholly different issue than the jury's determination of whether the actions/omissions of Dr. Gupta, Mrs. Pollard's non-government oncologist, were a proximate cause of her death. Here, the factfinder will be presented with a different question as to proximate cause: did Dr. Adams' underreporting of the size of the tumor and his incorrect interpretation of its characteristics cause Dr. Gupta and the other downstream healthcare providers to wrongly determine that the benefits of chemotherapy were equivocal in Mrs. Pollard's case, which equivocation was communicated to Mrs. Pollard?

This is a wholly different proximate cause issue than was presented to the jury in the case against Dr. Gupta alone. And not only is collateral estoppel not applicable, but this question has been answered by Dr. Gupta's own expert (as well as plaintiffs' experts) who testified that a 1.1 centimeter tumor would present "dramatically altered

2

circumstances" under which the standard of care called for chemotherapy without question. Lippman Dep. at 61-62, Opp'n Exh. 4.

## II. THE U.K. PATHOLOGIST DOES NOT SUPPORT THE GOVERNMENT'S NEW CLAIM THAT DR. ADAMS' PATHOLOGY REPORT WAS ACCURATE

In its Reply, the Government sets forth the new argument that the U.K. pathologist who discovered Dr. Adams' errors supports the *Government's* position that Dr. Adams' pathology report was accurate. The Government incongruously argues that the U.K. pathologist, Dr. Cecily Quinn, "confirmed what Dr. Adams had observed" despite the fact that it was Dr. Quinn who discovered the very errors in Dr. Adams' pathology report hat are the subject of this case.

First, and most important, the Government is simply wrong: Dr. Quinn measured Mrs. Pollard's tumor as 1.1 centimeters, twice as large as Dr. Adams' measurement of 0.5 centimeters.

Second, Dr. Dodwell, Mrs. Pollard's U.K. oncologist, confirmed that Dr. Quinn's findings conflicted with Dr. Adams' findings and were not consistent with Dr. Adams' determinations. Dr. Dodwell noted that "Dr. Quinn felt that this cancer was bigger than had previously been determined . . . ." by Dr. Adams. Dodwell Dep. at 42-43, Opp'n at Exh. 2. And it was not just the size that Dr. Quinn noted was incorrect on Dr. Adams' pathology report but also the characteristics that he had ascribed to the tumor. Specifically, Dr. Quinn disagreed with Dr. Adams' description of the medullary features of the tumor – a crucial conclusion of Dr. Adams because it led both Dr. Gupta and Dr. Dodwell to believe that Mrs. Pollard had a more favorable prognosis than was the case. As Dr. Dodwell made clear in his deposition, "Dr. Quinn did not feel there was such a

3

strong feature," which meant that the "prognosis would have been slightly worse than I had originally expected or ascertained when I saw Mrs. Pollard" on February 18th. *Id.* Thus, the Government's new argument that Dr. Quinn's findings support its case is flatly wrong.

Third, even if the Court were to consider Dr. Quinn's testimony as supporting the Government's case -- despite the fact that Dr. Quinn was not designated as an expert -- this testimony directly contradicts the plaintiffs' expert, Arthur H. McTighe, M.D., Chief of Pathology at Union Memorial Hospital, who will testify that Dr. Adams undersized the tumor by half and incorrectly described its characteristics. Thus, to the extent that the Government is now pursuing this new argument, then summary judgment is most definitely not appropriate because this is a genuine issue of material fact in dispute.

### III. THE FACT THAT DR. DODWELL DID NOT ORDER CHEMOTHERAPY WHEN HE WAS INFORMED OF THE CORRECT SIZE AND CHARACTERISTICS OF THE TUMOR DOES NOT SUPPORT THE GOVERNMENT'S CASE

The Government's reliance on the fact that Dr. Dodwell did not order chemotherapy after receiving Dr. Quinn's pathology report as supporting its argument is misplaced. While it is correct that Dr. Dodwell did not order chemotherapy, the Government leaves out the crucial reason why Dr. Dodwell did not order chemotherapy: Because by the time Dr. Quinn's results were obtained, it was too late for Mrs. Pollard to obtain the benefits of chemotherapy that she would have obtained many weeks earlier had Dr. Adams' pathology report been timely and accurately prepared.[2] Dodwell Dep. at 43-44, Ex. 2 of Plaintiffs' Opp'n. In fact, this argument supports plaintiffs' position that

---

[2] The Government repeatedly points out that when the cancer "resurfaced" in 2000, Mrs. Pollard was given chemotherapy, which, it claims, undercuts plaintiffs' claim regarding the efficacy of the chemotherapy by the time Dr. Adams' mistakes were discovered. It fails to point out the obvious point, however, that the 2000 chemotherapy failed to save Mrs. Pollard's life because it was too late by then.

4

Dr. Adams' breaches of the standard of care proximately caused Mrs. Pollard's death because it confirms that early chemotherapy was necessary. Early chemotherapy did not occur as a direct result of Dr. Adams' errors.

## IV. THE GOVERNMENT HAS FAILED TO REFUTE PLAINTIFFS' STATEMENT OF MATERIAL DISPUTED FACTS

Despite setting forth another 16 pages of argument, the Government did not directly refute any of the 17 genuine issues of material fact in dispute outlined in the plaintiffs' Opposition.[3] Yet, all of these disputed facts are crucial to this case in determining the Government's liability. By failing to rebut these facts, the Government impliedly concedes that they are in dispute, making summary judgment inappropriate.

## CONCLUSION

With the Government's Reply, nothing has changed. The parties still dispute the accuracy and timeliness of the government pathologist's report; they still dispute whether a timely and accurate report would have resulted in Mrs. Pollard receiving life-saving chemotherapy; and they still dispute whether that chemotherapy would have saved Mrs. Pollard's life. These are all genuine issues of material fact in dispute, which preclude the entry of summary judgment in this matter.

                Respectfully submitted,

                BRUCE J. KLORES & ASSOCIATES, P.C.

                By:____/s/_____
                    Bruce J. Klores
                    Scott M. Perry
                    1735 20th Street, N.W.

---

[3] Plaintiffs must again point out that many of the facts that the Government relies upon in its Reply derive from testimony in which it was assumed that Dr. Adams' pathology report was complete and accurate. As plaintiffs described at length in their Opposition, this is simply not the case. As such, these "facts" that are so heavily relied upon by the Government do not support its argument that there are no genuine issues of material fact in dispute.

Washington, D.C. 20009  
(202) 628-8100  
Co-counsel for Plaintiffs

and

LAW OFFICES OF PETER MASCIOLA

_____/s/_____  
Peter R. Masciola  
601 Pennsylvania Avenue, N. W. #900  
Washington, D.C. 20004  
202-628-5680  
Co-counsel for Plaintiffs

1606/surreply