```
          IN THE UNITED STATES DISTRICT COURT FOR
         THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                  *
ROOSEVELT POLLARD ET AL.,
                                  *
     Plaintiffs,
                                  *    CIVIL NO.: WDQ-02-0764
v.
                                  *
UNITED STATES OF AMERICA,
                                  *
     Defendants.
                                  *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

Memorandum Opinion

Roosevelt and Veronica Pollard have sued, *inter alia*, the United States of America (the "USA") for negligence and wrongful death.[1]

Pending is the USA's motion for summary judgment. For the reasons discussed below, the USA's motion will be denied.

I.  Background

Veronica Pollard was the civilian wife of Roosevelt Pollard, an active member of the armed forces. Supp. Mem. at 4. In 1998, Mrs. Pollard lived in Georgia. Second Am. Compl. ¶ 12.

---

[1] On June 30, 2004, this Court dismissed the claims against the USA. The Pollard's claims against Raj R. Gupta, M.D., treating oncologist; Humana Military Healthcare, Inc., manager for the USA's delivery of healthcare services; and Sterling Medical Corporation, provider of oncology services, were tried to a jury. The jury returned a verdict for these defendants. The Fourth Circuit reversed and remanded this Court's decision dismissing the claims against the USA.

In late September 1998, Mrs. Pollard discovered a small lump in her right breast. On October 2, 1998, she saw a physician at the Dwight D. Eisenhower Military Hospital (the "Military Hospital") in Augusta, Georgia. On October 14, 1998, a breast biopsy was performed and the results indicated that the lump was cancerous. On November 12, 1998, Mrs. Pollard underwent a lumpectomy to remove the cancerous lump and 17 nearby lymph nodes.

Following her surgery, Mrs. Pollard delayed meeting with Raj R. Gupta, M.D., an oncologist at the Military Hospital, because Dr. Gupta had not received her medical information, including her test results. In December 1998, based upon the test results of Stephen Adams, M.D., a pathologist employed by the USA, Dr. Gupta gave Mrs. Pollard a good prognosis and wrote a letter accompanying her medical records stating that the tumor was very small and that the presence of medullary features suggested a favorable prognosis. Dr. Gupta "favor[ed] recommending adjuvant chemotherapy." Supp. Mem. Ex. 4 at 11 (December 16, 1998 letter from Dr. Gupta to Whom it may concern).

In January 1999, Roosevelt Pollard was transferred to England and Mrs. Pollard accompanied him. After enrolling in the military medical system in England, Mrs. Pollard met with David Dodwell, M.D., an English oncologist. Dr. Dodwell recommended that Mrs. Pollard undergo radiation but not chemotherapy. Supp.

Mem. Ex. 4 at 9 (February 19, 1999 letter from Dr. Dodwell to Dr. S. E. Corrin).

In April 1999, Cecily Quinn, M.D., an English pathologist, noted differences between her results and that of Dr. Adams.  In particular, Dr. Quinn found that the initial tumor was more than twice the diameter identified in Dr. Adams's report (1.1 cm as compared to .5 cm) and that the medullary features were not as strong as his report had suggested.  Mrs. Pollard underwent the radiation therapy recommended by Dr. Dodwell.

In the spring of 2000, doctors again discovered breast cancer in Mrs. Pollard.  In an effort to treat the cancer, Mrs. Pollard underwent chemotherapy, had a mastectomy and had a bone marrow transplant.  Doctors subsequently discovered lung cancer and Mrs. Pollard died on December 29, 2003 of metastatic breast cancer.  Second Am. Compl. ¶ 20.

In March 2002, the Pollards filed suit.  On June 30, 2004 this Court dismissed all claims against the USA for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). This Court based its dismissal on its finding that the USA was not liable under the Federal Tort Claims Act for Dr. Gupta's negligence.  The Fourth Circuit reversed this decision, finding that the USA was improperly dismissed, and remanded the case so that the summary judgment standard could be appropriately applied to the USA in light of the alleged negligence of Dr. Adams.

II. Analysis

The USA has moved for summary judgment, arguing that the alleged negligence of its employee, Dr. Adams, was not the proximate cause of Mrs. Pollard's death. Supp. Mem. at 9. The Pollards argue that there is a genuine issue of material fact as to whether the negligence of Dr. Adams caused Mrs. Pollard's injuries. Opp. Mem. at 2.

A. Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 317. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

In this case, the Fourth Circuit emphasized that:

> [b]efore the burden ever shifts to the non-movant to come forward with record evidence establishing a genuine issue of material fact, the movant must first carry the initial burden of pointing out to the district court those portions of the record that show that there is an absence of evidence to support the nonmoving party's case.

*Pollard v. United States*, 166 Fed.Appx. 674, 678 (4th Cir. 2006) (citing *Celotex*, 477 U.S. at 325) (internal quotation marks omitted).

B.   The Underlying Law

In diversity cases, the court must apply the law of the forum state, including its choice of law rules. *Rockstroh v. A.H. Robins Co., Inc.*, 602 F. Supp. 1259, 1262 (D. Md. 1985) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Maryland applies the doctrine of *lex loci delictus* in tort actions, meaning that the substantive law of the state where the wrong occurred governs. *Id.* (*citing Hauch v. Connor*, 295 Md. 120 (1983)). Because Mrs. Pollard was allegedly injured in the state of Georgia, Georgia substantive law applies.

To demonstrate negligence in Georgia, the Pollards must show: 1) a legal duty to conform to a standard of conduct; 2) a breach of that duty; 3) a legally sufficient causal connection (proximate cause) between conduct breaching the duty and the resulting injury; and 4) damage flowing from the breach. *Cieplinski v. Caldwell Elec. Contractors, Inc.*, 280 Ga.App. 267,

272 (2006) (*citing Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 200 (1982)).

Georgia's wrongful death statutes give a right of action not available at common law and must be limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms. *Dowling v. Lopez*, 211 Ga. App. 578, 579 (1993) (*citing Miles v. Ashland Chem. Co.*, 261 Ga. 726, 728 (1991)). The wrongful death statutes do not provide for recovery "where a defendant's wrongful act or negligence did not result in death." *Id.* at 579-80.

The plaintiff in a wrongful death action, therefore, must show to a reasonable degree of medical certainty that the patient's death could have been prevented,[2] and that the physician's want of care or skill was the proximate cause[3] of the patient's death. *Id.* (*citing Maddox v. Houston County Hosp. Auth.*, 158 Ga. App. 283, 284 (1981)) (internal quotation marks omitted).

In wrongful death actions involving medical malpractice, expert testimony on proximate cause must "provide a causal connection that is more than mere chance or speculation." *Id.* at

---

[2]*Id.* (*citing Goggin v. Goldman*, 209 Ga. App. 251, 252 (1993); *Parrott v. Chatham County Hosp. Auth.*, 145 Ga. App. 113, 115 (1978)).

[3]Proximate cause is "that which in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." *Zwiren v. Thompson*, 276 Ga. 498, 500 (2003) (*quoting T.J. Morris Co. v. Dykes*, 197 Ga. App. 392, 395-96 (1990)) (internal quotation marks omitted).

501 (*citing Bowling v. Foster*, 254 Ga. App. 374 (2002); *Maddox*, 158 Ga. App. at 284). "Instead of speaking in terms of possibilities, the expert's testimony must show as an evidentiary threshold that the expert's opinion regarding causation is based, at the least, on the determination that there was a reasonable probability that the negligence caused the injury." *Id.* (*quoting Pilzer v. Jones*, 242 Ga. App. 198, 201 (2000)) (internal quotation marks omitted). The expert could also meet this threshold by stating that the only apparent cause of the plaintiff's injury was the defendant's action, or by presenting overwhelming testimony of experience that, in the absence of the alleged negligence, the patient's condition would have been prevented from worsening. *Id.* (*citing Lee v. Satilla Health Servs.*, 220 Ga. App. 885 (1996)).

C.   Breach of Standard of Conduct

The USA argues that Dr. Quinn found no fault with the report of Dr. Adams. Response Mem. at 15. The Pollards, however, offer testimony that clearly contradicts this contention. Arthur McTighe, M.D., testified that a number of problems occurred in the pathology conducted in this case. Deposition of Dr. McTighe at 33. Moreover, he testified that the report of Dr. Adams contains misstatements and omissions and the diagnosis was confusing. *Id*. at 34. As a result, a reasonable fact-finder could find that Dr. Adams was negligent in creating his report.

D.   Proximate Cause

The Pollards believe that Dr. Adams proximately caused Mrs. Pollard's death and argue that: 1) if Dr. Adams had not acted negligently then Mrs. Pollard's oncologists would have recommended chemotherapy; and 2) if chemotherapy had been recommended then Mrs. Pollard would have had it; and 3) if she had chemotherapy then she would have survived.

The USA argues that nothing done by Dr. Adams adversely influenced the treatment rendered by Dr. Gupta.  Supp. Mem. at 9. Dr. Gupta relied on the report provided by Dr. Adams that indicated that the cancerous tumor removed in October 1998 measured .5 centimeters.  Deposition of Dr. Gupta at 48.  Dr. Gupta noted that tumors this small have a very good prognosis and that "many times" doctors do not recommend adjuvant chemotherapy with such tumors.  *Id*. at 47.  He also noted, however, that certain details in Mrs. Pollard's case made him favor giving chemotherapy.  *Id*.  Mrs. Pollard, however, stated that this favoring of chemotherapy was not communicated to her.  Deposition of Veronica Pollard at 38; *accord* McTighe Dep. at 50.

Dr. Gupta went on to state that most of the time individuals with tumors measuring more than one centimeter receive chemotherapy.  *Id*. at 49.  In fact, with the correct information an oncologist would have encouraged her rather strongly to take chemotherapy.  Deposition of Oncologist Marc Lippman, M.D., at

8

61.

The USA also argues that the doctors in England were not affected by the conduct of Dr. Adams. Response Mem. at 13. In February 1999, Dr. Dodwell recommended that Mrs. Pollard receive radiation treatment and not chemotherapy. Pollard Dep. at 37. In her April 21, 1999 letter, Dr. Quinn noted that the cancer was bigger than and that the medullary features that suggested a favorable prognosis were not as strong as had been determined by Dr. Adams. Deposition of Dr. Dodwell at 42-43. As a result, Mrs. Pollard's prognosis was worse than Dr. Dodwell had originally ascertained when he saw her in February 1999. Dr. Dodwell stated that the benefit of beginning chemotherapy in April would have been more uncertain than if it had been started earlier. Dodwell Dep. at 44-45.

The USA notes that Mrs. Pollard underwent chemotherapy in June 2000 after cancer was again discovered. The USA asserts, without the support of a doctor's testimony, that this suggests that chemotherapy would have been effective in 1999 after Dr. Adams's mistaken results were discovered. Given Dr. Dodwell's testimony outlined above, this Court rejects this argument.

Accordingly, a reasonable fact-finder could conclude that the alleged negligence of Dr. Adams proximately caused harm to Mrs. Pollard.

E.   Collateral Estoppel

The USA argues that the Pollards are collaterally estopped from relitigating proximate causation. To employ the doctrine, the USA must prove that: "(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment was final and valid; and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum." *Martin v. Amer. Bancorporation Retirement Plan*, 407 F.3d 643, 653 (4th Cir. 2005).

The USA argues that proximate causation was already decided when the jury found that Dr. Gupta did not proximately cause Mrs. Pollard's injuries. Supp. Mem. at 9. The Fourth Circuit clearly stated, however, that "[t]he fact that the jury found that Dr. Gupta's negligence did not cause Mrs. Pollard's injuries says nothing whatsoever about whether Dr. Adams' negligence, if any there be, caused Mrs. Pollard's injuries." *Pollard*, 166 Fed.Appx. at 679 n.1.

The USA next argues that it was "Mrs. Pollard's unwillingness to undergo chemotherapy that lead [sic] the jury to conclude that Dr. Gupta's violation of the standard of care was not the proximate cause of her injuries." Reply Mem. at 7. The

10

Jury Verdict Form simply asked "[d]o you find that Dr. Gupta's failure to comply with the standard of care was a proximate cause of Mrs. Pollard's damages and death?"  This Court will not engage in wholesale conjecture into the reasoning behind the jury's finding and thus rejects the USA's contention.  *See U.S. v. Blankenship*, 707 F.2d 807, 810 (4th Cir. 1983) ("the court should not inquire into the reasoning process or motivation behind the verdict.").

As a result, the doctrine's requirements have not been met.

III. Conclusion

For the reasons stated above, the USA's motion for summary judgment will be denied.


November 2, 2006                         /s/
Date                             William D. Quarles, Jr.
                                 United States District Judge